# EXHIBIT 3

# EXHIBIT 3

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Proposed Attorneys for the Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 23-15619-hlb |
| RAWHIDE MINING LLC, | Chapter 11 |
| Debtor. | *Proposed Joint Administration with*: In re Rawhide Acquisition Holding LLC, Case No. 23-15620-hlb |
| Affects All Debtors ☒ | |
| Affects Rawhide Mining LLC ☐ | Hearing Date: |
| Affects Rawhide Acquisition Holding LLC ☐ | Hearing Time: |

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND BANKRUPTCY RULES 2002, 4001, 6004 AND 9014 (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, AND (B) GRANT ADEQUATE PROTECTION AND (II) SCHEDULING FINAL HEARING**

1

**THIS CAUSE** came before the Court on _____ __, 2023 (the "**Interim Hearing**") upon the motion, dated December ___, 2023 [ECF No __] (the "**Motion**"),[1] of Rawhide Mining LLC ("**Rawhide**") and Rawhide Acquisition Holding LLC ("**Holding**" and, together with Rawhide, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "**Chapter 11 Case**") for interim and final orders under Sections[2] 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1) of the Bankruptcy Code, and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules, and Rules 2002, 4001, 6004, 9006, and 9014 of the Local Rules, seeking:

(a)     authorization for the Borrower to obtain up to $2,500,000 in principal amount of postpetition financing (plus any interest capitalized and added to such principal amount), (collectively, the "**DIP Financing**"), all on the terms and conditions set forth in: (i) this Interim Order; (ii) that certain Debtor-In-Possession Loan Agreement (the "**DIP Facility Agreement**") by and between the Debtors and De Jong Capital, LLC, a Delaware limited liability company (the "DIP Lender"); and (iii) the budget annexed hereto as **<u>Exhibit A</u>** (the "**Budget**", and together with the DIP Facility Agreement, all as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, and all other agreements, documents, instruments, and/or amendments delivered in connection therewith, the "**DIP Documents**");

(b)     authorization for the Debtors to execute and deliver the DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)     authorization for the Debtors to use the proceeds from the DIP Financing as permitted in the DIP Documents and in accordance with this Interim Order (as defined below), the Final Order (as defined below) and the Budget;

---

[1]     Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

[2]     Unless otherwise stated, all references to "**Section**" herein shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "**Bankruptcy Rule**" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "**Local Rule**" or "**LR**" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

(d)      authorization for the Debtor to grant adequate protection to its prepetition lender to the extent of any diminution in value of its collateral, as applicable, and in each case subject and subordinate to the Carve-Out;

(e)      to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") authorizing the Debtors, on an interim basis, to borrow under this Interim Order and the DIP Facility up to $960,000, plus interest and fees; and

(f)      to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") on the Motion to be held before this Court to consider entry of a final order (the "**Final Order**") authorizing and approving, on a final basis, the transactions described in the foregoing clauses (a) through (c) pursuant to the Final Order.

The Interim Hearing having been held by the Court to consider the relief sought in the Motion, and upon the record of the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.      *Disposition*.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the interim relief sought in the Motion with respect to the entry of this Interim Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      *Jurisdiction and Venue.*  This Court has core jurisdiction over the Chapter 11 Cases commenced on December 20, 2023 (the "**Petition Date**"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 and the Local Bankruptcy Rules.

3.      *Notice*.  Notice of the Motion, the relief requested therein and the relief sought at the Interim Hearing was served by the Debtor by either electronic mail and/or overnight mail to: (a) the Office of the United States Trustee, 300 Las Vegas Boulevard S., Suite 4300, Las Vegas, NV 89101,

3

Attn: Edward M. McDonald, Jr.; (b) the creditors holding the twenty largest unsecured claims against the Debtor's estate; (c) the prepetition secured lender to the Debtor and its counsel; (d) the DIP Lender and its counsel; (e) all other creditors asserting secured claims against Debtor's estate; (f) governmental agencies required to receive notice under Bankruptcy Rule 5003(e); and (g) those parties requesting special notice pursuant to Bankruptcy Rule 2002.   Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.   *Findings Regarding the DIP Financing*.

(a)   Good and sufficient cause has been shown for the entry of this Interim Order.

(b)   The Debtors have an immediate need to obtain the DIP Financing to preserve their assets, including to pay insurance, taxes, payroll and other business expenses.   The Debtors' access to and use of the proceeds of the DIP Financing is necessary and vital to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of their estates, and to facilitate a reorganization of the Debtors or a sale of the Debtors' assets.

