Cameron Gulden, Assistant United States Trustee
State Bar No. MN 310931
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
Email: *edward.m.mcdonald@usdoj.gov*
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Tel: (702) 388-6602
Attorneys for the United States Trustee for Region 17
    TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>RAWHIDE MINING LLC,<br><br>            Debtor.<br><br>Affects all Debtors ☒<br>Affects Rawhide Mining LLC ☐<br>Affects Rawhide Acquisition ☐<br>   Holding LLC | Case No: 23-15619-HLB<br><br>Chapter 11<br><br>*Proposed Joint Administration with:*<br>  In re Rawhide Acquisition Holding LLC,<br>  Case No. 23-15620-HLB<br><br>Date: December 28, 2023<br>Time: 10:30 a.m.<br>Location: Foley Crtrm. 4, Telephonic |

**THE U.S. TRUSTEE'S OMNIBUS RESPONSE, OBJECTION, AND RESERVATION OF RIGHTS TO DEBTORS' EMERGENCY FIRST DAY MOTIONS**

To the Honorable HILARY L. BARNES, United States Bankruptcy Judge**:**

Tracy Hope Davis, United States Trustee for Region 17 (the "U.S. Trustee"), by and through her undersigned counsel, hereby presents her response, objection, and reservation of rights (the "Omnibus Objection") to the following first day motions filed by Rawhide Mining LLC ("Rawhide") and Rawhide Acquisition Holding LLC ("Holding") (collectively the "Debtors")[1]:

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the U.S. Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "FRBP" refers to the Federal Rules of Bankruptcy Procedure; and, "FRE" refers to the Federal Rules of Evidence. "Rawhide Case" refers to *In re Rawhide LLC*, Case No. 23-15619-HLB (Bankr. D. Nev.); and, "Holding Case" refers to *In re Rawhide Acquisition Holding LLC*, Case No. 23-15620 (Bankr. D. Nev.)(collectively these are the "Debtors'

1

- *Motion for Order Directing Joint Administration of Chapter 11 Cases* [Rawhide Case, ECF No. 3; Holding Case, ECF No. 4], filed on December 20, 2023 ("Joint Administration Motion");

- *Motion for entry of an Order Granting the Debtors Additional Time within which to file Schedules and Statements* (Rawhide Case, ECF No. 4; Holding Case, ECF No. 5], filed on December 20, 2023 ("Motion to Extend Filing Deadline");

- *Motion Under 11 US.C. §§ 105(a) and 362(a) to (I) Enforce the Automatic Stay and (II) Extend the Automatic Stay Under§ 105(a)* [Rawhide Case, ECF No. 10; Holding Case, ECF No. 10], filed on December 21, 2023 ("Motion to Extend Stay"), which is supported by the declaration of Samuel A. Schwartz [Rawhide Case, ECF No. 11; Holding Case, ECF No. 11] ("Schwartz Stay Decl.");

- *Emergency Motion for Entry of an Order (I) Authorizing Continued use of Existing Bank Account and Honoring Certain Pre-Petition Obligations related thereto, (II) Authorizing Continued use of Business Forms, and (III) Granting Related Relief* [Rawhide Case, ECF No. 18], filed on December 22, 2023 ("Bank Account Motion");

- *Motion for an Order (I) Prohibiting Utilities from Altering, Refusing or Discontinuing Services on Account of Pre-Petition Claims, (II) Deeming Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance of Payment* [Rawhide Case, ECF No. 16], filed on December 22, 2023 ("Utilities Motion");

- *Emergency Motion for Order (I) Authorizing the Debtor to Pay Prepetition Employee Wages, Salaries, Employee Benefit Contributions, Reimbursable Business Expenses, and Related Obligations and (II) Directing Financial Institutions to Honor and Process Transfers related to such Obligations* [Rawhide Case, ECF No. 17], filed on December 22, 2023 ("Wages Motion"); and,

- *Emergency Motion for Interim and Final Orders: (I) Authorizing Debtors to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Interim and Final Hearings; and (V) Granting Related Relief* [Rawhide Case, ECF No. 22; Holding Case, ECF No. 19], filed on December 25, 2023 ("Motion for DIP Financing") (collectively, the "First Day Motions").

