# Exhibit 2

**APNs:** 005-200-06; 005-200-05; 009-160-13; 009-160-02; 009-160-15; 009-160-06; 009-160-09

*Property includes unpatented mining claims*

**Recording requested by, and when recorded mail to:**

Silverpeak Credit Partners LP
40 West 57th Street - 29th Floor
New York, NY 10019

> The undersigned hereby affirm(s) that this document, including any exhibits, submitted for recording does not contain the social security number of any person or persons. (Per NRS 2398.030)

80486-MIN

DOC #: 169965
01/03/2019 03:42 PM  Page: 1 of 52
OFFICIAL RECORD
Requested By:
COW COUNTY TITLE
Mineral County, NV
Christine Hoferer, Recorder - Auditor
Fee: $35.00  RPTT: $0.00
Recorded By: tmcnally

---

## DEED OF TRUST, LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING AND AS-EXTRACTED COLLATERAL FILING

### From

### RAWHIDE MINING LLC, a Delaware limited liability company
#### Trustor

### To

### COW COUNTY TITLE CO.,
#### Trustee

#### For the benefit of

### SILVERPEAK CREDIT PARTNERS, LP,
#### Beneficiary

#### Dated January 3, 2019

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS.

THIS INSTRUMENT SECURES FUTURE ADVANCES.

THIS INSTRUMENT COVERS FIXTURES AND GOODS THAT WILL BECOME FIXTURES ON THE PROPERTY DESCRIBED IN EXHIBIT A.

THIS INSTRUMENT COVERS AS-EXTRACTED COLLATERAL.

**DEED OF TRUST, LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING AND AS-EXTRACTED COLLATERAL FILING**

THIS DEED OF TRUST, LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING, AND AS-EXTRACTED COLLATERAL FILING ("**Deed of Trust**"), dated as of January 3, 2019, is made by **RAWHIDE MINING LLC,** a Delaware limited liability company, with an address of 143 Keddie St., Fallon, Nevada 89406 as the trustor ("**Trustor**"), to **COW COUNTY TITLE CO.,** a Nevada corporation with an address of 761 S. Raindance, Pahrump, Nevada 89048, as the trustee ("**Trustee**"), in favor of and for the benefit of **SILVERPEAK CREDIT PARTNERS, LP,** a Delaware limited partnership with an address of 40 West 57th Street - 29th Floor New York, NY 10019, in its capacity as administrative agent and collateral agent for itself and the Lenders, together with its successors and assigns as the beneficiary ("**Beneficiary**").

Reference is made to the Loan and Security Agreement dated of even date herewith (as amended, supplemented or otherwise modified from time to time, the "**Loan Agreement**") between Rawhide Mining LLC, a Delaware limited liability company, Rawhide Acquisition Holding LLC, a Delaware limited liability company, and the Rawhide Subsidiaries (as defined in the Loan Agreement), as "**Borrower,**" several financial institutions as the Lenders, and Beneficiary, as administrative agent and collateral agent for itself and the Lenders, providing for the extension of the credit described therein in an aggregate principal amount not to exceed US$18,100,000 and the payment and performance of obligations(collectively, as any may hereafter be modified, extended, or renewed, the "**Secured Obligations**") to be secured by this Deed of Trust.

The Trustor owns, leases or holds, or has an option to purchase, those certain properties consisting of patented claims, unpatented mining claims, unpatented millsite claims, mineral rights, water rights, leasehold and other rights and interests in Mineral County, Nevada as further described herein, including on Exhibit A-1, Exhibit A-2, Exhibit B-1 and Exhibit B-2 attached hereto and incorporated herein by reference.

It is the intention of Trustor and Beneficiary that this Deed of Trust is an "instrument" (as defined in Nevada Revised Statute ("**NRS**") 106.330, as amended or recodified from time to time) which secures "future advances" (as defined in NRS 106.320, as amended or recodified from time to time) and which is governed pursuant to NRS 106.300 through 106.400, as amended or recodified from time to time. It is the intention of Trustor and Beneficiary that the Secured Obligations include, without limitation, the obligation of Trustor to repay "future advances" of "principal" (as defined in NRS 106.345), as amended or recodified from time to time), and costs and expenses of collection or incurred in connection with protecting Beneficiary's interests hereunder (including, without limitation, expenses incurred in connection with the preservation of the value of the Real Property), or further provided in Section 3 of this Deed of Trust, in an amount up to $18,100,000.00, and that the lien of this Deed of Trust secures the obligation of Trustor to repay all such "future advances" with the priority set forth in NRS 106.370(1), as amended or recodified from time to time.

THIS DEED OF TRUST COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL ESTATE DESCRIBED IN THIS DEED OF TRUST AND ALSO COVERS **"AS-EXTRACTED COLLATERAL"** AS DEFINED IN THE UNIFORM COMMERCIAL CODE AND MINERALS OR THE LIKE TO BE FINANCED AT THE MINEHEAD OF THE MINE OR MINES LOCATED ON THE REAL ESTATE DESCRIBED IN THIS DEED OF TRUST.  THIS DEED OF TRUST FURTHER CONSTITUTES A SECURITY AGREEMENT AND IS TO BE FILED FOR RECORD IN THE REAL ESTATE RECORDS AS, AMONG OTHER THINGS, A FINANCING STATEMENT AND A FIXTURE FILING.

Capitalized terms used herein and not otherwise defined herein shall have the meaning set forth in the Loan Agreement.

THEREFORE, Trustor hereby covenants and agrees as follows:

## SECTION 1
## Grant of Real Property

1.01    Trustor irrevocably grants, bargains, sells, transfers and assigns to Trustee IN TRUST, with power of sale and right of entry, for the benefit of Beneficiary, all of Trustor's right, title and interest in and to the following, whether now owned or hereafter acquired by Trustor (collectively, the "**Real Property**"):

(a)    Those certain patented and unpatented mining claims, millsites, and fee lands described in Exhibit A-1, Exhibit A-2, Exhibit B-1 and Exhibit B-2 attached hereto and made a part hereof as if fully set forth herein, together with all existing and future easements and rights affording access to such claims, including, without limitation, (i) the Patent Number 27-2008-0015 granted by the United States of America to the Borrower on August 24, 2008 (the "**Patent**") and the patented mining claims described in Exhibit A-1 attached hereto and made a part hereof as if fully set forth herein (collectively, the "**Patented Mining Claims**"); (ii) the unpatented mining claims described in Exhibit A-2 and Exhibit B-2 attached hereto and made a part hereof as if fully set forth herein, including those unpatented mining claims referenced in the Affidavit and Notice of Intent to Hold Mining Claims and Sites filed by the Borrower with the County Recorder of Mineral County, Nevada on October 27, 2011 and recorded as Document No. 154561 in the records of the County Recorder of Mineral County, Nevada (collectively, the "**Unpatented Mining Claims**") (iii) any fee interest in such claims if and when acquired by Trustor, (iv) all of Trustor's right, title and interest in and to the leasehold or other estates or interests now owned or hereafter acquired by Trustor in and to the Land under any lease or other instrument relating thereto, as the same may from time to time be supplemented, modified, amended, renewed or extended, including, without limitation, the leasehold estates described in Exhibit B-1 and B-2 attached hereto and made a part hereof as if fully set forth herein ("**Leasehold Estates**") and that Mining Lease dated June 25, 2010 by and between Waste Solutions and Recycling LLC, a Delaware limited liability company and Borrower's predecessor-in-interest (together with all amendments and supplements, the "**Mining Lease**"), as evidenced by a Memorandum of Lease recorded with the County Recorder of Mineral County, Nevada on March 29, 2012 as Document No. 155702, together with all future modifications,

-2-

amendments, extensions, renewals thereof and all existing and future easements and rights affording access to it; and (iii) any and all patented and unpatented mining claims, millsites, mineral rights and/or fee lands hereafter acquired by Trustor for or in connection with the development, operation, or expansion of the Project, (all of the foregoing collectively referred to as the "**Land**"); together with

(b)    All minerals (inclusive, without limitation, of "minerals" as defined or treated as such under United States federal and State of Nevada laws and including, without limitation, gold and silver), mineral rights, mineral leases, mineral patents (including, without limitation, the Patent, Patented Mining Claims, and Unpatented Mining Claims), extracted minerals as as-extracted collateral, oil, gas, other hydrocarbons and associated substances, sulphur, nitrogen, carbon dioxide, helium and other commercially valuable substances which may be in, under or produced from any part of the Land, and mineral interests in or relating to the Land, the mineral estate in the Land, the right to exploit, mine, produce, sell, and/or receive royalties for any and all o fhte minerals lying below the surface of the Land, all claims to minerals of whatever nature and whatever form including, without limitation, unpatented mining claims (including, without limitation, the Unpatented Mining Claims), mining and heal leach operations; together with

(c)    All interest which Trustor may have or may hereafter acquire in all water, water rights and the permits and other evidence of authority or approval to appropriate and/or use ground or surface water appurtenant to or in connection with the Land or the Mining Lease, including, without limitation, all rights and interest of Trustor in and to the water rights described on Exhibit B attached hereto and incorporated herein (both consumptive and nonconsumptive), together with all changes, amendments, modifications or replacements thereof (collectively, the "**Water Rights**"); together with

(d)    All property, buildings, structures, and improvements now located or later to be constructed on the Land, including without limitation, any offices, buildings, all parking areas, roads, driveways, walks, fences, walls, docks, berms, irrigationsystems, landscaping, recreation facilities, drainage facilities, lighting facilities, utility lines and other site improvements (collectively, the "**Improvements**") and all appurtenances and other property and interests of any kind or character, whether described in Exhibit A or the Mining Lease or not, which may be reasonably necessary or desirable to promote the present and any reasonable future beneficial use and enjoyment of the Land and Improvements; together with

(e)    All existing and future appurtenances, privileges, easements, franchises, hereditaments and tenements of the Land and/or the Mining Lease, all development rights and credits, air rights, easements, rights of way, rights of ingress and egress, drainage rights, gores or strips of land, nay land lying in the streets, highways, ways, sidewalks, alleys, passages, roads or avenues, open or proposed, in front of or adjoining the Land and Improvements, any land in the bed of any body of water adjacent to the Land, including all minerals and ores, together with all dips, spurs and angles, minerals and ores therein, mineral products; oil, gas, other hydrocarbons and associated substances, sulphur, nitrogen, carbon dioxide, helium and other commercially valuable substances which may be in, under or produced from any part of the Land, possessory rights, privileges, franchises government approvals and entitlements, and credits incident, appendant, appurtenant, or therewith usually had and enjoyed, and all air rights, water courses,

4847-7180-3522, v. 7

and water stock, easements, rights-of-way, gores or strips of land, and any land lying in the streets, ways, alleys, passages, roads or avenues, open or proposed, in front of or adjoining the Land and Improvements.

TO HAVE AND TO HOLD all of the Real Property, together with all and singular the rights, privileges, benefits, contracts, hereditaments and appurtenances now or hereafter at any time before the foreclosure or release hereof, in any way appertaining or belonging thereto, unto the Trustee and to its substitutes or successors, forever, IN TRUST, upon the terms and conditions herein set forth; and Trustor hereby binds and obligates itself and its successors and assigns, to warrant and to defend, all and singular, title to the Real Property unto the Trustee, its substitutes or successors, forever, against the claims of any and all persons whomsoever claiming any part thereof.

1.02    There is hereby assigned to Beneficiary the lessor's interest in any and all leases of the Real Property and/or Personal Property, as hereinafter defined, or any portion thereof, now or hereafter owned or entered into by Trustor as lessor or any other party claiming by, through or under Trustor, as lessor as well as all rents, subrents, deposits, issues, profits, damages, royalties, income and other benefits now or hereafter derived from the Real Property and/or Personal Property (all of said leases and rents, and any and all interest in said leases and rents, or any guarantee thereof, shall hereinafter be referred to as the **"Leases"**).

1.03    Trustor grants Beneficiary, pursuant to Nevada Revised Statutes Chapter 104 (the **"Nevada Uniform Commercial Code"**), a present and continuing security interest in and to all of Trustor's right, title and interest in and to all personal property, assets, interests and rights, including all accounts, as-extracted collateral, instruments, chattel paper, deposit accounts, documents, general intangibles, money, letters of credit rights, supporting obligations and investment property, goods, equipment, fixtures, goods to become fixtures, building materials, books and records of Trustor, now or which may hereafter be located on or used in connection with the Real Property, together with all General Intangibles, contract rights (including without limitation the Material Contracts described in the Loan Agreement), plans, specifications and other similar documents, rights to trademarks and names of Trustor and goodwill associated therewith, all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued by or obtained from any Governmental Authority in connection with the operation and use of the Property, all minerals and associated byproducts mined or obtained from the Real Property, including, without limitation, all clays, metals, mineral-bearing ores, precipitates, concentrates, as-extracted minerals, or the mineral-bearing material which is mined, removed or extracted from the Land, or which is derived from the matter mined, removed or extracted from the Land, all accounts arising from the sale at the minehead of minerals or other substances of value that may be extracted from the Land, and all proceeds thereof, all general intangibles, personal property rights under the Mining Lease (to the extent a form of personal property under Nevada law), accounts, investment property, deposit accounts, chattel paper, documents, letter of credit-rights, letters of credit, money and instruments with respect to said Real Property rights to the payment of money, accounts receivable, reserves, deferred payments, refunds, rebates, cost savings, payments and deposits, whether now or later to be received from third parties (including all earnest money sales deposits) or deposited by Trustor with third parties (including all utility deposits), contract rights, development and use right,s governmental

-4-

permits and licenses, authorizations, certificates, variances, consents and approvals, applications, architectural and engineering plans, specifications and drawings, as-built drawings, guaranties, warranties, management agreements, operating and/or licensing agreements, supply and service contracts for water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone, cable, satellite, and other utilities and policies of insurance arising out of or in connection with the Real Property or the herein described property, all proceeds of any fire and/or builders risk insurance policy or any other policy insuring the Real Property or the herein described property against any other perils, and all awards made in eminent domain proceedings, or purchase in lieu thereof, with respect to the Real Property or the herein described property, together with all additions to, substitutions for, products or proceeds of, rents or profits of, or changes in or replacements of the whole or any part of said personal property, whether now owned or existing or hereafter acquired or arising or in which Trustor now has or hereafter acquires any rights, and this instrument shall constitute a security agreement with respect thereto. All of the foregoing are herein referred to as "**Personal Property**." The Personal Property, Real Property and Leases are collectively referred to as the "**Property**."