(c)   The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.   The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)   The terms of the DIP Documents pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)   The DIP Documents and the DIP Financing have been the subject of extensive

4

negotiations conducted in good faith and at arms'-length among the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including, without limitation, (i) all loans made to the Debtors pursuant to the DIP Documents and (ii) all other obligations of the Debtors under the DIP Documents or this Interim Order owing to the DIP Lender (collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lender and its affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing in accordance with the terms of this Interim Order and the DIP Documents is therefore in the best interest of the Debtors' estates and is consistent with the Debtors' exercise of their fiduciary duties.

5.      *Authorization of the DIP Financing and the DIP Documents.*

(a)      The Debtors are hereby authorized to execute, enter into and perform under the DIP Documents and to borrow thereunder up to an aggregate principal amount of $960,000 (plus interest, including any interest capitalized and added to such principal amount, fees and other expenses provided for in the DIP Documents), pending entry of the Final Order, all of the foregoing in accordance with the terms of this Interim Order, and the DIP Documents.  All of the amounts borrowed shall be used solely for the purposes permitted under this Interim Order, the DIP Documents and in accordance with the Budget.

(b)      In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts and to execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all reasonable fees and

5

expenses that the DIP Lender incurs in connection with the preparation, execution and delivery of the DIP Documents, or the Debtors' performance of their obligations under the DIP Documents and the DIP Financing, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in this case in such form as the Debtors and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications are material; and

(iii)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *DIP Superpriority Claims*.  Subject to the Carve-Out (as defined below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "**DIP Superpriority Claims**") against the Debtors with priority over any and all administrative expenses and all other claims against each the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c),

507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof including, excluding causes of action under chapter 5 of the Bankruptcy Code and the proceeds thereof (collectively, "**Avoidance Actions**").

7.      *DIP Liens*.  As security for the DIP Obligations, and subject to the Carve-Out (as defined below), effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to DIP Lender (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "**Collateral**", and all such liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)      First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors other than Avoidance Actions (which lien upon Avoidance Actions may be granted upon entry of the Final Order), whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Unencumbered Property**"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts,

patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing; and

(b)    <u>First Priority Priming Liens on Encumbered Property</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, automatically perfected, non-avoidable, security interest in all tangible and intangible prepetition and postpetition property of the Debtors other than Avoidance Actions (which lien upon Avoidance Actions may be granted upon entry of the Final Order), including without limitation, any and all encumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether now existing or hereafter acquired (the "**DIP Priming Lien**"). The DIP Priming Lien is senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

8.    *Adequate Protection*.  As adequate protection for and to the extent of any diminution in the value of any prepetition lender's collateral resulting from, among other things, the incurrence of the DIP Obligations, and the granting of the DIP Liens, such prepetition lender is hereby granted (in each case subject and subordinate to the DIP Liens, the DIP Superpriority Claims and the Carve-Out) the following adequate protection (collectively, the "**Adequate Protection Obligations**"):

(a)    <u>Adequate Protection Liens</u>.  Solely to the extent of any diminution of value to the prepetition lender's collateral, such prepetition lender is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "**Replacement Liens**") in and on all of the prepetition lender's collateral, *provided*, *however*, that the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof and (ii) the Carve-Out.

(b)    <u>Adequate Protection Superpriority Claims</u>.  As further adequate protection for and solely to the extent of diminution of value of the prepetition lender's collateral, such prepetition lender is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "**Adequate Protection Superpriority Claim**"), which allowed Adequate Protection Superpriority Claim shall be payable from and have recourse to all of the prepetition lender's collateral and all proceeds thereof.  The Adequate Protection Superpriority Claim shall be subject and subordinate only to the DIP Superpriority Claims and the Carve-Out.

9.    *Events of Default.*  The occurrence of any of the following events, unless waived in writing in accordance with the DIP Documents, shall constitute an "**Event of Default**": (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; (b) the Debtors seek any modification or extension of this Interim Order or the Final Order without the consent of the DIP Lender; (c) any application is filed by the Debtors for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in the Chapter 11 Cases, which is *pari passu* with or senior to the DIP Obligations or the DIP Liens; (d) the (i) commencement

9

of any action by the Debtors or (ii) support by the Debtors of the commencement of any action by any other party-in-interest with standing against any of the DIP Lender to subordinate or avoid any liens made in connection with the DIP Documents or to avoid any obligations incurred in connection with the DIP Documents; (e) any order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any Collateral; (f) the Debtors shall assert in any pleading filed in any court that any material provision of this Interim Order or the Final Order is not valid and binding for any reason; or (g) the occurrence of an "Event of Default" under the DIP Documents.