---

Cases"). A specific case name plus "ECF No." refers to documents filed in the specifically named case. Citation to a motion by name is to the applicable motion filed in the Rawhide Case. The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to FRBP 9017 and FRE 201. To the extent that this Omnibus Objection contains factual assertions predicated upon statements made by the Debtors, any of their current or former affiliates, agents, attorneys, professionals, officers, directors, or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under FRBP 9017 and FRE 801(d)(2).

The Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit at the hearing.

I. **INTRODUCTION**

The U.S. Trustee reserves all rights with respect to the First Day Motions, including, but not limited to her right to take any appropriate action under the Bankruptcy Code, the FRBP, and the local rules of the U.S. Bankruptcy Court should the First Day Motions and related pleadings be amended or supplemented. The U.S. Trustee requests that the First Day Motions be granted, if at all, only to the extent which is minimally necessary to maintain the existence of the Debtors given the extremely short notice of the First Day Motions. In addition, the U.S. Trustee objects to the request to extend the deadline to file schedules, because the requested extension is past the Section 341 meeting and the final relief in the DIP Financing motion. The U.S. Trustee objects to the Wages Motion because Debtor has failed to establish immediate or irreparable harm and also to identify the employees to be paid so that creditors and parties in interest can determine if Section 503(c) is implicated. The U.S. Trustee objects to the Bank Account Motion because Debtor seeks to continue using an account at a bank which has not agreed to be an authorized depository in the District of Nevada with the attendant protections afforded by Section 345. The U.S. Trustee objects to the Motion for DIP Financing because, *inter alia*, the terms of the DIP Loan appear to cede undue control of the Debtor's Cases to the DIP Lender, entrench the Debtors' management, and will be approved on a final basis before the Section 341 meetings are held or the extended deadline to file schedules occurs.

II. **MEMORANDUM OF POINTS AND AUTHORITIES**

A. **Background Facts and Procedural Postures**

1. The Debtors' Case were filed on December 20, 2023, as voluntary cases under Chapter 11, but without schedules, statements of financial affairs ("SOFAs"), FRBP 2016 statements of attorney compensation, or lists of equity security owners. [*See* Debtors' Cases, each at ECF No. 1; *see also* Rawhide Case, ECF No. 6; Holding Case, ECF No. 7]. The Debtors' petitions were signed by Marceau Schlumberger, as the manager for Rawhide and as a member of Holding. [*See* Debtors'

Cases, each at ECF No. 1, p. 5; #17]. The authorizations to file the Debtors' cases were each dated December 10, 2023. [*See* Rawhide Case, ECF No. 1, p. 16 of 19; Holdings Case, ECF No.1, p. 11 of 15].

2. The Rawhide Case petition has a verified creditor matrix attached to it with fifty (50) entries, including the Debtors, proposed counsel, eight (8) governmental entities required by LR 5003(c), and forty-two (42) other creditors or parties in interest. [*See* Rawhide Case, ECF No. 1, pp. 9-14 of 19]. The Holding Case petition has a verified creditor matrix attached to it with a subset of the entries on the Rawhide Matrix, with seventeen (17) entries, including the Debtors, proposed counsel, eight (8) governmental entities required by LR 5003(c), and nine (9) other creditors or parties in interest. [*See* Holding Case, ECF No. 1, pp. 7-9 of 15]. The creditor matrices were not input into the Court's electronic case filing system. [*See* Rawhide Case, ECF No. 6; Holding Case, ECF No. 7]. Therefore, notice of the Rawhide Case bankruptcy and Section 341 meeting was not served by the Bankruptcy Noticing Center on anyone except for Rawhide, proposed counsel for the Debtors, and the U.S. Trustee. [*See* Rawhide Case, ECF Nos. 2, 6 & 20]. The notice of the Holding Case bankruptcy and Section 341 meeting was not served by the Bankruptcy Noticing Center on anyone except for Holding, proposed counsel for the Debtors, De Jong Capital and its counsel, and the U.S. Trustee. [*See* Holding Case, ECF Nos. 3, 7 & 17].