THIS DEED OF TRUST CONSTITUTES A SECURITY AGREEMENT, AND, UPON RECORDATION IN THE REAL PROPERTY RECORDS OF MINERAL COUNTY, NEVADA, SHALL CONSTITUTE AN EFFECTIVE FINANCING STATEMENT AS TO ALL PORTIONS OF THE PROPERTY CONSTITUTING FIXTURES OR AS-EXTRACTED COLLATERAL, AS THOSE TERMS ARE DEFINED IN THE NEVADA UNIFORM COMMERCIAL CODE, AND AS TO ALL REPLACEMENTS, SUBSTITUTIONS, AND ADDITIONS TO SUCH PROPERTY AND THE PROCEEDS THEREOF.  FOR PURPOSES OF THE SECURITY INTEREST CREATED HEREBY, BENEFICIARY IS THE "SECURED PARTY" AND TRUSTOR IS THE "DEBTOR."  TRUSTOR IS THE RECORD OWNER OF THE PROPERTY.

1.04    Notwithstanding anything herein to the contrary, the definition of "Property" above shall not include and in no event shall the lien and security interests granted under this Deed of Trust attach to any lease, license, account, general intangible, instrument, permit, document, contract or agreement to which Trustor is a party or any of its rights or interests thereunder if and for so long as the grant of such security interest shall constitute or result in a violation of applicable law or a breach or termination pursuant to the terms of, or a default under, any such property rights or agreement (other than to the extent that any such term or any such applicable law would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law (including the Bankruptcy Code) or principles of equity), provided however that such security interest shall attach immediately at such time as such security interest no longer constitutes or results in such a breach, termination or default and to the extent severable, shall attach immediately to any portion of such property rights or agreement that does not result in any breach, termination or default.

1.05    This Deed of Trust, and the grants and assignments made by Trustor in Sections 1.01, 1.02, 1.03 and 1.04, are for the purpose of securing:

(a)    Performance of each and every term, covenant and condition incorporated by

-5-

reference or contained herein.

Payment and performance of the Secured Obligations including, without limitation, full and timely payment of the indebtedness evidenced by the Note.

Payment of such additional sums as may hereafter be advanced hereunder by the Lenders and/or Beneficiary for the account of Borrower, including any Trustor, their Affiliates, or their assigns, with interest thereon.

Performance of each and every term, covenant and condition of Trustor, Borrower, under the Loan Documents and each and every instrument and agreement securing payment of the Note or executed in connection therewith, including, without limitation, the Secured Obligations.

THIS DEED OF TRUST IS TO BE GOVERNED BY THE PROVISIONS OF NEVADA REVISED STATUTES SECTIONS 106.300-106.400, INCLUSIVE. WITHOUT LIMITATION, TRUSTOR ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST SECURES FUTURE ADVANCES UNDER THE LOAN AGREEMENT UP TO THE MAXIMUM PRINCIPAL AMOUNT OF $18,100,000, PLUS INTEREST, FEES AND EXPENSES PAYABLE TO BENEFICIARY THEREUNDER, AND THAT THE MAXIMUM PRINCIPAL AMOUNT OF ADVANCES SECURED HEREUNDER MAY INCREASE OR DECREASE FROM TIME TO TIME BY AMENDMENT OF THIS INSTRUMENT, WHETHER SUCH ADVANCES ARE OBLIGATORY OR ARE TO BE MADE AT THE OPTION OF BENEFICIARY, TO THE SAME EXTENT AS IF SUCH FUTURE ADVANCES WERE MADE ON THE DATE OF THE EXECUTION OF THIS DEED OF TRUST.  ALL SUCH FUTURE ADVANCES ARE INTENDED TO AND SHALL HAVE PRIORITY FROM THE DATE THIS DEED OF TRUST IS RECORDED UP TO THE MAXIMUM AMOUNT SET FORTH HEREIN.

### SECTION 2
### Warranties and Covenants of Trustor

2.01    Without limitation of or effect on any representations and warranties of Borrower under the Loan Agreement or under any Loan Document, Trustor represents and warrants that:

(a)      Subject to Permitted Liens, the Trustor (i) has a valid and subsisting leasehold title to any leases of real property included within the Property, (ii) has valid possessory and record title to all unpatented mining claims and millsite claims included within the Property, except for such claims that are leased to Trustor and are covered under part (i) of this paragraph, and subject further only to the paramount title of the United States and to the rights, if any, of third parties to the lands within such unpatented mining claims pursuant to the Multiple Mineral Development Act of 1954 and the Surface Resources and Multiple Use Act of 1955, (iii) has good and marketable title to such other real property interests included within the Property and not otherwise included under parts (i) and (ii) of this paragraph, and (iv) has good and valid title to or hold a valid leasehold interest in such properties and assets, which are not real property interests, and are included within the Property.

(b)    This Deed of Trust is and will remain a valid and enforceable first lien on the Property subject only to the Permitted Liens.

(c)    Trustor has not performed any act and is not bound by any instrument which would prevent Beneficiary from enforcing this Deed of Trust.

(d)    The Real Property is accessible by way of abutting public streets or to public streets over properly granted or dedicated private rights-of-way.

(e)    Trustor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, or the regulations thereunder); Trustor understands that the certification in this clause (j) may be disclosed to the Internal Revenue Service by Beneficiary and that any false statement contained herein could be punished by fine, imprisonment, or both.  The person or persons executing this Deed of Trust each declares under penalties of perjury that he had examined this certification and to the best of his knowledge and belief it is true, correct and complete, and further declares that he has authority to sign this certification on behalf of Trustor.

(f)    Trustor is a corporation duly organized, validly existing and in good standing in the State of Nevada, United States of America, and duly qualified to conduct business in each jurisdiction in which the nature of its business requires such qualification.

(g)    Trustor has the corporate power and authority to execute, deliver and perform all of its obligations under this Deed of Trust and each other documents contemplated by, or required in connection with, the transactions pursuant hereto and has taken all corporate action required in connection with such execution, delivery and performance.

(h)    Subject to Permitted Liens and non-material irregularities, each unpatented mining claim or millsite described on Exhibit A is in good standing with the State of Nevada and the United States Department of Interior's Bureau of Land Management ("**BLM**"), all necessary work, acts, or other obligations for the proper location and maintenance of such claims has been timely performed, all state and federal claim maintenance and other fees for such claims have been paid timely and current, each required Affidavit and Notice of Intent to Hold for such claims has been timely filed and recorded in the real property records of the counties in which such claims are situated, including Mineral Counties, as applicable, all filings with the BLM with respect to such claims which are required under the Federal Land Policy and Management Act of 1976 have been timely and properly made, and there are no actions or administrative or other proceedings pending to the knowledge of the Trustor threatened against or affecting any of such claims.

(i)    Subject to Permitted Liens, the Water Rights are in good standing with the Nevada Division of Water Resources ("**NDWR**"), and Trustor has paid all fees, complied with all deadlines (or obtained necessary extensions), and performed all other work, acts, or other obligations required as of the date hereof necessary or advisable to maintain the availability, validity and good standing of the Water Rights.

(j)      The Mineral Lease is in full force and effect and unmodified by any writing or otherwise, and Trustor enjoys quiet and peaceful possession of the property which is the subject of the Mineral Lease.

2.02    Trustor shall complete in a good and workmanlike manner any building or other improvements which may be constructed on the Property and pay when due all claims for labor performed and materials furnished therefor.  Trustor shall comply, in all material respects, with all laws, rules, ordinances, regulations, covenants, conditions, restrictions, easements and agreements pertaining to the Property or Trustor's use thereof.  Trustor shall not commit or permit any waste thereon, nor commit, suffer or permit any act to be done in or upon the Property in violation, in any material respect, of the law.

2.03    Trustor shall not initiate or acquiesce in any change in any zoning or other land use classification now or hereafter in effect and affecting the Property or any part thereof nor shall Trustor otherwise change or attempt to change the use of the Property or any portion thereof without in each case obtaining Beneficiary's prior written consent thereto.

2.04    Trustor will keep and maintain or cause to be kept and maintained the Property in good order, condition and repair, except for ordinary wear and tear.

2.05    Trustor agrees to pay and discharge all reasonable costs, fees and expenses in connection with this Deed of Trust, including, but not limited to, Beneficiary's and Trustee's costs and expenses, including attorneys' fees, in any litigation with respect hereto, in connection herewith, any transactions related hereto, the Property or any interest therein and the cost of evidence of title and trustee's fees in connection with sale, whether completed or not, which amounts shall become due upon demand by either Beneficiary or Trustee.

2.06    During the existence of this trust, Trustor agrees to maintain policies of insurance as required by the Loan Agreement and the Mining Lease and such other insurance in such amounts and against such other risks as Beneficiary may reasonably require.  Upon the execution of this Deed of Trust, and thereafter thirty (30) days prior to the expiration dates of expiring policies theretofore furnished hereunder, originals of the policies, together with evidence that the premiums therefore have been paid, shall be delivered to Beneficiary.  All insurance with respect to damage or destruction to the Property shall provide that the proceeds thereof shall be payable to Beneficiary pursuant to a noncontributory mortgagee endorsement satisfactory to Beneficiary and all other insurance shall name Trustor and Beneficiary and such other parties as Beneficiary may designate as the insureds thereunder, as their respective interests may appear.  All proceeds payable by reason of loss under any insurance policy provided for herein shall be paid to Beneficiary and applied to the extent and in the manner provided for in the Loan Agreement, without regard to whether or not its security hereunder has been impaired.  Beneficiary is hereby authorized, but not required, on behalf of Trustor to adjust or compromise any losses under any insurance policy provided for herein.  Trustor shall pay all of Beneficiary's reasonable costs and expenses, including, but not limited to, attorneys' fees, incurred in adjusting, compromising or otherwise collecting any insurance proceeds.  Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained or suffer to be taken out separate insurance which would reduce the sums payable pursuant to any

-8-

policy required hereunder unless Beneficiary is included thereon under a standard mortgagee endorsement acceptable to Beneficiary.  Trustor shall promptly notify Beneficiary whenever any such separate insurance is taken out and shall promptly deliver to Beneficiary the policy or policies of such insurance. Trustor may effect any insurance required pursuant to the terms hereof pursuant to blanket policies provided that the protection afforded pursuant to said policies with respect to the Property shall not be less than that which is required pursuant to the terms hereof for a separate policy or policies.  In the event of blanket insurance, Trustor shall not be required to deliver to Beneficiary originals of said policies but need only deliver copies thereof, certified by the insurance broker to be true, correct and complete.

2.07    Trustor promptly upon obtaining knowledge of the institution of any proceedings for the condemnation of the Property, any part thereof, or any interest therein, will notify Beneficiary of the pendency of such proceedings.  Beneficiary may, but shall not be required to, participate in any such proceedings and Trustor from time to time will deliver to Beneficiary all instruments requested by it to permit such participation.  Trustor shall pay all of Beneficiary's reasonable costs and expenses, including, but not limited to, attorneys' fees, incurred in any such proceedings.  In the event of such condemnation proceedings, any award or compensation shall be paid to Beneficiary and shall be applied to the extent and in the manner provided for in the Loan Agreement, without regard to whether or not its security hereunder has been impaired.  For the purposes hereof, any proceeding to acquire any interest in or affecting the value of the Property, or seeking damages therefor, including, but not limited to, severance or change of grade, whether by court action or purchase in lieu thereof, shall be deemed a proceeding for condemnation and any award for inverse condemnation shall be deemed condemnation proceeds.

In lieu of the application of proceeds provided therefor in Sections 2.06 and 2.07 hereof, and notwithstanding any other provision hereof, Beneficiary shall direct that any property insurance or condemnation proceeds, or any portion thereof, remaining after payment of all costs and expenses of Beneficiary and/or Trustee in collecting the same ("**Net Proceeds**") be paid, on such terms and conditions as Beneficiary may reasonably provide, for the restoration and repair of the Real Property and/or Personal Property, as the case may be, damaged, destroyed or taken by such casualty or condemnation.

2.08    Trustor has paid or shall pay when due, before delinquency, all material Taxes, assessments, levies, utility fees, royalties and all other fees and charges of every kind and nature, whether of a like or different nature, imposed upon or assessed against or which may become a lien on the Property, or any part thereof, or arising from, by reason of or in connection therewith, the use thereof or this Deed of Trust.  In addition, Trustor shall file all required tax forms with the appropriate governmental authorities on or before the day they become due.  Trustor will, within thirty (30) days after the due date therefor, deliver to Beneficiary receipts evidencing payment of Taxes, assessments, levies, fees and charges as required in this Section 2.08. Beneficiary may require Trustor to obtain and pay for a tax service satisfactory to Beneficiary in order to assure Beneficiary such taxes are paid.

2.09    If any action or proceeding shall be instituted for any purpose affecting the Property, any part thereof, any interest therein, title thereto or this Deed of Trust, or should Trustor receive any notice from any Governmental Authority relating to the structure, use or occupancy of the

Property, Trustor will promptly upon service thereof on or by Trustor, deliver to Beneficiary true copies of each notice, petition, summons, complaint, notice of motion, order to show cause, and all other process, pleadings and papers, however designated, served in any action or proceeding. Promptly upon becoming aware of any development or other information which may materially and adversely affect the property, business, profits or condition (financial or otherwise) of Trustor, and other Borrower, or the Property or the ability of Trustor and/or any other Borrower to perform the obligations secured hereby, Trustor shall notify Beneficiary of the nature of such development or information and such anticipated effect.

2.10    Trustor promises and agrees that if during the existence of this Deed of Trust there be commenced or pending any suit, action, arbitration, or other proceeding materially affecting the Property, any part thereof, or in relation thereto, the title thereto or this Deed of Trust, or if any adverse claim for or against said Property, or any part thereof, be made or asserted, it will appear in and defend any such matter and will pay all costs and damages arising because of such proceeding, Beneficiary may elect to appear in any such proceeding. Beneficiary shall have the option to control such action or defense, whether or not Beneficiary elects to appear. If Beneficiary elects to appear in any such action or proceeding, Beneficiary shall have the right to retain counsel of its choice. Trustor shall be solely (as between Trustor and Beneficiary) responsible for any and all reasonable expenses and costs, including, but not limited to, the fees of counsel retained by Beneficiary, which are incurred pursuant to this section. If Beneficiary elects to appear in or control any action or proceeding, Trustor agrees to indemnify Beneficiary against, release Beneficiary from, and hold Beneficiary harmless from any damages, liability, costs, expenses, litigation, or claims incurred in or in connection with such action or appearance or in the exercise of such control, except as a result of Beneficiary's gross negligence or willful misconduct.

2.11    Except for Permitted Liens, Trustor will not permit or suffer the filing of any mechanics', materialmen's, or other Liens against the Property, any part thereof, any interest therein, or the revenue, rents, issues, income and profits arising therefrom. If any Lien, except a Permitted Lien, shall be filed against the Property, any part thereof, or any interest therein, Trustor agrees to discharge the same of record within thirty (30) days after the same shall have been filed.