10.    *Remedies after Event of Default*.    Upon the occurrence and during the continuation of an Event of Default and notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to the expiration of the Remedies Notice Period (as defined herein),  the DIP Lender, in its discretion, may declare (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains, (c) the termination of the DIP Financing and the DIP Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the Carve-Out has been triggered through the delivery of written notice, (e) the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, and (f) the imposition of the default rate of interest set forth in the DIP Credit Agreement (any of the foregoing shall be referred to as a "**Termination Declaration**").  The Termination Declaration shall be given by electronic mail or facsimile (or other electronic means) to counsel to the Debtors, counsel for the official committee of unsecured creditors (if appointed) (the "**Committee**"), and the U.S. Trustee and filed on docket of the Chapter 11 Cases (and the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").

11.     Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that five (5) business days after the Termination Declaration Date (such five (5) business day period, the "**Remedies Notice Period**") the DIP Lender shall be entitled to immediately exercise its rights and remedies in accordance with the DIP Documents and/or this Interim Order, as the case may be, and shall be permitted to satisfy the DIP Obligations, the DIP Superpriority Claim and the DIP Liens in each case subject to the Carve-Out (as defined below). During the Remedies Notice Period (A) the Debtors may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Budget, and (B) the Debtors shall be entitled to seek an emergency hearing before the Court, within the Remedies Notice Period, for the purpose of contesting whether a Termination Event has occurred and/or is not continuing. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay, as to the DIP Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Lender shall be permitted to exercise all remedies set forth herein and in the DIP Documents, and as otherwise available at law without further order of or application or motion to the Court.

12.     *Limitation on Charging Expenses Against Collateral.*  Subject only to and effective upon entry of the Final Order, notwithstanding anything to the contrary contained herein, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

13.     *Carve-Out.* The DIP Superpriority Claims and DIP Liens granted to the DIP Lender pursuant to this Interim Order shall be junior and subordinate to (a) all fees required to paid by the Debtors to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) all fees due

11

the Clerk of the Court, (c) the allowed fees and disbursements as may be awarded to the professionals of the Debtor and the Committee (the "**Estate Professionals**") from time to time pursuant to Bankruptcy Code § 330, in the aggregate amount set forth in the Budget and only to the extent such fees were incurred prior to an Event of Default but not yet paid, and (d) up to $100,000 in aggregate fees and expenses incurred by the Estate Professionals following an Event of Default (collectively, the "**Carve-Out**").

14.    *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

15.    *Perfection of DIP Liens*.

(a)    The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of this Interim Order.  The Debtors shall execute and deliver to the DIP Lender, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtors to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof or other Collateral, is hereby and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting the DIP Lender a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Debtors in favor of the DIP Lender in accordance with the terms of the DIP Documents and this Interim Order.

16.    *Reservation of Certain Third Party Rights and Bar of Claims*.

(a)     Upon entry of this Interim Order, the Debtor's and the DIP Lender's acknowledgements, agreements and stipulations set forth above (the "**Stipulations**") shall be binding upon the DIP Lender, the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors) in all circumstances and for all purposes.

(b)     The Stipulations shall be binding upon each other party in interest, including the Committee and any successor to the Debtors (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors), if any.

17.    *Preservation of Rights Granted Under the Order*.

(a)     Subject to the Carve-Out (as defined above), no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order or the DIP Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding and the Commitment (as defined in the DIP Note) has not been terminated, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security

interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitment shall have been terminated (i) the Debtors shall not seek, and they shall constitute an immediate Event of Default under the DIP Note if the Debtors seek, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender, or (ii) it shall constitute an immediate Event of Default under the DIP Note if any order is entered converting or dismissing the Chapter 11 Cases.  If an order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (w) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Superpriority Claims and the Replacement Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, and the Commitment shall have been terminated, (x) such DIP Superpriority Claims, DIP Liens, Adequate Protection Superpriority Claims and Replacement Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, (y) the other rights granted by this Interim Order shall not be affected, and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender on the effective date of such reversal, stay, modification or vacation, as applicable, or (ii) the validity, priority or enforceability of the DIP Liens or the Replacement Liens.  Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations or Adequate Protection Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice

14

by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all DIP Obligations and Adequate Protection Obligations.

(d)      Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Replacement Liens and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Cases, or (ii) the entry of an order confirming a plan of reorganization for the Debtors and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Replacement Liens, the Adequate Protection Obligations, the Adequate Protection Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, and the Commitment has been terminated.

18.      *Limitation on Use of DIP Financing Proceeds and Collateral*.  The Debtors shall use the proceeds of the DIP Financing solely as provided in this Interim Order and in the DIP Documents (including, but not limited to, the Budget).  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Note may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise) against the DIP Lender or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or

asserted by the DIP Lender or asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations or the security interests in or liens on the Collateral or against the DIP Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Documents or this Interim Order, (c) to seek to modify any of the rights granted to the DIP Lender under this Interim Order or under the DIP Documents, in this case without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, or (d) pay any amount on account of any claims arising prior to the Petition Date without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents (including, but not limited to, the Budget).