3. The Section 341 Meetings of Creditors are presently set for January 25, 2024, at 11:00 a.m. [*See* Rawhide Case, ECF No. 2; Holding Case, ECF No. 3].

4. On December 26, 2023, the Debtor's Cases were transferred to the District of Nevada Northern Division (Reno). [*See* Rawhide Case, ECF No. 21; Holding Case, ECF No. 25].

5. On December 26, 2023, the Court granted orders shortening time, setting the First Day Motions for hearing on December 28, 2023, at 10:30 a.m., with objections due by December 27, 2023 at 5:00 p.m. [*See* Rawhide Case, ECF Nos 26-27; Holding Case, ECF Nos. 25-26].

6. The Schwartz Stay Decl. supports the Motion to Extend Stay. [*See* Debtors' Cases, each at ECF Nos. 10-11].

4

7. The First Day motions are supported by the *Omnibus Declaration of Marceau Schlumberger in Support of Debtor's Chapter 11 Petitions, First Day Motions, and Related Relief* (the "First Day Declaration"), which was filed at approximately 8:00 p.m. on December 26, 2023. [*See* Rawhide Case, ECF No. 30; Holding Case, ECF No. 28].

8. Debtors filed certificates of service asserting that the First Day Motions and the notice of hearing and orders shortening time, although not the First Day Declaration, were served by overnight or express mail on December 26, 2023. [*See* Rawhide Case, ECF No. 33; Holding Case, ECF No. 31].

9. No trustees or official committees have been appointed in the Debtors' cases. [*See generally* the Debtors' Cases case dockets].

10. "Rawhide owns and operates a commercial gold mining operation, located at forty-five (45) miles northeast of Hawthorne, Nevada (the "Property"). Rawhide is wholly owned by Holding." [*See* ECF No. 4, p. 2 of 8; ¶6 (Motion to Extend Filing Deadline)].

11. The Debtors assert that they filed these cases "to prevent the forfeiture of a surety bond that is critical to Rawhide's ability to operate its business." [*See* Motion to Extend Filing Deadline, pp. 3-4 of 8; ¶¶12 & 15].

**III.    ARGUMENT**

12. Four principles for Courts to consider regarding first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

5

> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

13. Accordingly, the relief sought in the First Day Motions, should be limited to that which is minimally necessary to maintain the existence of the Debtors. Relief should only be granted on an interim basis, with final hearings set so that the U.S. Trustee, creditors and parties in interest can review and respond to the final relief sought, preferably after the completed schedules are filed, the 341 Meetings of Creditors are held, and the U.S. Trustee has had an opportunity to form an Official Committee of Unsecured Creditors.

### Response to Joint Administration Motions

14. The Joint Administration Motions provide that conflicts between the estates are not anticipated. [*See* Joint Administration Motion, p. 4 of 10; ¶16].

15. The Joint Administration section of the First Day Declaration provides that Holdings owns 100% of Rawhide and that Debtors are co-obligors, but provides no specific information on conflicts, or the lack thereof, between the Debtors. [*See* First Day Declaration, pp. 7-8 of 236; ¶¶25-30].

16. Because Debtors have not yet filed schedules or SOFAs, and the Section 341 Meetings of Creditors have not been held, there is insufficient data for creditors and parties in interest to analyze for potential conflicts arising from any intercompany claims or for other reasons.

17. Accordingly, the request for joint administration should only be granted on an interim basis, with a final hearing set after schedules are filed and the Section 341 meetings have been held.

### Objection to Motions to Extend Filing Deadlines

18. Through the Motions to Extend Filing Deadlines, Debtors request an extension to the deadline to file schedules and statements to February 2, 2024, without prejudice to further extensions. [*See* Motion to Extend Filing Deadline, pp. 3-4 of 8; ¶15].

19. The requested deadline of February 2, 2024, is eight (8) days *after* the Section 341 Meetings of Creditors. To give creditors and parties in interest time to review Debtors' schedules and statements before the Section 341 Meetings of Creditors, and before the final relief on DIP Financing requests, any extension should only be to Wednesday, January 10, 2023, so that creditors and parties in interest have at least a week to review Debtors' schedules and statements.