2.12    Trustor shall take any and all such commercially reasonable action as may be necessary to prevent any third parties from acquiring any prescriptive easement upon, over, or across any part of the Property, or from acquiring any rights whatsoever to or against the Property by virtue of adverse possession.

2.13    Trustor agrees at any time and from time to time during the term hereof and within ten (10) business days after reasonable demand therefor from Beneficiary, to execute and deliver to Beneficiary, or any party designated by Beneficiary, a certificate in recordable form certifying the amount then due pursuant to this Deed of Trust and the obligations secured hereby, the terms of payment thereof, the dates to which payments have been paid, that this Deed of Trust and all instruments and obligations secured hereby are in full force and effect and that there are no defenses or offsets thereto, or specifying in what regards this Deed of Trust or such obligations are not in full force and effect and the nature of any defense or offsets thereto, together with such other information as Beneficiary may request.

-10-

2.14    Trustor will enforce the covenants, agreements, terms and conditions to be performed by any other parties to any material construction contracts and other material agreements, bonds, Leases, licenses, rental agreements, geological surveys, plans and specifications, documents, chattel paper, instruments, and other contracts and policies of insurance encumbered hereby in accordance with their terms and, except as permitted under the Loan Agreement, will not, in any material respect, enter into, modify or amend or permit the modification or amendment thereof and will not cancel, surrender, fail to renew or permit the cancellation, surrender or failure to renew of any of the foregoing without, in each case, the prior written consent of Beneficiary, which shall not be unreasonably withheld.

2.15    Trustor shall execute, acknowledge and deliver to Beneficiary this Deed of Trust, and, if applicable, cause to be executed, recorded and/or filed at Trustor's cost and expense, any and all such mortgages, assignments, transfers, assurances, control agreements, financing statements and other instruments and documents and do such acts as Beneficiary shall from time to time require for the better perfecting, assuring, conveying, assigning, transferring and confirming unto Beneficiary the property and rights herein conveyed or assigned or intended now or hereafter so to be.   Trustor hereby authorizes Beneficiary to file any and all financing statements and amendments thereto or terminations thereof in such form and in such locations as Beneficiary reasonably deems necessary or appropriate in connection herewith.   The parties agree that this Deed of Trust shall constitute a security agreement under the Nevada Uniform Commercial Code and that a carbon, photographic or other reproduction of this Deed of Trust or of a financing statement shall be sufficient as a financing statement.   Trustor represents and warrants that Trustor has not executed, filed or authorized any Person, other than Beneficiary, to file, any financing statement or amendment thereto with respect to all or any portion of the Property, Trustor will not change its name, chief executive office or state of organization without notifying Beneficiary at least sixty (60) days in advance, and otherwise subject to the terms of the Loan Agreement.

2.16    Trustor will protect, indemnify, save harmless and defend Beneficiary and Trustee and their officers, directors, shareholders, employees, successors and assigns from and against any and all liability, loss, costs, charges, penalties, obligations, expenses, attorneys' fees, litigation, judgments, damages, claims and demands imposed upon or incurred by or asserted against Beneficiary and/or Trustee by reason of (a) ownership by Trustee or Beneficiary of its interest in the Property pursuant to this Deed of Trust, (b) any accident or injury to or death of persons or loss of or damage to or loss of the use of property occurring on or about the Property or any part thereof, (c) any use, non-use or condition of the Property or any part thereof, (d) any failure on the part of Trustor to perform or comply with any of the terms of this Deed of Trust or any instrument or agreement secured hereby, (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof made or suffered to be made by or on behalf of Trustor, (f) any negligence or tortious act on the part of Trustor or any of its respective agents, contractors, lessees, licensees or invitees, (g) any work in connection with any alterations, changes, new construction or demolition of the Property, whether or not permitted hereunder or (h) the exercise by Beneficiary of any of its rights and remedies, or the performance of any of obligations, under this Deed of Trust, in each of the foregoing cases, except as a result of such Person's gross negligence or willful misconduct.   All

-11-

amounts payable to Beneficiary or Trustee, as the case may be, under this Section shall be payable on demand and shall be deemed indebtedness secured by this Deed of Trust.

2.17    All obligations of Trustor to any of its Affiliates, including, but not limited to, any Borrower, or any of its shareholders, partners or members, are hereby subordinated to the obligations secured by this Deed of Trust and none of such obligations shall be paid while any obligation secured hereby remains unsatisfied, except as otherwise expressly permitted under the Loan Agreement.

2.18    Trustor covenants and represents that none of the funds or assets that are used to repay the indebtedness secured hereby shall constitute property of, or shall be beneficially owned directly or, to Trustor's best knowledge, indirectly, by any Person subject to sanctions or trade restrictions under United States law ("**Embargoed Person**" or "**Embargoed Persons**") that are identified on (a) the "List of Specially Designated Nationals and Blocked Persons" maintained by the Office of Foreign Assets Control ("**OFAC**"), U.S. Department of the Treasury, and/or to Trustor's best knowledge, as of the date thereof, based upon reasonable inquiry by Trustor, on any other similar list pursuant to any authorizing statute including, but not limited to, the International Emergency Economic Powers Act, 50 U.S.C §§ 1701 et seq., the Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any Executive Order or regulation promulgated thereunder, with the result that the investment in Trustor (whether directly or indirectly), is prohibited by law, or the loan made by Lenders would be in violation of law, or (b) Executive Order 13224 (September 23, 2001) issued by the President of the United States ("**Executive Order Blocking Mortgaged Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism**") any related enabling legislation or any other similar Executive Orders.  Trustor covenants and represents that no Embargoed Person shall have any direct interest, and to Trustor's best knowledge, based upon reasonable inquiry by Trustor, indirect interest, of any nature whatsoever in Trustor, with the result that the investment in Trustor (whether directly or indirectly) is prohibited by law or the loan is in violation of law.

2.19    Except for amendments and relocations in the ordinary course of business, Trustor shall maintain any unpatented mining claim or millsite, including those set forth in <u>Exhibit A</u> hereto, constituting part of the Property in good standing with the State of Nevada and the BLM during the term of this Deed of Trust, which obligation shall include, without limitation, the performance of all work required, the payment of all necessary state and federal claim maintenance fees, and the filing of each required Affidavit and Notice of Intent to Hold. Trustor shall deliver a copy of each document filed annually with the County Recorder of the counties in which such claims are situated, including Mineral, as the case may be, and/or the BLM for purposes of maintaining such unpatented claims in good standing under federal and Nevada mining laws promptly upon such recordation or filing.  Trustor shall further maintain in good standing with the relevant Governmental Authority each permit or other authorization issued in connection with the mining operations conducted at the Land.

2.20    With respect to the Water Rights:

(a)    Trustor shall comply with all filing deadlines, pay all fees, file for such extensions, and perform such work or other obligations required in connection with the Water

Rights and necessary or advisable to maintain the availability, validity and good standing of the Water Rights.

(b)      Beneficiary shall have the right, but not the obligation, to complete and make all filings, pay all fees, file such extensions, and perform such work or other obligations required in connection with the Water Rights and necessary or advisable to maintain the availability, validity and good standing of the Water Rights if Trustor fails to take such actions. Trustor shall be responsible for any and all associated fees and costs.

(c)      Trustor shall provide a copy of all material correspondence, including, but not limited to any material filings, received from, or sent to, the NDWR to Beneficiary within five (5) business days following receipt or transmittal by Trustor.

(d)      Trustor shall not take any action consistent with abandoning or forfeiting the Water Rights without the written consent of Beneficiary, nor shall Trustor fail to file with NDWR a Proof of Completion for each uncertificated Water Right in the time allotted therefor unless Trustor shall have received from NDWR prior to expiration of the allotted time an extension of the filing date for that Water Right.

(e)      If Trustor fails to make any filing or to put the Water Rights to beneficial use resulting in a forfeiture or cancellation action by the NDWR, Beneficiary shall have the right to prosecute an appeal of the decision on behalf of Trustor and Beneficiary is hereby appointed as the Trustor's attorney in fact to prosecute such appeal and execute any documents in connection therewith on behalf of Trustor. This appointment is coupled with an interest and may not be revoked. Trustor shall be responsible for any and all associated fees and costs.

(f)      Without the express written consent of Beneficiary, Trustor shall not transfer or further encumber the Water Rights, or any portion thereof, or put the Water Rights to any use other than for the benefit of the Project.

2.21    With respect to the Mining Lease, and notwithstanding anything else herein to the contrary:

(a)      Trustor hereby warrants and represents that (i) all rent, additional rent, royalty payments, and other charges reserved in the Mining Lease have been paid to the extent they are payable as of the date hereof; (ii) Trustor enjoys the quiet and peaceful possession of the portion of the Land; (iii) Trustor is not in material default under any of the terms of the Mining Lease, and, to the best of Trustor's knowledge, there are no circumstances which, with the passage of time or the giving of notice or both, would constitute an event of default under the Mining Lease; and (iv) to the best of Trustor's knowledge, the lessor under the Mining Lease (the "**Mining Lease Lessor**"), is not in default under any of the terms or provisions on the part of the Mining Lease Lessor to be observed or performed under the Mining Lease and there are no circumstances which, with the passage of time or the giving of notice or both, would constitute an event of default by the Mining Lease Lessor under the Mining Lease.

(b)      Trustor further covenants and agrees as follows: (i) Trustor shall promptly and

-13-

faithfully observe, perform, and comply, in all material respects, with all the terms, covenants, and provisions of the Mining Lease on Trustor's part to be observed, performed, and complied with, at the times set forth in the Mining Lease, without any allowance for grace periods, if any; (ii) Trustor shall not do, permit, suffer, or refrain from doing anything as a result of which there could be a material default under or breach of any of the terms of any of the Mining Lease; (iii) except for renewals, extensions and rent re-determinations pursuant to the terms of the Mining Lease, Trustor shall not cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the material terms of the Mining Lease without the prior written consent of Beneficiary, which shall not be unreasonably withheld; (iv) Trustor shall give Beneficiary prompt notice of any material default by any party to the Mining Lease and promptly deliver to Beneficiary a copy of each notice of default received by Trustor in connection with the Mining Lease; (v) Trustor shall furnish to Beneficiary copies of such material information and evidence as Beneficiary may reasonably require concerning Trustor's due observance, performance, and compliance with the terms, covenants and provisions of the Mining Lease; and (vi) any material default by Trustor under the Mining Lease shall constitute a default hereunder.

(c)     Trustor agrees that the fee title and the leasehold estate in the Land under the Mining Lease held by Trustor shall not merge but shall always be kept separate and distinct, notwithstanding the union of said estates in the Mining Lease Lessor, Trustor, or a third party, whether by purchase or otherwise.  If Trustor acquires the fee title or any other estate, title, or interest in the Land, or any part thereof, the lien of this Deed of Trust shall attach to, encumber, and be a lien upon such acquired estate, title, or interest, with the same force and effect as if specifically encumbered herein.  Trustor agrees to execute all instruments and documents which Beneficiary may reasonably require to ratify, confirm, and further evidence Beneficiary's lien on the acquired estate, title, or interest.  Furthermore, Trustor hereby appoints Beneficiary its true and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Trustor.  This power, being coupled with an interest, shall be irrevocable as long as the indebtedness secured hereby remains unpaid.

(d)     If the Mining Lease is cancelled or terminated, and if Beneficiary or its nominee shall in relation thereto acquire an interest in any new lease or purchase right in the Land, Trustor shall have no right, title, or interest in or to the new purchase right, or the new lease or the leasehold estate created by such new lease.

(e)     Notwithstanding any provision to the contrary or apparently to the contrary contained in this Deed of Trust, Beneficiary shall have no liability or obligation under the Mining Lease by reason of its acceptance of this Deed of Trust.  Beneficiary shall be liable, if at all, for the obligations of the tenant arising under Mining Lease for only that period of time which Beneficiary is in possession of the Land covered thereby, or has acquired, by foreclosure or otherwise, and is holding all of such Trustor's right, title, and interest therein.

(f)     Trustor further covenants and agrees as follows:

(i)     If there shall be filed by or against the Mining Lease Lessor a petition under the Bankruptcy Code (11 U.S.C, § 101 et seq.), and Trustor, as lessee under the Mining Lease, shall determine to reject the Mining Lease pursuant to the Bankruptcy Code, Trustor shall

-14-

give Beneficiary not less than ten (10) days' prior notice of the date on which Trustor shall apply to the Bankruptcy Court for authority to reject the Mining Lease. Beneficiary shall have the right, but not the obligation, to serve upon Trustor within such ten-day period a notice stating that: (1) Beneficiary demands that Trustor assume and assign the Mining Lease to Beneficiary pursuant to Section 365 of the Bankruptcy Code; and (2) Beneficiary covenants to cure or provide adequate assurance of prompt cure of all defaults and provide adequate assurance of future performance under the Mining Lease. If Beneficiary serves upon Trustor the notice described in the preceding sentence, Trustor shall not seek the rejection of the Mining Lease and shall comply with the demand provided for in clause (1) within thirty (30) days after the notice shall have been given, subject to the performance by Beneficiary of the covenant provided for in clause (2); and

        (ii)     Effective upon the entry of an order for relief in respect of the Mining Lease Lessor under the Bankruptcy Code, Trustor hereby assigns and transfers to Beneficiary a non-exclusive right to apply to the Bankruptcy Court for an order extending the period during which the Mining Lease may be rejected or assumed.

2.22    Other than the recording or filing of this Deed of Trust and similar instruments pursuant to Section 2.15, no approval (except consents or approvals of lessors required under any leases and subject to the provisions of Section 1.04) is necessary either for:

        (a)     the granting by the Trustor of any lien or security interest over any Property pursuant to this Deed of Trust; or

        (b)     the exercise by the Beneficiary or the Trustee of its rights and remedies regarding the Property pursuant to this Deed of Trust, except that before an assignment or transfer of a federal unpatented mining claim or millsite to Beneficiary or other entity will be recognized by the United States, notice to the BLM of such assignment or transfer in accordance with applicable regulations may be required and the assignee or transferee must be qualified under applicable law to hold such an interest.

## SECTION 3
### Trustee's and Beneficiary's Rights

3.01    The waiver or release by Beneficiary or Trustee of any default or of any of the provisions, covenants and conditions hereof on the part of Trustor to be kept and performed shall not be a waiver or release of any preceding or subsequent breach of the same or any other provision, covenant or condition contained herein. The subsequent acceptance of any sum in payment of any indebtedness secured hereby or any other payment hereunder by Trustor to Beneficiary or Trustee shall not be construed to be a waiver or release of any preceding breach by Trustor of any provision, covenant or condition of this Deed of Trust other than the failure of Trustor to pay the particular sum so accepted, regardless of Beneficiary's or Trustee's knowledge of such preceding breach at the time of acceptance of such payment. No payment by Trustor or receipt by Beneficiary of a lesser amount than the amount herein provided shall be deemed to be other than on account of the earliest sums due and payable hereunder, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an

-15-

accord and satisfaction, and Beneficiary may accept any check or payment without prejudice to Beneficiary's right to recover the balance of such sum or pursue any other remedy provided in this Deed of Trust. The consent by Beneficiary or Trustee to any matter or event requiring such consent shall not constitute a waiver of the necessity for such consent to any subsequent matter or event.