19.    *Lender's Fees and Expenses.*  Provided that the Closing occurs, the Debtors are authorized and directed to pay all reasonable and documented out-of-pocket expenses of the DIP Lender incurred in connection with the DIP Financing and the preparation and negotiation of the DIP Documents, as provided in the DIP Documents, including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses (collectively, the "**DIP Negotiation Expenses**"). Payment of all such DIP Negotiation Expenses shall not be subject to allowance by the Court.  Professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that on or before receiving payment or reimbursement after the Petition Date for any professional fees incurred by the DIP Lender pursuant to the DIP Documents, the DIP Lender shall provide a summary fee statement along with a summary of tasks performed by all professionals during such period (such statement, a "**Fee Statement**") to the U.S. Trustee and counsel for the official committee of unsecured creditors (if appointed) contemporaneously with the delivery thereof to the Debtor. To the extent that the Debtor, the U.S. Trustee, or the committee has an objection to the reasonableness of the fees and expenses of any such professional, and cannot resolve the objection within ten (10) days of receipt of the Fee Statement,

then the Debtor, the U.S. Trustee, or committee shall file with this Court and serve on such professionals an objection (the "**Fee Objection**") limited to the issue of the reasonableness of such professionals' fees and expenses, and any failure by the Debtors, the U.S. Trustee, or committee to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable Fee Statement. The Fee Statement shall not be required to comply with any particular format, may be in summary form only, but must at a minimum include a general, brief description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; *provided*, that the Debtor, the U.S. Trustee, and the Committee reserve the right to seek that copies of such invoices containing the detailed time entries of the applicable professional be provided to such party (and each applicable professional reserves all rights to object to such request and to redact privileged, confidential or sensitive information from any information provided to such parties). Any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a Fee Statement shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall promptly pay (a) the undisputed fees, costs, and expenses reflected on any Fee Statement to which a Fee Objection has been timely filed, (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed and (c) all fees, costs and expenses subject to a Fee Objection that are ultimately allowed by a final, non-appealable order resolving such Fee Objection, or pursuant to a consensual resolution of the Fee Objection reached by the DIP Lender and the party timely submitting such Fee Objection. All unpaid fees, costs, expenses, and charges of the DIP Lender that have not been disallowed by this Court on the basis of a timely filed Fee Objection shall constitute DIP Obligations and shall be secured by the Collateral.

20.    *Exculpation.*    Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business or maintenance of assets, or in

connection with its restructuring and sale efforts.  So long as the DIP Lender complies with its obligations under the DIP Documents and its obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

21.    *Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

22.    *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

23.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the DIP Lender, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns, *provided* that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtors.

24.    *Limitation of Liability*.  The Debtors shall seek in the Final Order, in addition to the protections offered to the DIP Lender in this Interim Order, the following provision: "In determining to make any loan or other extension of credit under the DIP Note, or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in "control" of the operations of the Debtors, (ii) owe

18

any fiduciary duty to the Debtors, their respective creditors, shareholders or estate, and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute)."

25.    *Credit Bid.*  Subject to and effective upon entry of the Final Order, the DIP Lender shall have the unqualified right to credit bid all or any portion of the outstanding DIP Obligations in any sale of the Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for the Debtors under section 725 of the Bankruptcy Code.

26.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

27.    *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

28.    *Final Hearing*. The Final Hearing will be held by this Court on _____ __, **2024,** at _____ (prevailing Pacific time).  The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon: (a) Schwartz Law PLLC, 601 East Bridger Avenue, Las Vegas, Nevada 89101, Attn: Samuel A. Schwartz, attorneys for the Debtors; (b) Fox Rothschild LLP, 1980 Festival Plaza Drive, Suite 700, Las Vegas, Nevada 89135, Attn: Brett Axelrod, attorneys for the DIP Lender; and (c) the Office of the United States Trustee, 300 Las Vegas Boulevard S., Suite 4300, Las Vegas, NV 89101 (the "**Notice Parties**"), and shall be filed with the

Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later than _____ __, **2024,** at **5:00 p.m.** (prevailing Pacific time).  All replies to objections shall be served on the objecting party and the Notice Parties, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later _____ ___, **2024,** at **5:00 p.m.** (prevailing Pacific Time).

**IT IS SO ORDERED.**

Prepared and respectfully submitted by:

**SCHWARTZ LAW, PLLC**

By: /s/_____
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV  89101

*Proposed Attorneys for the Debtors*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel and any unrepresented parties who appeared at the hearing, except those as to whom review was waived on the record at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

###