**Response to Motions to Extend Stay**

20. The U.S. Trustee does not object to the Motions to Extend Stay.

21. The Motions to Extend Stay seek, *inter alia*, to extend the automatic stays pursuant to Section 105(a) to Argonaut Insurance Company. [*See* Motion to Extend Stay, p. 3 of 15; ¶10, and p. 9 of 15; ¶40].

22. To the extent that debtors seek to extend the automatic to non-debtors, courts have noted that:

> The automatic stay may protect nondebtors only under 'unusual circumstances' where the interests of the debtor and the nondebtor are inextricably interwoven. *See A.H. Robins v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986). However, the Ninth Circuit has held that 'although referred to as extensions of the automatic stay,' it is in fact an injunction issued by the bankruptcy court after a hearing where it is established that unusual circumstances are needed to protect the administration of the bankruptcy estate. *Boucher v. Shaw*, 572 F.3d [1087] at 1093 n.3 [(9th Cir. 2009)] (citing *In re Chugach Forest Prods., Inc.*, 23 F.3d [241] at 247 [(9th Cir 1994)]); *In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997). Thus, any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a).

*Ripon Self Storage, LLC v. Exchange Bank (In re Ripon Self Storage, LLC)*, Nos. EC-10-1325-HKiD, EC-10-1326-HKiD, 2011 Bankr. LEXIS 1785, at *18-19 (B.A.P. 9th Cir. Apr. 1, 2011).

23. Given the short notice for the various First Day Motions, including the Motions to Extend Stay, the U.S. Trustee requests that the Motions to Extend Stay be granted on an interim basis, so that creditors and parties in interest have sufficient time to respond at a final hearing.

7

**Response to Utilities Motion**

24. Through the Utilities Motion, Rawhide seeks to establish a procedure whereby certain utilities listed on Exhibit 1 to the Utilities Motion may request additional assurance of payment so that it is received by Debtors' counsel within forty-five days of the entry of an order granting the Utilities Motion. [*See* Utilities Motion, p. 4 of 17; ¶11]. Any additions to the list of covered utilities will have thirty day from the date of service on them to request adequate assurance. [*See* Utilities Motion, p. 5 of 17; ¶13]. The proposed interim order provides that Debtors shall serve the covered utilities with the order within five (5) days of the entry of the order. [*See* Utilities Motion, p. 16 of 17; ll. 6-7].

25. The U.S. Trustee does not object to the Utilities Motion.

**Objection to Wages Motion**

26. Through the Wages Motions, Rawhide seeks to pay its seven (7) direct employes and two (2) contract employees pre-petition wages, salaries, commissions, paid time off, employee benefit contributions, and business expense reimbursements totaling $53,924.04, but with a cap of $15,150 per employee. [*See* Wages Motion, p. 3 of 16; ¶¶5-6].

27. The First Day Declaration simply states regarding the Wage Motion that payment is necessary because without it "there is a significant risk that Employees will resign and that those Employees that do remain will be discontented and demoralized." [*See* First Day Declaration, p. 19 of 236; ¶79].

28. The Wage Motion is predicated on 11 U.S.C. §§ 105, 363, 507, 1107 and 1108. [*See* Wages Motion, p. 5 of 16; ¶13]. As Rawhide's request for relief in the Wage Motion is predicated on such authorities, it should be denied.

29. The "general rule is that a distribution on prepetition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstance." *See In re Airbeds, Inc.*, 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988).

30. The Wages Motion provides that no employee will be paid over the cap set Sections 507(a)(4) and (a)(5). [*See* Wages Motion, p. 14 of 16; ll. 13-17].

31. While the proposed order to the Wages Motion provides that no payments that implicating Section 503(c) can be made, neither the Wages Motion nor the First Day Declaration provides a list of the employees to be paid or information whether any of the covered employees are insiders of the Debtors. [*See* Wage Motion & First Day Declaration]. Accordingly, Rawhide should confirm that no payments to be made through the Wage Motion will be paid to insiders of either of the Debtors. Alternatively, Rawhide should provide a list of the employees covered by the Wages Motion so that creditors and parties in interest can assess whether any are insiders and whether payments to them may implicate Section 503(c). *See In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009).