3.02    Beneficiary shall be subrogated to the lien of any and all prior encumbrances, liens, or charges paid or discharged from the proceeds of the Note or any other note evidencing the Loan or any portion thereof, and even though said prior liens may have been released of record, the repayment of the Note or any other note evidencing the Loan or any portion thereof shall be secured by such liens on the portions of the Property affected thereby to the extent of such payments. In consideration of the advances made to Trustor and any other Borrower, Trustor hereby waives and releases all demands and causes of action for offsets, payments and rentals to, upon, and in connection with said prior indebtedness.

3.03    Notwithstanding the right otherwise provided to Trustor to collect rent and other payments pursuant to the Leases while Trustor and all other Borrowers are not in default under any of the Loan Documents or this Deed of Trust, if there is filed any petition in bankruptcy by or against any lessee under any of the Leases or there is appointed a receiver or trustee to take possession of all or a substantial portion of the assets of such lessee or there is a general assignment by such lessee for the benefit of creditors, or any action is taken by or against such lessee under any state or federal insolvency law or bankruptcy act, or any similar law now or hereafter in effect, Beneficiary is appointed a creditor of such lessee and is entitled to recover on any claim or right of recovery that Trustor may have against such lessee or its receiver or trustee; provided, however, that Beneficiary shall not be obligated to pursue any such claim or right of recovery. Beneficiary may apply any such recovery against any obligation secured hereby in such manner as it may deem desirable, in its sole and absolute discretion.

3.04    Beneficiary may make or cause to be made reasonable entries upon and inspection of the Property in accordance with the Loan Agreement.

3.05    Beneficiary may, at any time, by instrument in writing, appoint a successor or successors to the Trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary, and recorded in the Office of the County Recorder in the county(ies) in which the applicable Land is situated, shall be conclusive proof of the proper substitution of such successor trustee, who shall have all the estate, powers, duties and trusts in the premises vested in or conferred on the original trustee. If there be more than one trustee, either may act alone and execute these trusts upon the request of Beneficiary and his acts shall be deemed to be the acts of all trustees, and the recital in any conveyance executed by such sole trustee of such requests shall be conclusive evidence thereof, and of the authority of such sole trustee to act.

3.06    Without affecting the liability of Trustor or any other Person, except any Person expressly released in writing, for payment of any indebtedness secured hereby or for performance of any of the obligations or any of the terms, covenants and conditions hereof, and without affecting the rights of Trustee and Beneficiary with respect to any security not expressly

-16-

released in writing, at any time and from time to time, without notice or consent other than consent of Beneficiary, Trustee and/or Beneficiary may:

(a)    Release any Person liable for payment of all or any part of the indebtedness or for the performance of any obligation;

(b)    Make any agreement extending the time or otherwise altering the terms of payment of all or any part of said indebtedness or modifying or waiving any obligation or subordinating, modifying or otherwise dealing with the lien or charge hereof;

(c)    Exercise or refrain from exercising or waive any right either of them may have;

(d)    Accept additional security of any kind; and/or

(e)    Release or otherwise deal with any property, real or personal, securing the obligations secured hereby.

3.07    If Trustor fails to execute, acknowledge or deliver to Beneficiary any and all mortgages, assignments, transfers, assurances, financing statements, maps, and other instruments or documents required to be so executed, acknowledged or delivered hereunder (including, without limitation, any document or filing required under Sections 2.19 and 2.20), within fifteen (15) days after Beneficiary's demand or such lesser period as may be provided elsewhere herein, then Trustor hereby appoints Beneficiary as Trustor's true and lawful attorney-in-fact to act in Trustor's name, place and stead to execute, acknowledge and deliver the same.

3.08    Whenever under any provision of this Deed of Trust Trustor shall be obligated to make any payment or expenditure, or to do any act or thing, or to incur any liability whatsoever, and Trustor fails, refuses or neglects to perform as herein required, Beneficiary shall be entitled, but shall not be obligated, to make any such payment or expenditure or to do any such act or thing, or to incur any such liability, all on behalf of and at the cost and for the account of Trustor. In such event, the amount thereof with interest thereon at the applicable rate set forth in the Note ("**Agreed Rate**") shall be paid by Trustor to Beneficiary on demand or the maximum rate permitted by law, whichever is lower. Without limiting the generality of the foregoing, any act or payment by Beneficiary to cure, forestall, prevent or mitigate default hereunder shall be at the sole option of Beneficiary, shall be at the cost of Trustor and shall be reimbursed to Beneficiary as above provided. Beneficiary shall not be bound to inquire into the validity of any apparent or threatened tax, assessment, adverse title, lien, encumbrance, claim, or charge before making an advance for the purpose of preventing, removing or paying the same. Beneficiary shall be subrogated to all rights, equities and liens discharged by any such expenditure. All funds advanced by Beneficiary pursuant to this Section 3.08 or any other provision of this Deed of Trust for the performance of any obligation of Trustor or to protect Beneficiary's security shall be deemed obligatory advances regardless of the Person to whom such funds are furnished and such advances, together with interest thereon at the Agreed Rate, shall be secured by this Deed of Trust.

-17-

3.09     An Event of Default under the Loan Agreement shall be a default hereunder.  In addition, it shall be an Event of Default hereunder if Trustor delivers notice to Beneficiary pursuant to NRS 106.380 of its election to terminate the operation of this Deed of Trust as security for future advances of principal made after Beneficiary receives such notice.  In the event of any default hereunder or in the performance of any of the obligations secured hereby, Beneficiary shall have all rights and remedies available under all applicable law, including, without limitation, as expressly provided hereunder.

3.10     The collection of rents and the application thereof by Beneficiary or any receiver obtained by Beneficiary shall not cure or waive any default or notice thereof, or invalidate any act of Beneficiary pursuant thereto.  In the exercise of the powers herein granted Beneficiary, Beneficiary shall not be deemed to have affirmed any Lease or subordinated the lien hereof thereto nor shall any liability be asserted or enforced against Beneficiary, all such liability being hereby expressly waived and released by Trustor.  Neither Beneficiary nor any receiver shall be obligated to perform or discharge any obligation, duty or liability under any Lease or under or by reason of the assignment contained in this Deed of Trust and Trustor shall and does hereby agree to protect, indemnify, save harmless and defend Beneficiary and such receiver from and against any and all liability, loss, costs, charges, penalties, obligations, expenses, attorney's fees, litigation, judgments, damages, claims and demands which they may or might incur by reason of, arising from, or in connection with the Leases, such assignment, any alleged obligations or undertakings on their part to perform or discharge any of the terms, covenants or agreements contained in the Leases, any alleged affirmation of or subordination to the Leases, or any action taken by Beneficiary or such receiver pursuant to any provision of this Deed of Trust.  Without limiting the generality of the foregoing, no security deposited by the lessee with the lessor under the terms of any Lease hereby assigned has been transferred to Beneficiary, and Beneficiary assumes no liability for any security so deposited.

3.11     In the event of any default hereunder or in the performance of any of the obligations secured hereby, including the Secured Obligations, Beneficiary may exercise any and all of its rights provided hereunder or by law.  Without limiting the generality of the foregoing, (a) as to the Leases, Beneficiary may pursue any and all of the rights and remedies available to an "assignee" under NRS Chapter 107A, and (b) any Personal Property may, at the sole and absolute option of Beneficiary, (i) be sold hereunder, (ii) be sold pursuant to the Nevada Uniform Commercial Code, or (iii) be dealt with by Beneficiary in any other manner provided by statute, law or equity.  Without limiting the foregoing, Beneficiary may require Trustor to assemble the Personal Property and make it available to Beneficiary at a place to be designated by Beneficiary. In the event of a default, Beneficiary shall be the attorney-in-fact of Trustor with respect to any and all matters pertaining to the Property with full power and authority to give instructions with respect to the collection and remittance of payments, to endorse checks, to enforce the rights and remedies of Trustor, and to execute on behalf of Trustor and in Trustor's name any instruction, agreement or other writing required therefor.  This power shall be irrevocable and deemed to be a power coupled with an interest.  Beneficiary may, in its sole discretion, appoint Trustee as the agent of Beneficiary for the purpose of disposition of the Personal Property in accordance with the Nevada Uniform Commercial Code.    Trustor acknowledges and agrees that a disposition of the Personal Property in accordance with

-18-

Beneficiary's rights and remedies in respect to real property as hereinabove provided is a commercially reasonable disposition thereof. Trustor acknowledges and agrees that the fact that the price obtained at a private sale may be less than the price which might have been obtained at a public sale does not render a private sale unreasonable even if Beneficiary accepts the first offer received and does not offer the subject property to more than one offeree.

3.12    In the event of any default hereunder or in the performance of the obligations secured hereby, Beneficiary may, to the full extent permitted by law, in addition to all other rights and remedies, forthwith after any such default enter upon and take possession of the Property, complete any buildings or other improvements under construction, construct new improvements and make modifications to and/or demolish any of the foregoing.  In connection therewith Beneficiary shall have the power to file any and all notices and obtain any and all permits and licenses which Beneficiary, in its sole and absolute discretion, deems necessary or appropriate, including, but not limited to, the filing of notices of completion and the obtaining of certificates of occupancy.  Beneficiary shall also have the right to receive all of the rents, issues and profits of the Property, overdue, due or to become due, and to apply the same, after payment of all necessary charges and expenses, including attorneys' fees, on account of the indebtedness secured hereby.  Beneficiary may do any and all of the foregoing in its own name or in the name of Trustor and Trustor hereby irrevocably appoints Beneficiary as its attorney-in-fact for such purposes.  Beneficiary may also, at any time after such default, apply to any court of competent jurisdiction for the appointment of a receiver and Trustor agrees that such appointment shall be made upon a prima facie showing of a claimed default without reference to any offsets or defenses against such default and without regard to the value or adequacy of the Property as security for the Secured Obligations or whether any portion of the Property is in danger of being lost, removed, injured or destroyed or of waste, whether income from the Property is in danger of being lost or whether the Property is or may become insufficient to discharge the obligations secured by this Deed of Trust.  Such receiver may be authorized thereby to enter upon and take possession of the Real Property.  Beneficiary may waive any requirement that the receiver post a bond and shall have the power to designate and select the person who shall serve as the receiver and to negotiate all terms and conditions under which such receiver shall serve.  The expenses, including receiver's fees and its and Beneficiary's attorneys' fees incurred in connection with such receivership shall be added to and included in the Secured Obligations. Such receiver shall have all the rights and powers provided Beneficiary pursuant to this section or otherwise provided hereunder or by law.  Said receiver may borrow monies and issue certificates therefor. Said certificates shall be a lien on the Property subordinate only to this Deed of Trust and the Leases; provided, however, that should any of said certificates be acquired by Beneficiary, the amount thereof shall constitute additional indebtedness secured hereby.  Such receiver may lease all or any portion of the Property on such terms and for such a term (which may extend beyond the terms of such receiver's appointment and/or, if Beneficiary so consents, sale of the Property hereunder) as such receiver may deem appropriate in its sole and absolute discretion.  The entering upon and taking possession of the Property pursuant to this section and the collection of the rents, issues and profits therefrom shall not cure or waive any default or notice of default hereunder or invalidate any act of Beneficiary pursuant thereto.

-19-

3.13    Should default be made by Trustor or any other Borrower in payment or performance of any indebtedness or other obligation or agreement secured hereby and/or in performance of any agreement herein, or should Trustor otherwise be in default hereunder, Beneficiary may accelerate the date for payment of the Secured Obligations and declare the same to be immediately due and payable, and, subject to NRS 107.080, declare all sums secured hereby immediately due by delivery to Trustee of a written notice of breach and election to sell (which notice Trustee shall cause to be recorded and mailed as required by law).

3.14    After three (3) months have elapsed following recordation of any such notice of breach, Trustee may sell the Property subject hereto at such time and at such place in the State of Nevada as Trustee, in its sole discretion, shall deem best to accomplish the objects of these trusts, having first given notice of such sale as then required by law.  In the conduct of any such sale Trustee may act itself or through any auctioneer, agent or attorney.  The place of sale may be either in the county in which the property to be sold, or any part thereof, is situated, or at an office of the Trustee located in the State of Nevada, or any other place selected by Trustee, subject to applicable law.  If Trustee or its successor shall have recorded notice of breach or given notice of sale hereunder, any successor Trustee thereafter appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice or breach or sale had been given by the successor Trustee.

    (a)    Upon the request of Beneficiary or if required by law, Trustee shall postpone sale of all or any portion of said property or interest therein by public announcement at the time fixed by said notice of sale, and shall thereafter postpone said sale from time to time by public announcement at the time previously appointed.

    (b)    At the time of sale so fixed, Trustee shall sell the property so advertised or any part thereof or interest therein either as a whole or in separate parcels, as Beneficiary may determine in its sole and absolute discretion, to the highest bidder for cash in lawful money of the United States, payable at time of sale, and shall deliver to such purchaser a deed or deeds or other appropriate instruments conveying the property so sold, but without covenant or warranty, express or implied.  Beneficiary may bid and purchase at such sale.  To the extent of the indebtedness secured hereby, Beneficiary may credit bid all or any part of such amount and need not bid for cash at any sale of all or any portion of the Property pursuant hereto up to such amount, but the amount of any successful bid by Beneficiary shall be applied in reduction of said indebtedness.  Trustor hereby agrees, if it is then still in possession, to surrender, immediately and without demand, possession of said property to any purchaser.  If Trustee or its successor or substitute shall have given notice of sale hereunder, any successor or substitute Trustee hereafter appointed may complete the sale and the conveyance of the Property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

    (c)    Beneficiary and Trustee shall have all other rights and remedies available at law or in equity, whether related to the foreclosure and sale of real property, the Uniform Commercial Code or otherwise.

3.15    Trustee or Beneficiary shall apply the proceeds of any such sale to payment of expenses of sale and all charges and expenses of Trustee and of these trusts, including cost of evidence of

title and Trustee's fee in connection with sale; all sums expended under the terms hereof, not then repaid, with accrued interest at the Agreed Rate; all other sums then secured hereby, and the remainder, if any, to the Person or Persons legally entitled thereto.

3.16    Beneficiary, from time to time before Trustee's sale, may rescind any notice of breach and election to sell by executing, delivering and causing Trustee to record a written notice of such rescission.  The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other notices of breach and election to sell, nor otherwise affect any term, covenant or condition hereof or under any obligation secured hereby, or any of the rights, obligations or remedies of the parties thereunder.