32. Neither the Wage Motion nor the First Day Declaration articulate extraordinary circumstances nor provide sufficient evidence to support the emergency relief the Wage Motion seeks. *See* FRBP 6003(b); *see also In re Humboldt Creamery, LLC*, No. 09-11078, 2009 Bankr. LEXIS 2477, at *1-2 (Bankr. N.D. Cal. Apr. 23, 2009) ("The request is governed by Rule 6003(b) of the Federal Rules of Bankruptcy Procedure. This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm.").

33. Rawhide does not contend nor provide evidence that any of its employees have threatened to resign or whether such employees can be replaced. [*See* Wage Motion & First Day Declaration].

34. Accordingly, Rawhide has not provided sufficient evidence of "immediate and irreparable harm" to warrant relief under FRBP 6003.

35. For the reasons stated above, the relief requested by Rawhide in the Wages Motion should be denied, or only granted on an interim basis.

### Objection to Bank Account Motion

36. Through the Bank Account Motion, Rawhide seeks entry of an order authorizing the continued use of its bank account (the "Account") located at Northwest Bank. [*See* Bank Account Motion, p. 1 of 13 and 3 of 13; ¶5].

37. Northwest Bank does not appear to have agreed to be an authorized depository in the District of Nevada. *See* https://www.justice.gov/ust/ust-regions-r17/region-17-general-information#nvlv at "District of Nevada Authorized Depositories."

38. Rawhide seeks permission to have its Account designated as a debtor-in-possession ("DIP") account. [*See* Bank Account Motion, p. 11 of 13].

39. Rawhide appears to seek a waiver of Section 345 and the U.S. Trustee Guidelines so that it does not have to close pre-petition accounts. [*See* Bank Account Motion, p. 5 of 13; ¶¶14-15].

40. The Bank Account Motion also provides that Rawhide is in the process of opening DIP accounts. [*See* Bank Account Motion, p. 3 of 13; ¶7].

41. Section 345(a) of the Bankruptcy Code requires the trustee or a debtor in possession to deposit or invest money of the estate so that it will result in the "maximum reasonable net return. . . [while] taking into account the safety of such deposit or investment." *See* 11 U.S.C. § 345 (emphasis added). Section 345(b) requires that estate funds be deposited or invested to ensure that the funds are protected for the benefit of creditors. *See* 11 U.S.C. § 345(b). Rawhide is enjoying the protections afforded it under the Code. Section 345 of the Code and the Guidelines are both designed to ensure that creditors' interests are also protected.

42. Generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security. To ensure that trustees and debtors in possession meet their responsibilities to safeguard funds in accordance with Section 345, the U.S. Trustee monitors fiduciaries and depositories. *See* U.S. Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), § 7-1.1, pp. 1-2, at https://www.justice.gov/ust/file/volume_7_banking_and_bonding.pdf/download.

43. The Uniform Depository Agreement ("UDA") between the depository and the U.S. Trustee requires all depository to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on

deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, §§7-1.2.1, p. 2 and 7-1.3, pp. 4-6.

44. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7-1.3.2, pp. 5-6.

45. Compliance with the U.S. Trustee Guidelines will ensure that banks can identify bank accounts for debtors-in-possession, ensure compliance with the requirements of 11 U.S.C. § 345(b), and that all post-petition monies received by Rawhide will be readily identifiable and easily accounted for during the pendency of these cases.

46. The U.S. Trustee objects to maintaining the Northwest account. Northwest Bank is not an authorized depository in the District of Nevada and, therefore, estate funds held by this bank do not have the protections and reporting requirements afforded by Section 345 and the Guidelines.

47. To comply with the Guidelines, Rawhide should be required to open a DIP account at an Authorized Depository as soon as possible, and no later than the date of the final hearing on the Bank Account Motion.

48. In addition, any new accounts opened should be DIP accounts at authorized depositories.

49. For the reasons stated above, the emergency relief requested by Rawhide in the Bank Account Motion should be denied.

### Objection to Motion for DIP Financing

50. Before approving debtor in possession financing, a court must consider whether the terms of proposed financing are fair, reasonable and adequate. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011).