3.17    Without limitation on any other provision herein, in the Loan Agreement, any other Loan Document, or any other document or agreement executed in connection herewith, Trustor hereby agrees to jointly and severally indemnify and save harmless Beneficiary and its officers, directors, employees and agents from and against any and all liabilities, losses, costs, claims, actions or demands whatsoever which may be brought against Beneficiary or which it may suffer or incur as a result or arising out of the performance of its duties and obligations hereunder (including without limitation the fees and disbursements of any advisers and legal counsel it may retain), save only to the extent caused by the gross negligence or willful misconduct of Beneficiary or any of its officers, directors, employees or agents.  This indemnification shall survive the termination of this Deed of Trust and the Loan Agreement or the resignation or removal of Beneficiary as Trustee under the Loan Agreement or Beneficiary under this Deed of Trust.  Beneficiary shall not be liable for any act done or omitted to be done in good faith except to the extent of Beneficiary's willful misconduct and gross negligence.  Beneficiary may employ or retain such counsel, accountants, appraisers or other experts or advisers as it may reasonably require for the purpose of discharging its duties hereunder and may pay reasonable remuneration for all services so performed by any of them, and shall not be responsible for any misconduct on the part of any of them.  Trustor shall advance or otherwise pay to Beneficiary upon receipt of the requisite invoices, the funds required to pay for the services contemplated under this Section 3.17.  Beneficiary shall not be required to advance fees and expenses out of pocket and then seek reimbursement.

Beneficiary may act, or not act, and shall incur no liability and shall be protected in acting, or not acting, in good faith on the opinion or advice of or information obtained from any counsel, accountant, appraiser or other expert or adviser, whether retained or employed by Trustor or by Beneficiary, in relation to any matter arising in the administration of the provisions hereunder and the fulfillment of its obligations and the exercise of its rights hereunder.

3.18    Without limitation of any other provision of this Deed of Trust or of any other document or agreement executed in connection herewith Trustor will pay, and will reimburse to Beneficiary and/or Trustee on demand to the extent paid by Beneficiary and/or Trustee: (i) all appraisal fees, filing, registration and recording fees, recordation, transfer and other taxes, brokerage fees and commissions, abstract fees, title search or examination fees, title policy and endorsement premiums and fees, uniform commercial code search fees, judgment and tax lien search fees, escrow fees, attorneys' fees, architect fees, engineer fees, construction consultant

-21-

fees, environmental inspection fees, survey fees, and all other costs and expenses of every character incurred by Beneficiary and/or Trustee in connection with the preparation of this Deed of Trust and every document or instrument executed in connection herewith, and any and all amendments and supplements to this Deed of Trust or any other document or agreement executed in connection herewith, any approval, consent, waiver, release or other matter requested or required hereunder or thereunder, or otherwise attributable or chargeable to Trustor as owner of the Property; and (ii) all costs and expenses, including attorneys' fees and expenses, incurred or expended in connection with the exercise of any right or remedy, or the defense of any right or remedy or the enforcement of any obligation of Trustor, hereunder or under any other document or agreement executed in connection herewith.

3.19    Intentionally omitted.

3.20    Subject to applicable law, the Trustor will remain liable for any deficiency owing to the Beneficiary after application of the net proceeds of any foreclosure sale.

3.21    The Trustor, for the Trustor and all who may claim through or under the Trustor, to the extent that the Trustor may lawfully do so under applicable law, hereby waives and agrees to forego the benefit and application of Nevada's "one-action rule", whether arising at common law or by statute, expressly including NRS Section 40.430 et seq.

3.22    The Trustor agrees that the Trustor will not at any time insist upon or plead or in any manner whatsoever claim the benefit of any appraisement, valuation, stay, extension or redemption law now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this instrument, the absolute sale of the Collateral or the possession thereof by any purchaser at any sale made pursuant to this instrument or pursuant to the decree of any court of competent jurisdiction. The Trustor, for the Trustor and all who may claim through or under the Trustor, hereby waives the benefit of all such laws and to the extent that the Trustor may lawfully do so under applicable state law, waives any and all right to have the Collateral marshaled upon any foreclosure of the lien hereof or sold in inverse order of alienation and, the Trustor agrees that the Trustor may sell the Collateral as an entirety.

3.23    Neither the Trustee nor the Beneficiary shall be liable, if at all, in any respect for the performance of any covenant or obligation (including measures to comply with any environmental law, rule, regulation or other requirement) of Trustor regarding any portion of the Property, unless and until the Beneficiary has acquired, by foreclosure or otherwise, and is holding all of such Trustor's right, title, and interest therein.


## SECTION 4
## Miscellaneous

4.01    Upon receipt of written request from Beneficiary reciting that all sums secured hereby have been paid and upon payment of its fees, Trustee shall reconvey without warranty the property then held hereunder. The recitals in such reconveyance of any matters of fact shall be

4847-7180-3522, v. 7

conclusive proof of the truth thereof.  The grantee in such reconveyance may be described in general terms as "the person or persons legally entitled thereto."

4.02    Trustor, for itself and for all Persons hereafter claiming through or under it or who may at any time hereafter become holders of liens junior to the lien of this Deed of Trust, hereby expressly waives and releases all rights to direct the order in which any of the Property or any interest therein shall be sold in the event of any sale or sales pursuant hereto and to have any of the Property and/or any other property now or hereafter constituting security for any of the indebtedness secured hereby or any interest therein marshaled upon any sale under this Deed of Trust or of any other security for any of said indebtedness, including, without limitation, any rights arising under NRS Sections 100.040 or 100.050.

4.03    Any and all notices and demands to Trustor or to Beneficiary, required or desired to be given hereunder shall be in writing and shall be given in accordance with the notice provisions set forth in the Loan Agreement and, as to the Trustor, the Guarantee Agreement, except that all notice provisions required to be given in connection with the foreclosure of this Deed of Trust or the sale of the Property pursuant thereto shall be given as required by applicable laws.

4.04    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

4.05    Trustee accepts these trusts when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

4.06    Where any provision in this Deed of Trust refers to action to be taken by Trustor, or which Trustor is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by Trustor.

4.07    If any term, provision, covenant or condition of this Deed of Trust, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all terms, provisions, covenants and conditions of this Deed of Trust, and all applications thereof, not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby, provided that the invalidity, voidness or unenforceability of such term, provision, covenant or condition (after giving effect to the next sentence) does not materially impair the ability of the parties to consummate the transactions contemplated hereby.  In lieu of such invalid, void or unenforceable term, provision, covenant or condition, there shall be added to this Deed of Trust a term, provision, covenant or condition that is valid, not void and enforceable and is as similar to such invalid, void or unenforceable term, provision, covenant or condition as may be possible.  If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Property, or if the lien is invalid or unenforceable as to any part of the indebtedness secured hereby, the unsecured or partially unsecured portion of such indebtedness shall be completely paid prior to the payment of the remaining and secured or partially secured portion of such indebtedness, and all payments made on such indebtedness, whether voluntary or under foreclosure or other enforcement action or procedure, shall be

-23-

considered to have been first paid on and applied to the full payment of that portion of such indebtedness which is not secured or fully secured by the lien of this Deed of Trust.

4.08    The laws of the State of Nevada shall govern this Deed of Trust, including the validity, construction, performance, enforcabiltiy and effect of this Deed of Trust.

4.09    This Deed of Trust shall be construed in accordance with its intent and without regard to any presumption or other rule requiring construction against the party causing the same to be drafted.

4.010    The various rights, options, elections and remedies of Beneficiary and Trustee hereunder, at law, or in equity, or otherwise arising under any other security agreement, mortgage, pledge, guarantee, hypothecation, and/or lien in favor of Beneficiary and securing the obligations secured hereby shall be cumulative, and no one of them shall be construed as exclusive of any other, or of any right, option, election or remedy provided in any agreement or by law. Without limiting the generality of the foregoing, in the event that any portion of the Property is subject to another security interest or lien for the obligations secured hereby, as created by another security agreement executed by Trustor in favor of Beneficiary, all such rights and interests of Beneficiary shall be cumulative, the terms most favorable to Beneficiary shall control in the event of any conflict or inconsistency, and Beneficiary may elect to pursue any such rights or interests in any order it may determine in its sole and absolute discretion,

4.11    Time is of the essence of this Deed of Trust and all of the terms, provisions, covenants and conditions hereof.

4.12    Whenever any provision of this Deed of Trust requires Beneficiary's consent or approval, unless otherwise specifically provided, the same may be granted or withheld by Beneficiary in its sole and absolute discretion,

4.13    THE PARTIES, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS DEED OF TRUST OR ANY CONDUCT, ACT OR OMISSION OF EITHER PARTY OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH EITHER OF THE PARTIES IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

4.14    In this Deed of Trust, whenever the context so requires any gender includes the others, and the singular number includes the plural, and vice-versa, the term Beneficiary shall include any future agent for the holders, including pledgees, of the Notes secured hereby, and the term Trustor shall mean the original signator hereof, the successors and assigns thereof and any future owners of any interest in the Property or any portion thereof. In the event the ownership of all or any portion of such property becomes vested in a Person other than the signator hereof,

-24-

4847-7180-3522, v. 7

Beneficiary may, without notice to such signator, deal with such successor or successors with reference to this Deed of Trust and to the indebtedness hereby secured in the same manner as with the signator, without in any way vitiating or discharging such signatory liability hereunder or upon the indebtedness hereby secured.  In this Deed of Trust, the use of words such as 'Including" or "such as" shall not be deemed to limit the generality of the term or clause to which they have reference, whether or not non-limiting language (such as "without limitation," or "but not limited to," or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, term or matter.  The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference to this Deed of Trust and in no way whatsoever define, limit or describe the scope or intent of this Deed of Trust, nor in any way affect this Deed of Trust.  As used in this Deed of Trust the term "Person" means any individual, partnership, limited partnership, corporation, limited liability company, joint stock company, trust, unincorporated association, joint venture or other entity and any government and any political subdivision and agency thereof.

4.15    In the event the Trustor sells for monetary consideration or otherwise any portion of the Real Property, in compliance with and as permitted by the Loan Agreement, the Beneficiary and the Trustee shall release the lien of this instrument with respect to the portion sold, at the reasonable request of the Trustor, at the Trustor's cost and expense.  No release from the lien of this instrument of any part of the Real Property by Beneficiary shall in anywise alter, vary or diminish the force, effect or lien of this instrument on the balance or remainder of the Real Property.

4.16    The following covenants, Nos. 1; 2 (full replacement value); 3; 4 (Agreed Rate); 5; 6; 7 (reasonable counsel fees and costs actually incurred); 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust, with "grantor" as used therein meaning Trustor hereunder; provided, however, that the express covenants of this Deed of Trust shall control to the extent that the same are inconsistent with any of the foregoing Covenants 1, 2, 3, 4, 5, and 9; and, provided further, that Covenants Nos. 6, 7 and 8 shall control over the express covenants of this Deed of Trust to the extent the same are inconsistent with Covenants Nos. 6, 7 and 8.

## SECTION 5
## Assignment of Leases and Rents

5.1    As additional security for the Secured Obligations, the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor hereby assigns and transfers to Beneficiary, FOR THE PURPOSE OF SECURING the Secured Obligations, all leases and rents, and hereby gives to and confers upon Beneficiary the right, power and authority to collect the same.  Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at its option at any time and from time to time following the occurrence and during the continuance of a Default or an Event of Default, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or otherwise, for rents and apply the same to the Secured Obligations as provided herein; provided, however, that Trustor shall have the right to collect

rents at any time prior to the occurrence of default (but not more than one month in advance, except in the case of security deposits).

5.2      To the extent permitted by law, upon the occurrence and during the continuance of any default, Beneficiary shall have the right, power and privilege (but shall have no duty), at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Secured Obligations or the solvency of Trustor, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect rents and to demand possession of the rents, which demand shall to the fullest extent permitted by applicable law be sufficient action by Beneficiary to entitle Beneficiary to immediate and direct payment of the rents (including delivery to Beneficiary of rents collected for the period in which the demand occurs and for any subsequent period), for application as provided in this Deed of Trust.  Provided that no Event of Default has occurred and is continuing, Trustor retains the right to use and enjoy the rents to the extent not otherwise prohibited under the Loan Agreement and the other Loan Documents. The powers, rights and remedies granted in this paragraph shall be in addition to the other remedies herein provided for upon the occurrence and continuance of a default and may be exercised independently of or concurrently with any of said remedies.  The collection of rents or the entering upon and taking possession of the Property or any part thereof, or the application thereof as aforesaid, shall not cure or waive any default or notice thereof or invalidate any act done in response to such default or notice thereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

4847-7180-3522, v. 7

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date opposite its signature below.

**RAWHIDE MINING LLC,**
a Delaware limited liability company

Date: January 3, 2019

By: _____
Name: ___Donald M. Deines___
Title: ___President and Chief Executive Officer___

STATE OF Nevada )
                          ) ss.
COUNTY OF Mineral )

This instrument was acknowledged before me on January 3, 2019, by Donald M. Deines the President & CEO of Rawhide Mining LLC, a Delware limited liability company, on behalf of said company.

_____
NOTARY PUBLIC
My Commission
Expires 6/2/2021

C.L. FLAVION-ARNHART
Notary Public-State of Nevada
APPT. NO. 17-2610-11
My Appt. Expires 06-02-2021

# EXHIBIT "A-1"

File No.:  80486

All that certain real property situate in the County of Mineral, State of Nevada, described as follows:

That portion of Sections 8, 9 and 16 in Township 13 North, Range 32 East, M.D.B.& M., consisting of Mineral Rights and Surface Rights in Fee Simple Absolute, more particularly described as follows:

The **LUCKY STRIKE** lode mining claim designated by the Surveyor General as Survey No. **3716**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Mineral County, Nevada, and bounded and described in that certain Patent recorded October 9, 1915 in Book 1 of Deeds, page 417 as File No. 4980, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said **L.M. NO. 1** and **L.M. NO 2** Lode claims or Survey No. **3450**; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **ALTA, ALTA NO. 2, ALTA NO. 3 AND BABY ALTA** lode mining claims designated by the Surveyor General as Survey No. **3600**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded April 28, 1910 in Book 4 of Deeds, page 559 as File No. 53631, Mineral County, Nevada Records.

The **DAVIS & DUNNING, EARLY BIRD, NEVADA UMPAH NO. 1, L.M. NO. 1, L.M. NO. 2, BALD HORNET and the BALD HORNET FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3450**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 17 as File No. 57810, Mineral County, Nevada Records. EXCEPTING therefrom said NEVADA UMPAH and the **D&D** lode mining claims, including all veins, lodes and ledges through their entire depth, the tops or apexes of which are appurtenant to said excluded ground.