51. In this respect, courts routinely consider the following factors:

(1) That the proposed financing is an exercise of sound and reasonable business judgment;

(2) That the financing is in the best interests of the estate and its creditors;

(3) That the credit transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the Debtor's businesses;

(4) That the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and

(5) That the financing agreement was negotiated in good faith and at arm's length between the Debtors, on the one hand, and . . . the Lenders, on the other hand.

*See In re Sterling Mining Co.*, No. 09-20178-TLM, 2009 Bankr. LEXIS 2341, at *8 (Bankr. D. Idaho Aug. 14, 2009), citing *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

52. Through the Motion for DIP Financing, Debtors seek a total of $2.5 million in DIP Financing, with $960,000 approved on an interim basis. [*See* Motion for DIP Financing, p. 4 of 22; ll. 12-17]. The proposed DIP Loan is from De Jong Capital ("DIP Lender") although the DIP Financing Motion provides no information about this entity, except that it is a Delaware limited liability company. The First Day Declaration also discloses that DIP Lender has experience in the mining space. [*See* First Day Declaration, p. 11 of 236; ¶45].

53. The proposed loan has an interest rate of 16% (and a default rate of the applicable federal rate plus 5%), matures on May 31, 2024, and DIP Lender will be paid fees, including fees of at least $225,000 (based on a loan amount of $2.5 million) plus any moneys incurred in negotiating, preparing and monitoring the DIP Loan, including for professionals. [*See* Motion for DIP Financing, p. 3 of 22; Rawhide Case, ECF No. 22-2, p. 17 of 73]. DIP Lender will receive a first priority priming lien on Debtor's assets (except for a carve-out) including on avoidance actions, and a super-priority claim. [*See* Motion for DIP Financing, pp. 4-5 & 8 of 22].

54. The loan has numerous default events including failing: to file a plan by May 31, 2024, confirm a plan by June 30, 2024, file a bid procedures motion by January 8, 2024 (with DIP Lender as stalking horse with protections), a final order approving the DIP Loan by January 19, 2024 (before the Section 341 meeting on January 25 or the requested filing extension of February 2), a consummated sale by April 9, 2024; the appointment of a trustee; the conversion to Chapter 7; the granting of a relief from stay regard to the DIP Loan collateral; or any action that terminates or

rescinds the terms of the DIP Loan without the DIP Lender's consent; and the automatic stay is modified to allow the DIP Lender to take action upon a default, after a 5 business day cure period. [*See* Motion for DIP Financing, pp. 3-7 of 22; Rawhide Case, ECF No. 22-2, pp. 34-36 of 73].

55. The DIP Lender is also indemnified and it and its insiders will receive releases and exculpations. [*See* Motion for DIP Financing, pp. 5 & 7-8 of 22].

56. The Motion for DIP Financing also seeks to pre-approve the Lender as a stalking horse bidder, with undefined, except as 'customary,' stalking horse protections, in a sale that must commence on March 20, 2024. [*See* Motion for DIP Financing, p. 7 of 22; Rawhide Case, ECF No. 22-2, p. 9 of 73].

57. The Motion for DIP Financing and the First Day Declaration contain inadequate information regarding the need for the amount of requested financing during the interim period. The DIP Loan must be approved on a final basis by thirty days after the cases commenced, in other words January 19, 2024, the interim loan is for $960,000, but the budget attached to the Motion for DIP Financing indicates that for the week of January 15-21, 2024, the Debtors' expenses are $715,000, their revenue is $202,000, which nets to [-$513,000], and is just 53.4% of the requested interim loan amount of $960,000. [*See* Motion for DIP Financing, pp. 4 & 7 of 22; Rawhide Case, ECF No. 22-1, p. 2 of 2].

58. Courts recognize that debtors in possession "generally enjoy little negotiating power with a proposed lender…. As a result, lenders often exact favorable terms that harm the estate and creditors." *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). "[B]ankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender…. Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest." *Id.* (internal citations omitted). Bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one

designed for the sole (or primary) benefit of a post-petition lender  *See, e.g., Ames Dep't Stores, Inc.*, 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (citing *In re Tenney Village Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (holding that the terms of a post-petition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors . . . to one specially crafted for the benefit" of one creditor)) *See also In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. Arizona 2008).