The **CLIMAX** lode mining claim designated by the Surveyor General as Survey No. **3612**, embracing a portion of unsurveyed public domain in the Regent Mining District, Esmeralda, now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 32 as File No. 57812, Mineral County, Nevada Records.

The **OWL NO. 1, OWL NO. 2, OWL NO. 3, 400, ORIOLE, DOLLY VARDEN, DOLLY VARDEN FRACTION and KID FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3637**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 37 as File No. 57813, Mineral

File No.:  80486 Exhibit A Legal Description
Page 1 of 10

County, Nevada records.

**Government Lots 4, 6, 7 and 12 of Section 8, Township 13 North, Range 32 East, M.D.B.&M. Government Lots 6, 7, 13, 14, 15, 16, 17, 18, 19, 20 and 21 of Section 9, Township 13 North, Range 32 East, M.D.B.&M.**

Said land is now described as:

Parcel 2 of that certain Record of Survey for Kennecott Rawhide Mining Company recorded March 25, 2010 in the Office of the County Recorder of Mineral County, Nevada as File No. 149803, Mineral County, Nevada records, and further described by its perimeter as follows:

Commencing at the corner of Sections 3, 4, 9 and 10, Township 13 North, Range 32 East, M.D.B.& M., per Map File No. 148833, Mineral County Official Records, Hawthorne, Nevada, said map is incorporated herein as a part of this description and calls to lines and corners of sections, patented mining claims and government lots are per said map;  thence South 89°53′46″ West, 1981.30 feet to the Northeast corner of Government Lot 9 of said Section 9;  thence South 00·02′25″ West, 1324.46 feet to the Southeast corner of said Lot 9, the point of beginning; thence around the parcel as follows:

South 89°58′20″ West, 661.44 feet to the Southwest corner of said Lot 9; thence North 00°05′02″ East along the westerly line of said Lot 9 a distance of 37.10 feet to a point on line 2-3 of **MS 3450**, **LM No. 1** lode; thence South 14°47′14″ West, 511.26 feet to Corner No. 3 of said **LM NO. 1** lode; thence South 00°·46′01″ East along line 3-4 of said **LM No. 1** lode, 17.54 feet; thence West, 5520.42 feet to a point on line 5-4 of **MS 3612**, **CLIMAX** lode; thence South 42°21′54″ East along said line 517.96 feet to a point on line 2-3 of **MS 3637**, **KID FRACTION** lode; thence South 34°53′38″ East along said line 42.49 feet to the westerly line of Government Lot 7 of said Section 8; thence South 00°02′25″ West, 433.75 feet to the Center 1/4 of said Section 8; thence South 00°02′25″ West, 1323.34 feet to the Southwest corner of said Lot 7; thence North 89°49′39″ East, 2634.66 feet, to the South 1/16th corner of said Sections 8 and 9; thence South 00°03′41″ West, 1320.08 feet to the corner of said Section 8, 9, 16 and 17; thence North 89°55′14″ East, 1554.30 feet, to a point on line 5-4, **MS 3600**, **ALTA** lode; thence south 45°24′00″ East, 236.60 feet to Corner No. 4 of said **ALTA** lode; thence North 52°40′24″ East, along line 4-3 of said **ALTA** lode, 274.87 feet to a point on the South line of the Southwest Quarter of said Section 9; thence North 89°·55′14″ East, 698.15 feet to South 1/4 corner of said Section 9; thence North 89°54′58″ East, 660.23 feet to the Southeast corner of Government Lot 21 of said Section 9; thence North 00°07′56″ East, 2632.80 feet to the Northeast corner of Government Lot 16 of said Section 9; thence North 00°02′25″ East, 1324.46 feet to the point of beginning.

Expressly excepting therefrom any portion of said **MS 3612** "CLIMAX lode claim"; **MS 3637** "OWL NO. 1**, OWL NO. 2**, OWL NO. 3**, 400**, DOLLY VARDEN**, DOLLY VARDEN FRACTION** lode claims"; **MS 3450** "BALD HORNET**, BALD HORNET FRACTION**, EARLY BIRD**, NEVADA UMPAH NO. 1** and **L.M. NO. 1** lode claims" lying within the Boundaries of Parcel 1 of said map recorded as File No. 149803, Mineral County, Nevada records.

SUBJECT TO:  All existing power, utility, road and drainage easements.

## EXHIBIT A-2

### Owned Unpatented Mining Claims

| Claim Name | BLM Serial No |
|---|---|
| COORS # 5A | NMC97384 |
| COORS # 6A | NMC97385 |
| COORS # 7A | NMC97386 |
| COORS # 16A | NMC97395 |
| COORS # 23A | NMC97402 |
| COORS # 24A | NMC97403 |
| DIVIDE No. 5FA | NMC645684 |
| DIVIDE  5B | NMC645670 |
| DZ No.1 | NMC881619 |
| DZ No.2 | NMC881620 |
| DZ No.3 | NMC881621 |
| DZ No.4 | NMC986594 |
| DZ No.5 | NMC986577 |
| DZ No.6 | NMC986578 |
| DZ No.7 | NMC986579 |
| DZ No.8 | NMC986580 |
| DZ No.9 | NMC986581 |
| DZ No.10 | NMC986582 |
| DZ No.11 | NMC986583 |
| DZ No.12 | NMC986584 |
| DZ No.13 | NMC986585 |
| DZ No.14 | NMC986586 |
| DZ No.15 | NMC986587 |
| DZ No.16 | NMC986588 |
| DZ No.17 | NMC986589 |
| DZ No.18 | NMC986590 |
| DZ No.19 | NMC986591 |
| DZ No.20 | NMC1010401 |
| DZ No.21 | NMC1010402 |
| DZ No.22 | NMC1010403 |
| DZ No.23 | NMC1010404 |
| DZ No.24 | NMC986592 |
| DZ No.25 | NMC986593 |
| DZ No.26 | NMC986595 |
| DZ No.27 | NMC986596 |
| DZ No.28 | NMC986597 |
| DZ No.29 | NMC986598 |

| Claim Name | BLM Serial No |
|---|---|
| DZ No.30 | NMC986599 |
| DZ No.31 | NMC986600 |
| DZ No.32 | NMC986601 |
| DZ No.33 | NMC986602 |
| DZ No.34 | NMC986603 |
| DZ No.35 | NMC986604 |
| DZ No.36 | NMC986605 |
| DZ No.37 | NMC986606 |
| DZ No.38 | NMC986607 |
| DZ No.39 | NMC986608 |
| ENTITY # 1A | NMC570416 |
| HILL # 22A | NMC97410 |
| KDK # 5A | NMC824128 |
| KDK # 6A | NMC824129 |
| KDK # 7A | NMC824130 |
| KDK # 10 | NMC824133 |
| KDK # 11 | NMC824134 |
| KDK # 12 | NMC824135 |
| KDK # 13 | NMC824136 |
| KDK # 14 | NMC824137 |
| KDK # 15 | NMC824138 |
| KDK # 16 | NMC824139 |
| KDK # 17 | NMC824140 |
| KDK # 18 | NMC824141 |
| KDK # 19 | NMC824142 |
| KDK # 20 | NMC824143 |
| KDK # 21 | NMC824144 |
| KDK # 22 | NMC824145 |
| KDK # 23 | NMC824146 |
| KDK # 24 | NMC824147 |
| KDK # 25 | NMC824148 |
| KDK # 27 | NMC824150 |
| KDK # 37 | NMC824160 |
| KDK # 38 | NMC824161 |
| KDK # 39 | NMC824162 |
| KDK # 40 | NMC824163 |
| KDK # 41 | NMC824164 |
| KDK # 42 | NMC824165 |
| KDK # 43 | NMC824166 |
| KDK # 44 | NMC824167 |

| Claim Name | BLM Serial No |
|------------|---------------|
| KDK # 45 | NMC824168 |
| NUC # 1A | NMC908354 |
| NUC # 2A | NMC908355 |
| NUC # 3A | NMC908356 |
| NUC # 4A | NMC908357 |
| RH # 222 | NMC248811 |
| RH # 223 | NMC248812 |
| RH # 224 | NMC248813 |
| RH # 225 | NMC248814 |
| RH # 341A | NMC364957 |
| RH # 342A | NMC364958 |
| RH # 343A | NMC364959 |
| RH # 344 | NMC574087 |
| RH # 345 | NMC574088 |
| RH # 346 | NMC574089 |
| RH # 347 | NMC364963 |
| RH # 348 | NMC364964 |
| RH # 446 | NMC365041 |
| SRG # 29A | NMC819914 |
| SRG # 31A | NMC819915 |
| SRG # 41A | NMC819922 |
| SRG # 43A | NMC819923 |
| SRG # 45A | NMC819924 |
| SRG # 47A | NMC819925 |
| SRG # 49A | NMC819926 |
| SRG # 51A | NMC819927 |
| SRG # 53A | NMC819928 |
| SRG # 55A | NMC819929 |
| SRG # 57A | NMC819930 |
| SRG # 58 | NMC819931 |
| SRG # 59 | NMC819932 |
| SRG # 60 | NMC819933 |
| SRG # 61 | NMC819934 |
| SRG # 75 | NMC819948 |
| SRG # 76 | NMC819949 |
| SRG # 77 | NMC819950 |
| SRG # 78 | NMC819951 |
| SRG # 79 | NMC819952 |
| WS # 11A | NMC337870 |
| WS # 13A | NMC337872 |

Unofficial Copy

| Claim Name | BLM Serial No |
|---|---|
| WS # 15A | NMC337874 |
| WS # 17A | NMC337876 |
| WS # 19A | NMC337878 |
| WS # 71A | NMC337928 |
| WS # 73A | NMC337929 |
| WS # 74A | NMC337930 |
| WS # 75A | NMC337931 |
| WS # 76A | NMC337932 |
| SOB 1 | NMC1061306 |
| SOB 2 | NMC1061307 |
| SOB 3 | NMC1061308 |
| SOB 4 | NMC1061309 |
| SOB 5 | NMC1061310 |
| SOB 6 | NMC1061311 |
| SOB 7 | NMC1061312 |
| SOB 8 | NMC1061313 |
| SOB 9 | NMC1061314 |
| SOB 10 | NMC1061315 |
| SOB 11 | NMC1061316 |
| SOB 12 | NMC1061317 |
| SOB 13 | NMC1061318 |
| SOB 14 | NMC1061319 |
| SOB 15 | NMC1061320 |
| SOB 16 | NMC1061321 |
| SOB 17 | NMC1061322 |
| SOB 18 | NMC1061323 |
| SOB 19 | NMC1061324 |
| SOB 20 | NMC1061325 |
| SOB 21 | NMC1061326 |
| SOB 22 | NMC1061327 |
| SOB 23 | NMC1061328 |
| SOB 24 | NMC1061329 |
| SOB 25 | NMC1061330 |
| SOB 26 | NMC1061331 |
| SOB 27 | NMC1061332 |
| SOB 28 | NMC1061333 |
| Lariat Claim No 1 | NMC 1069327 |
| Roundup #1 | NMC1103887 |
| Roundup #2 | NMC1103888 |
| Roundup #3 | NMC1103889 |

4847-7180-3522, v. 7

| Claim Name | BLM Serial No |
|---|---|
| Roundup #4 | NMC1103890 |
| Roundup #5 | NMC1103891 |
| Roundup #6 | NMC1103892 |
| Roundup #7 | NMC1103893 |
| Roundup #8 | NMC1103894 |
| Roundup #9 | NMC1103895 |
| Roundup #10 | NMC1103896 |
| Roundup #11 | NMC1103897 |
| Roundup Frac #1 | NMC1103898 |
| Roundup Frac #2 | NMC1103899 |
| Roundup Frac #3 | NMC1103900 |
| Roundup Frac #4 | NMC1103901 |
| LPB #1 | NMC1109954 |
| MS 70 | NMC570419 |
| MS 71 | NMC570420 |
| MS 72 | NMC570421 |
| MS 73 | NMC570422 |
| MS 74 | NMC570423 |
| MS 75 | NMC570424 |
| MS 76 | NMC570425 |
| MS 77 | NMC570426 |
| MS 78 | NMC570427 |
| MS 79 | NMC570428 |
| MS 80 | NMC570429 |
| MS 81 | NMC570430 |
| MS 82 | NMC570431 |
| MS 83 | NMC570432 |
| MS 84 | NMC570433 |
| MS 85 | NMC570434 |
| MS 86 | NMC570435 |
| MS 87 | NMC570436 |
| MS 88 | NMC570437 |
| MS 89 | NMC570438 |
| MS 90 | NMC570439 |
| MS 91 | NMC570440 |
| MS 92 | NMC570441 |
| MS 93 | NMC570442 |
| MS 94 | NMC570443 |
| MS 95 | NMC570444 |
| MS 96 | NMC570445 |

4847-7180-3522, v. 7

| Claim Name | BLM Serial No |
|------------|--------------|
| MS 97 | NMC570446 |
| MS 98 | NMC570447 |
| MS 99 | NMC570448 |
| MS 100 | NMC570449 |
| MS 101 | NMC570450 |
| MS 102 | NMC570451 |
| MS 103 | NMC570452 |
| MS 104 | NMC570453 |
| MS 105 | NMC570454 |
| MS 106 | NMC570455 |
| MS 107 | NMC570456 |
| MS 108 | NMC570457 |
| MS 109 | NMC570458 |
| MS 110 | NMC570459 |
| MS 111 | NMC570460 |
| MS 112 | NMC570461 |
| MS 113 | NMC570462 |
| MS 114 | NMC570463 |
| MS 115 | NMC570464 |
| MS 116 | NMC570465 |
| MS 117 | NMC570466 |
| MS 118 | NMC570467 |
| MS 119 | NMC570468 |
| MS 120 | NMC570469 |
| MS 121 | NMC570470 |
| MS 122 | NMC570471 |
| MS 123 | NMC570472 |
| MS 124 | NMC570473 |
| MS 125 | NMC570474 |
| MS 126 | NMC570475 |
| MS 127 | NMC570476 |
| MS 128 | NMC570477 |
| MS 129 | NMC570478 |
| MS 130 | NMC570479 |
| MS 131 | NMC570480 |
| MS 132 | NMC570481 |
| MS 133 | NMC570482 |
| MS 134 | NMC570483 |
| MS 135 | NMC570484 |
| MS 136 | NMC570485 |

| Claim Name | BLM Serial No |
|------------|--------------|
| MS 137 | NMC570486 |
| MS 138 | NMC570487 |
| MS 139 | NMC570488 |
| MS 140 | NMC570489 |
| MS 141 | NMC570490 |
| MS 142 | NMC570491 |
| MS 143 | NMC570492 |
| MS 144 | NMC570493 |
| MS 145 | NMC570494 |
| MS 146 | NMC570495 |
| MS 147 | NMC570496 |
| MS 148 | NMC570497 |
| MS 149 | NMC570498 |
| MS 150 | NMC570499 |
| MS 152 | NMC570501 |
| MS 153 | NMC570502 |
| MS 154 | NMC570503 |
| MS 155 | NMC570504 |
| MS 156 | NMC570505 |
| MS 157 | NMC570506 |
| MS 158 | NMC570507 |
| MS 159 | NMC570508 |
| MS 175 | NMC570524 |
| MS 176 | NMC570525 |
| MS 177 | NMC570526 |
| RH #194 | NMC248783 |
| RH NO 195A | NMC248784 |
| RH #196 | NMC248785 |
| RH #198 | NMC248787 |
| RH NO 197BA | NMC645682 |
| HIM #1 | NMC709944 |
| HIM #2 | NMC709945 |
| HIM #7 | NMC709950 |
| HIM #8 | NMC709951 |
| HIM #9 | NMC709952 |
| HIM #10 | NMC709953 |
| HIM #13 | NMC709956 |
| HIM #14 | NMC709957 |
| HIM #15 | NMC709958 |
| HIM #16 | NMC709959 |