59. Events of default under the DIP Loan terms include the appointment of a Chapter 11 trustee or an examiner with expanded powers, conversion to Chapter 7, any action that terminates or rescinds the DIP Loan or the Debtors' obligations under the DIP Loan terms, or the Debtor's failure to meet numerous benchmarks set by the Lender.  [*See* Motion for DIP Financing, pp. 3-7 of 22; Rawhide Case, ECF No. 22-2, pp. 34-36 of 73].

60. These provisions may improperly skew the bankruptcy process for the benefit of DIP Lender and Debtor's existing management.  *See, e.g., Ames Dep't Stores, Inc.*, 115 B.R. at 38 ("It is similarly the practice of this Court not to approve financing arrangements containing clauses triggering default on the appointment of a trustee or examiner under section 1104. Such entrenchment of management may not be in the best interests of the estate and only precludes parties-in-interest from seeking to redress fraud or gross mismanagement through such an appointment.").

61. In addition, the default provisions regarding the termination or rescission of DIP Loan terms or against DIP Lender may improperly undercut the adversarial system contemplated by the bankruptcy process.  *See In re Tenney Village Co., Inc.*, 104 B.R. at 569 ("It is said that a Chapter 11 lender should not be required to finance the prosecution of claims against it.  That is true.  If the lender believes that this will occur, it can elect not to make the loan.  It cannot expect, however, to change the rules of a Chapter 11 case.") (discussing limitations on the ability of an unsecured creditors committee to challenge a DIP loan).

62. The releases of the DIP Lender and its insiders should be denied to the extent that they constitute non-consensual third-party non-debtor releases that violate Ninth Circuit law.  [*See*

14

Motion for DIP Financing, pp. 4-5 of 22; Rawhide Case, p. 25 of 73; §4.2(f)]. *See Resorts Int'l v. Lowenschuss (In Re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods Inc.)*, 885 F.2d 621 (9th Cir. 1989).

63. The relief requested in the Motion includes an alteration of the automatic stay so that the proposed Lender can take action against the Debtor upon the occurrence of a default, with what appears to be a 5-business day cure period. [*See* Motion for DIP Financing, p. 6 of 22].

64. The Debtor has not demonstrated the necessity for sidestepping the usual process for obtaining relief from stay. *See In re Tenney Village Co., Inc.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (denying final approval of DIP financing agreement that would have, among other things, granted lender relief from the automatic stay unless the debtor obtained an order prohibiting foreclosure within a 7-day notice period).

65. The proposed DIP financing terms provide for liens covering the proceeds of any avoidance actions. However, avoidance actions should be maintained for the benefit of unsecured creditors. *Cf. Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors …."); *see also McFarland v. Leyh (in Re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("[T]he general policy behind the assertion of avoidance actions. The proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors. 5 Collier on Bankruptcy P 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994).").

66. The proposed interim order provides for a Section 364(e) finding at the interim stage. [*See* Rawhide Case, ECF No. 22-3, pp. 2, 6 & 15-16 of 22].

67. Such a finding would all but immunize the DIP Loan from appellate review. *See* 11 U.S.C. § 364(e); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487-89, 1491 & n.6 (9th Cir. 1987) (dismissing appeal of approval of cross-collateralization clause as moot pursuant to Section 364(e), even though the cross-collateralization clause may have been illegal per se).

68. This sweeping relief should not be granted on such extremely short notice.

15

69. Through the DIP Loan terms, including the numerous default provisions, the proposed financing appears to transfer control of portions of the case to the DIP Lender. Accordingly, the DIP Financing Motion should be denied.

### Reservation of Rights

70. The U.S. Trustee reserves her rights to object to any amendments made to the First Day Motions, or any other additional relief requested in any subsequently filed motion, and to the final relief sought through the First Day Motions.

**WHEREFORE**, the U.S. Trustee requests to Court to sustain her Omnibus Objection; and grant such other relief as is just under the circumstances.

Dated: December 27, 2023     Respectfully Submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: */s/ Edward M. McDonald Jr.*
 Edward M. McDonald Jr., Esq.,
 Trial Attorney