4847-7180-3522, v. 7

| Claim Name | BLM Serial No |
|---|---|
| HIM #19 | NMC709962 |
| HIM #21 | NMC709964 |
| ME #1A | NMC709978 |
| ME #2A | NMC709979 |
| ME #3A | NMC709980 |
| ME #4A | NMC709981 |
| ME #5A | NMC709982 |
| ME #6A | NMC709983 |
| ME #7A | NMC709984 |
| ME #8A | NMC709985 |
| REGENT 1 | NMC712871 |
| REGENT 2 | NMC712872 |
| REGENT 3 | NMC712873 |
| REGENT 4 | NMC712874 |
| REGENT 5 | NMC712875 |
| REGENT 6 | NMC712876 |
| REGENT 7 | NMC712877 |
| REGENT 8 | NMC712878 |
| REGENT 9 | NMC712879 |
| REGENT #15 | NMC717579 |
| DAWN NO 2A | NMC723713 |
| DAWN NO 3A | NMC723714 |
| DAWN NO 4 | NMC723715 |
| DAWN NO 13 | NMC723724 |
| DAWN NO 17 | NMC723728 |
| DAWN NO 18 | NMC729836 |
| BLACK EAGLE 7 | NMC825675 |
| BLACK EAGLE 8 | NMC825676 |
| BLACK EAGLE 9 | NMC825677 |
| BLACK EAGLE 10 | NMC825678 |
| RE 1 | NMC832165 |
| RE 2 | NMC832166 |
| RE 3 | NMC832167 |
| RE 4 | NMC832168 |
| RE 5 | NMC832169 |
| RE 6 | NMC832170 |
| RE 7 | NMC832171 |
| REGENT 12 | NMC860858 |
| REGENT 13 | NMC860859 |
| REGENT 14 | NMC860860 |

| Claim Name | BLM Serial No |
|------------|--------------|
| REGENT 15 | NMC860861 |
| REGENT 16 | NMC860862 |
| REGENT 17 | NMC860863 |
| REGENT 18 | NMC860864 |
| REGENT 19 | NMC860865 |
| REGENT 20 | NMC860866 |
| REGENT 21 | NMC860867 |
| REGENT 22 | NMC860868 |
| REGENT 23 | NMC860869 |
| REGENT 24 | NMC860870 |
| REGENT 25 | NMC860871 |
| REGENT 26 | NMC860872 |
| REGENT 27 | NMC860873 |
| REGENT 28 | NMC860874 |
| REGENT 29 | NMC860875 |
| Rfrac 3 | NMC897673 |
| R #10 | NMC897687 |
| R #11 | NMC897688 |
| R #12 | NMC897689 |
| R #13 | NMC897690 |
| R #14 | NMC897691 |
| R #15 | NMC897692 |
| R #16 | NMC897693 |
| R #17 | NMC897694 |
| R #18 | NMC897695 |
| R #19 | NMC897696 |
| R #20 | NMC897697 |
| R #21 | NMC897698 |
| R #22A | NMC897699 |
| R #23 | NMC897700 |
| R #24 | NMC897701 |
| R #25 | NMC897702 |
| R #26 | NMC897703 |
| R #27 | NMC897704 |
| R #28 | NMC897705 |
| R #29 | NMC897706 |
| R #30 | NMC897707 |
| R #31 | NMC897708 |
| R #32 | NMC897709 |
| RPT-21 | NMC1046399 |

| Claim Name | BLM Serial No |
|------------|--------------|
| RPT-23 | NMC1046401 |
| RPT-24 | NMC1046402 |
| RPT-26 | NMC1046404 |
| RPT-27 | NMC1046405 |
| RPT-76 | NMC1046454 |
| RPT-78 | NMC1046456 |
| RPT-80 | NMC1046458 |
| RPT-82 | NMC1046460 |
| RPT-84 | NMC1046462 |
| RPT-86 | NMC1046464 |
| RPT-88 | NMC1046466 |
| RPT-90 | NMC1046468 |
| RPT-92 | NMC1046470 |
| RPT-94 | NMC1046472 |
| RPT-95 | NMC1046473 |
| RPT-96 | NMC1046474 |
| RPT-97 | NMC1046475 |
| RPT-98 | NMC1046476 |
| RPT-99 | NMC1046477 |
| RPT-102 | NMC1046480 |
| RPT-103 | NMC1046481 |
| RPT-104 | NMC1046482 |
| RPT-105 | NMC1046483 |
| RPT-106 | NMC1046484 |
| RPT-107 | NMC1046485 |
| RPT-112 | NMC1046490 |
| RPT-113 | NMC1046491 |
| RPT-114 | NMC1046492 |
| RPT-115 | NMC1046493 |
| RPT-116 | NMC1046494 |
| RPT-117 | NMC1046495 |
| RPT-118 | NMC1046496 |
| RPT-120 | NMC1046497 |
| RPT-122 | NMC1046498 |
| RPT-124 | NMC1046499 |
| RPT-125 | NMC1046500 |
| RPT-126 | NMC1046501 |
| RPT-128 | NMC1046503 |
| RPT-129 | NMC1046504 |
| RPT-130 | NMC1046505 |

| Claim Name | BLM Serial No |
|---|---|
| RPT-131 | NMC1046506 |
| RPT-132 | NMC1046507 |
| RPT-133 | NMC1046508 |
| RPT-134 | NMC1046509 |
| RPT-139 | NMC1046514 |
| RPT-140 | NMC1046515 |
| RPT-141 | NMC1046516 |
| RPT-142 | NMC1046517 |
| RPT-143 | NMC1046518 |
| RPT-144 | NMC1046519 |
| RPT-145 | NMC1046520 |
| RPT-146 | NMC1046521 |
| RPT-147 | NMC1046522 |
| RPT-148 | NMC1046523 |
| RPT-149 | NMC1046524 |
| RPT-150 | NMC1046525 |
| RPT-151 | NMC1046526 |
| RPT-152 | NMC1046527 |
| RPT-153 | NMC1046528 |
| RPT-154 | NMC1046529 |
| RPT-155 | NMC1046530 |
| RPT-156 | NMC1046531 |
| RPT-108 | NMC1046486 |
| RPT-109 | NMC1046487 |
| RPT-110 | NMC1046488 |
| RPT-111 | NMC1046489 |
| RPT-135 | NMC1046510 |
| RPT-136 | NMC1046511 |
| RPT-137 | NMC1046512 |
| RPT-138 | NMC1046513 |
| RPT-77 | NMC1046455 |
| RPT-79 | NMC1046457 |
| RPT-81 | NMC1046459 |
| RPT-83 | NMC1046461 |
| RPT-85 | NMC1046463 |
| RPT-87 | NMC1046465 |
| RPT-89 | NMC1046467 |
| RPT-91 | NMC1046469 |
| RPT-93 | NMC1046471 |
| Valley Girl #1 | NMC1180303 |

| Claim Name | BLM Serial No |
|---|---|
| Valley Girl #2 | NMC1180304 |

**EXHIBIT B-1**

**Leased Property**



# EXHIBIT "B-1"

File No.:  80486

All that certain real property situate in the County of Mineral, State of Nevada, described as follows:

**A Leasehold Interest in and to the property described below as evidenced by a Memorandum of Lease dated March 29, 2012, recorded March 29, 2012 as File No. 155702, Mineral County, Nevada records.**

That portion of Sections 4, 5, 8 and 9 in Township 13 North, Range 32 East, and a portion of Section 32, Township 14 North, Range 32 East, M.D.B.&M., consisting of Mineral Rights and Surface Rights in Fee Simple Absolute, more particularly described as follows:

The **LAST CHANCE** lode mining claim designated by the Surveyor General as Survey No. **3472**, embracing a portion of unsurveyed public domain, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent on file with the Bureau of Land Management.

The **HENRIETTA, JULIETTE, LYON and BROGAN FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3846**, embracing a portion of unsurveyed public domain, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded September 24, 1912 in Book 1 of Deeds, page 152 as File No. 1858, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3472**; and said **MARCH NO. 1**, **VALLEY NO. 1, VALLEY NO. 3, VALLEY NO. 5** and **VALLEY NO. 7** lode mining claims Survey No. **3597**; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **HAPPY DAY, HAPPY HOOLIGAN, GUESS IT, SUNBEAM, WILD WEST, SILVER KING NO. 1, SILVER KING NO. 2, SILVER KING NO. 3, SILVER KING ANNEX, WILD WEST FRACTION, SILVER SLICE FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3483**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded November 19, 1912 in Book 1 of Deeds, page 170 as File No. 1979, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3477**, **3459**, and **3474**, and tract B., described as follows; beginning at a point from which Corner No. 1 of said **SILVER KING ANNEX** lode claim bears North Fifty-five degrees Thirty-minutes East Ten feet distant; thence South Sixty-one degrees Ten minutes West Seventy-two and Eighty-four-hundredths feet, thence North Twenty-eight degrees Fifty minutes West Ten and Seventy-four-hundredths feet, thence North Sixty-nine degrees Forty-three minutes Ten seconds West One hundred Forty and Twenty-one-hundredths feet, thence North Eighteen degrees Twenty-three minutes Ten seconds West Seven hundred Seventy-one and Five-tenths feet, thence North Sixty-one degrees Ten minutes East Ten and Thirty-four-hundredths feet, thence South Thirty degrees Twenty-five minutes Thirty seconds East One hundred Seventy-nine and Fifty-eight-hundredths feet, thence South Twenty-six degrees Twenty-nine minutes East One hundred Fifty-five and Thirty-four-hundredths feet, thence South Thirty degrees Thirty minutes East five hundred Forty-one feet to the place of beginning and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **I.X.L. NO. 3, BOSTON, HORSE SHOE and HORSE SHOE NO. 2** lode mining claims designated by the Surveyor General as Survey No. **3492**, embracing a portion of unsurveyed public domain, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded August 29, 1912 in Book 17 of Deeds, page 543 as File No. 3992, Esmeralda

County, Nevada Records and recorded December 5, 1912 in Book 1 of Deeds, page 178 as File No. 2010, Mineral County, Nevada records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3472** and **3478**; said **JULIETTE and BROGAN FRACTION** lode claims Survey No. **3846**; said **JUNE BUG NO. 1** and **TARANTULA** lode claims unsurveyed; and tract A, described as follows; beginning at Corner No. 4 of said **I.X.L. No. 3** lode claim, thence South thirty-three degrees Ten minutes Twenty seconds West fifty-six and fifty-six hundredths feet, thence South Forty-three degrees Twelve minutes Ten seconds East Three hundred Thirty-four and Twenty-eight-hundredths feet, Thence North Twenty-seven degrees Fifteen minutes East Eight and Eighty-Eight hundredths feet, thence North Thirty-five degrees Thirty minutes West Three hundred Forty-seven and Seventy-five-hundredths feet to the place of beginning and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

ALSO EXCEPTING therefrom said **I.X.L.** and **STAG LAND** lode mining claim, including all veins, lodes and ledges through their entire depth, the tops or apexes of which are appurtenant to said excluded ground.

The **QUEEN MILL SITE** claim designated by the Surveyor General as Survey No. **4149**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Mineral County, Nevada, and bounded and described in that certain Patent recorded May 8, 1914 in Book 1 of Deeds, page 301 as File No. 3705, Mineral County, Nevada Records.

The **EUREKA** lode mining claim designated by the Surveyor General as Survey No. **3607**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 31, 1910 in Book 4 of Deeds, page 571 as File No. 54080, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3572**, **3459**, and **3483**; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **BALLOON, BALLOON FRACTION, MARCH ROSE and the DIABASE** lode mining claims designated by the Surveyor General as Survey No. **3477**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 31, 1910 in Book 4 of Deeds, page 572 as File No. 54081, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3459**; and said **MASCOT NO. 1** lode claim unsurveyed; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **RAWHIDE** lode mining claim designated by the Surveyor General as Survey No. **3464**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 3 as File No. 57807, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3450**, and said **BALLOON** and **MORNINGSTAR FRACTION** lode claims, unsurveyed, and also all that portion of the **RAWHIDE VEIN** or lode; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **GREY EAGLE FRACTION** lode mining claim designated by the Surveyor General as Survey No. **3459**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 7 as File No. 57808, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the

ground hereinbefore described embraced in said Mascot lode claim, unsurveyed; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **MASCOT** and the **MASCOT NO. 1** lode mining claims designated by the Surveyor General as Survey No. **3622**, embracing a portion of unsurveyed public domain in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 11 as File No. 57809, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey No. **3474**; said **SILVER KING ANNEX** and **WILD WEST** lode claims, Survey No. **3483**; and that portion of said Survey No. **3459** in conflict with said **MASCOT NO. 1** lode claim; and Tract A, described as follows: Beginning at Corner No. 4 of said **MASCOT NO. 1** lode claim, thence South Forty-three degrees, Fifty-six minutes West Six hundred seven and Sixty-two–hundredths feet thence North Sixty-two degrees, Eight minutes, Forty seconds East five hundred Eighty-three and Forty-seven-hundredths feet, thence North Twenty-nine degrees, Forty-five minutes West one hundred ninety feet to the place of beginning; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **MORNING STAR** lode mining claim designated by the Surveyor General as Survey No. **3865**, embracing a portion of unsurveyed public domain in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 27 as File No. 57811, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said mining claim or Survey Nos. **3477** and **3637**, said **BALD HORNET** lode claim, Survey No. **3450**, and Tract A, described as follows; Beginning at Corner No. 4 of Survey No. **3865**, thence South Forty-four degrees Six minutes Forty seconds West Three hundred Seventy-nine and Forty-five-hundredths feet, thence North Seventy-one degrees Fifteen minutes Thirty seconds West Twenty-six and Eighty-two hundredths feet, thence North Forty-two degrees East One hundred Fifty-three and Twenty-seven-hundredths feet, thence South Twenty-six degrees Ten minutes West Fifty-nine and Seven-tenths feet, thence South Forty-eight degrees Fifty-two minutes East Five and Nine-tenths feet, thence North Thirty-nine degrees Fifty minutes East Three hundred and Seventy-one-hundredths feet, thence South Thirty-four degrees Thirty-five minutes East Twenty-eight and fifty-nine-hundredths feet to place of beginning; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **GRUTT FRACTION** lode mining claim designated by the Surveyor General as Survey No. **3457**, embracing a portion of unsurveyed public domain, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 49 as File No. 57814, Mineral County, Nevada Records, expressly excepting and excluding from these presents all that portion of the ground hereinbefore described embraced in said Bluff lode claim, unsurveyed; that portion of said SILVER KING ANNEX lode claim, unsurveyed, designated as Tract A, described as follows; beginning at station "A" situate on line 6-1 of said Survey No. 3457 as South Sixty-one degrees, Ten minutes West Seventy-two and Eighty-four-hundredths feet from Corner No. 1; thence North twenty-eight degrees, Fifty minutes West Ten and Seventy-four-hundredths feet to station "B"; thence North Sixty-nine degrees, Forty-three minutes, Ten seconds West One hundred forty and Twenty-one-hundredths feet to station "C" thence North Eighteen degrees, Twenty-three minutes, Ten seconds West Seven hundred Seventy-one and Five-tenths feet to Station "D", situate on line 3-4 of said Survey No. 3457; thence South Sixty-one degrees, ten Minutes West Ten and two-tenths feet to a point on line 1-2 of said BLUFF lode claims; thence South Sixteen degrees, eleven minutes West three hundred twenty and six-hundredths feet to a point on line 4-5 of said Survey No. 3457; thence South Twenty-six degrees, Twenty-nine minutes East One hundred eight and Fifty-five-hundredths feet to Corner No. 5 of said Survey No. 3457; thence South thirty degrees, Thirty minutes east five hundred forty-one feet to Corner No. 6 of said Survey No. 3457; thence North Sixty-one degrees, Ten minutes East One hundred Seventy-seven and Sixteen-hundredths feet to Station "A", the place of beginning; and also all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of such excluded ground.

The **BLUFF** lode mining claim designated by the Surveyor General as Survey No. **3474**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 54 as File No. 57815, Mineral County, Nevada Records.

The **NEVADA UMPAH, D & D, EARLY BIRD, NEVADA UMPAH NO. 1, L.M. NO. 1, BALD HORNET and the BALD HORNET FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3450**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 17 as File No. 57810, Mineral County, Nevada Records.

ALSO EXCEPTING therefrom said **DAVIS & DUNNING**, and the **L.M. NO. 2**, lode mining claims, including all veins, lodes and ledges through their entire depth, the tops or apexes of which are appurtenant to said excluded ground.

The **CLIMAX** lode mining claim designated by the Surveyor General as Survey No. **3612**, embracing a portion of unsurveyed public domain in the Regent Mining District, Esmeralda, now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 32 as File No. 57812, Mineral County, Nevada Records.

The **OWL NO. 1, OWL NO. 2, OWL NO. 3, 400, DOLLY VARDEN, and DOLLY VARDEN FRACTION** lode mining claims designated by the Surveyor General as Survey No. **3637**, embracing a portion of Township 13 North of Range 32 East of the Mount Diablo Meridian, in the Regent Mining District, Esmeralda now Mineral County, Nevada, and bounded and described in that certain Patent recorded May 17, 1982 in Book 85 of Official Records, page 37 as File No. 57813, Mineral County, Nevada Records.

ALSO EXCEPTING therefrom said **ORIOLE** and **KID FRACTION** lode mining claim, including all veins, lodes and ledges through their entire depth, the tops or apexes of which are appurtenant to said excluded ground.

Government Lots 6, 7 ,8, 9, 11 and 12 in Section 4, Township 13 North, Range 32 East, M.D.B.&M.

Government Lots 2, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34 and 35 in Section 5, Township 13 North, Range 32 East, M.D.B.&M.

Government Lots 1, 2, 5, 8, 9, 10 and 11 of Section 8, Township 13 North, Range 32 East, M.D.B.&M.

Government Lots 2, 3, 9, 10, 11 and 12 of Section 9 Township 13 North, Range 32 East, M.D.B.&M.

Said land is now described as:

Parcel 1 of that certain Record of Survey for Kennecott Rawhide Mining Company recorded March 25, 2010 in the Office of the County Recorder of Mineral County, Nevada as File No. 149803, Mineral County, Nevada records, and further described by its perimeter as follows:
Commencing at the corner of Sections 3, 4, 9 and 10, Township 13 North, Range 32 East, M.D.B.& M., per Map File No. 148833, Mineral County Official Records, Hawthorne, Nevada, said map is incorporated herein as a part of this description and calls to lines and corners of sections, patented mining claims and government lots are per said map; thence South 89°53'46" West, 1981.30 feet to the Northeast corner of government Lot 9 of said Section 9; thence South 00°02'25" West, 1324.46 feet to the Southeast corner of said Lot 9, the point of beginning; thence around the parcel as follows

South 89°58'20" West, 661.44 feet to the Southwest corner of said Lot 9; thence North 00°05'02" East along the Westerly line of said Lot 9 a distance of 37.10 feet to a point on line 2-3 of **MS 3450, LM No. 1** lode; thence South 14°47'14" West, 511.26 feet to Corner No. 3 of said **LM NO. 1** lode; thence South 00°

46'01" East along line 3-4 of said **LM NO. 1** lode, 17.54 feet; thence West, 5520.42 feet to a point on line 4-5 MS 3612 **CLIMAX** lode thence North 42°21'54", West along said line 4-5, a distance of 233.89 feet to Corner No. 5 of said **CLIMAX** lode; thence North 41°08'42" West along line 5-6 of said **CLIMAX** lode 392.23 feet to the Southerly line of Lot 2 of said Section 8; thence South 89°54'48" West, 528.94 feet to the Southwest corner of said Lot 2; thence North 00°02'00" East, 1321.03 feet to the Northwest corner of said Lot 2; thence North 89°55'42" East along the Northerly line of said Lot 2 a distance of 292.45 feet to a point on line 4-3 of **MS 3483**, **SILVER KING NO. 2** lode; thence North 62°34'31" East along said line 4-3 a distance of 413.76 feet to the Southwest corner of government Lot 32, of said Section 5; thence North 00°06'16" East, 2450.42 feet to the Northwest corner of government Lot 30 of said Section 5; thence North 00°06'28" East along the Westerly line of government Lots 23 and 19 of said Section 5, a distance of 1650.88 feet to a point on line 4-3 of **MS 3846**, **HENRIETTA** lode; thence North 38°55'50" West, 1181.95 feet to Corner No. 3 of said **HENRIETTA** lode; thence North 39°46'26" East along line 3-2 of said lode 94.95 feet to a point on the Northerly line of said Section 5; thence North 89°58'56" East along said Section line 347.72 feet; thence North 20°34'00" West, 307.46 feet to a point on line 3-2 of said lode; thence North 39°46'26" East, 142.91 feet to Corner No. 2 of said **HENRIETTA** lode; thence South 38°55'11" East along line 2-1 of said lode 511.05 feet to the Northerly line of said Section 5; thence North 89°58'56" East, 692.36 feet to the North Quarter corner of said Section 5; thence South 89°57'26" East, 515.27 feet to a point on line 5-4, **MS 3492**, **I.X.L. No. 3** lode; thence North 33°11'58" East, 266.45 feet to Corner a of Tract A of said lode; thence South 43°09'31" East along line a-b of said Tract A, 306.01 feet to a point on the North line of said Section 5; thence South 89°57'26" East along said Section line 30.20 feet to a point on line 4-3 of **MS 3492**, **HORSE SHOE NO. 2** lode; thence North 27°13'56" East along said line 4-3 a distance of 76.30 feet to its intersection with line 2-1 of the **JUNE BUG NO. 1** lode (unsurveyed); thence South 47°55'00" East along said line 2-1 a distance of 101.35 feet to the Northerly line of said Section 5; thence along said Section line South 89°57'26" East, 12.54 feet to a point on line 3-2 of said **HORSE SHOE NO. 2** lode; thence South 48°58'36" East, 488.08 feet to Corner No. 2 of said **HORSE SHOE NO. 2** lode; thence South 35°03'39" West along line 2-1 of said **HORSE SHOE NO. 2** lode 258.40 feet to its intersection with line 3-4 of **MS 3492**, **I.X.L. LODE**; thence North 51°24'39" West, 308.89 feet to Corner No. 4 of said **I.X.L.** lode; thence South 07°29'00" West, 665.96 feet to Corner No. 5 of said **I.X.L.** lode; thence South 06°20'24" East, 838.46 feet to Corner No. 6 of said **I.X.L. LODE**; thence South 51° 21'07" East along line 6-1 of said lode 128.95 feet to a point on line 3-2 of **MS 3492**, **STAG LAND** lode; thence South 11°46'32" East, along said line 3-2 a distance of 51.67 feet to a point on line 4-5 of **MS 3472**, Last Chance lode; thence South 61°22'17" East along this line 4-5 a distance of 115.66 feet to a point on line 5-6 of **MS 3478**, **RED TOP FRACTION** lode (cancelled); thence North 19°36'45" East along said line 5-6 a distance of 13.54 feet to Corner No. 5 of said **RED TOP FRACTION** lode; thence South 44°32'40" East, 363.02 feet to Corner No. 4 of said **RED TOP FRACTION** lode; thence North 85°10'54" East along line 4-3 of said **RED TOP FRACTION** lode 8.57 feet to a point on line 1-4 of said Stag Land lode; thence North 11°54'02" West, 58.44 feet to Corner No. 1 of said **I.X.L.** lode; thence North 03°06'19" East, 746.19 feet to Corner No. 2 of said **I.X.L.** lode; thence North 03°27'48" West, 142.89 feet to the Northwest corner of government Lot 7, Section 5; thence North 89°55'26" East, 1128.29 feet to the Northeast corner of said Lot 7; thence South 00°09'48" West, 1320.32 feet to the Southeast corner of said Lot 7, being the quarter corner between Sections 4 and 5; thence North 89°54'18" East, 1320.16 feet to the Northeast corner of government Lot 6 of said Section 4; thence South 00°08'53" West, 902.02 feet to the Southeast corner of said Lot 6, being a point on line 4-3 of MS 3477, **DIABASE** lode; thence South 69°01'04" East, 248.48 feet to Corner No. 3 of said **DIABASE** lode; thence South 22°30'00" East, 355.65 feet to the Northwest corner of government Lot 9 of said Section 4; thence North 89°54'02" East, 951.32 feet to the Northeast corner of said Lot 9; thence South 00°07'58" West, 1320.11 feet to the Southeast corner of said Lot 9, being the quarter corner of said Sections 4 and 9; thence North 89°53'46" East, 660.43 feet to the Northeast corner of government Lot 9 of said Section 9; thence South 00°02'25" West, 1324.46 feet to the point of beginning.

SUBJECT TO all existing power, utility, road and drainage easements.

Expressly excepting therefrom any portion of said **MS 3612** "**CLIMAX** lode claim"; **MS 3637** "**OWL NO. 1, OWL NO. 2, OWL NO. 3, 400, DOLLY VARDEN, DOLLY VARDEN FRACTION** lode claims"; **MS 3450** "**BALD HORNET, BALD HORNET FRACTION, EARLY BIRD, NEVADA UMPAH NO. 1** and **L.M.**

**NO. 1** lode claims" lying within the Boundaries of Parcel 2 of said map recorded as File No. 149803, Mineral County, Nevada records.

## EXHIBIT B-2

### Leased Unpatented Mining Claims

| Claim Name | BLM Serial No |
|---|---|
| THEM-1 | NMC709986 |
| THEM-2 | NMC709987 |
| HER-1 | NMC709988 |
| HER-2 | NMC709989 |
| HER-3 | NMC709990 |
| HER-4 | NMC709991 |
| HER-5 | NMC709992 |
| HER-6 | NMC709993 |
| HER-7 | NMC709994 |
| HER-8 | NMC709995 |
| HER-9 | NMC709996 |
| HER-13 | NMC709997 |
| HER-14 | NMC709998 |
| HER-15 | NMC709999 |
| HER-16 | NMC710000 |
| HER-17 | NMC710001 |
| HER-18 | NMC710002 |
| HER-19 | NMC710003 |
| HER-22 | NMC710004 |
| HER-25 | NMC710007 |
| HER B | NMC716510 |
| HER D | NMC716512 |
| HER E | NMC716513 |
| HER-26 | NMC716521 |
| HER-27 | NMC716522 |
| HER-28 | NMC716523 |
| HER-29 | NMC716524 |
| HER-30 | NMC716525 |
| HER-31 | NMC716526 |
| BLACK EAGLE-3 | NMC825671 |
| BLACK EAGLE-4 | NMC825672 |
| BLACK EAGLE-5 | NMC825673 |
| BLACK EAGLE-6 | NMC825674 |
| BLACK EAGLE 11 | NMC1040712 |
| BLACK EAGLE 12 | NMC1040713 |
| BLACK EAGLE 13 | NMC1040714 |
| BLACK EAGLE 14 | NMC1040715 |

4847-7180-3522, v. 7

| Claim Name | BLM Serial No |
|---|---|
| BLACK EAGLE 15 | NMC1040716 |
| BLACK EAGLE 16 | NMC1040717 |
| EMG #1 | NMC1180294 |
| EMG #2 | NMC1180295 |
| EMG #3 | NMC1180296 |
| EMG #4 | NMC1180297 |
| EMG #5 | NMC1180298 |
| EMG #6 | NMC1180299 |
| EMG #7 | NMC1180300 |
| EMG #8 | NMC1180301 |
| EMG #9 | NMC1180302 |

**EXHIBIT C**

**Water Rights**

All water and water rights, ditch and ditch rights, and water stock (whether riparian, appropriative or otherwise, and whether or not appurtenant), relating to all or any part of the Land or other Real Property or the use and enjoyment thereof, and all applicable applications, permits, rights of diversion, and rights to change the point of diversion, place of use and manner of use with respect thereto, including, without limitation, the following:

All of the water and water rights described in Permit No. 62013, Certificate No. 16156 being a total of **521.02 acre feet annually, more or less**, as granted by the State Engineer and filed in the Nevada Division of Water Resources.

All of the water and water rights described in Permit No. 62014, Certificate No. 16157 being a total of **550.7 acre feet annually, more or less**, as granted by the State Engineer and filed in the Nevada Division of Water Resources.



4847-7180-3522, v. 7