JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar No. 7709

PATRICK A. ROSE
Assistant United States Attorney
Nevada Bar No. 5109
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-6336
Facsimile: 702-388- 6787
Email: *patrick.rose@usdoj.gov*
*Attorneys for the United States*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| IN RE: | | Case No. 23-15619-hlb<br>Chapter 11 |
| RAWHIDE MINING, LLC, | | |
| | Debtor(s) | Jointly Administered with: |
| Affects All Debtors | ☒ | In re Rawhide Acquisition Holding, LLC<br>Case No. 23-15620-HLB |
| Affects Rawhide Mining, LLC | ☐ | |
| Affects Rawhide Acquisition Holding, LLC | ☐ | |

**Objection of the United States on Behalf of the Department of Interior, to Debtor's Emergency Motion to Obtain Post-Petition Senior Secured, Superiority Financing and Related Relief**

The United States of America, on behalf of the Department of Interior, Bureau of Land Management (BLM), files this Objection to the *Debtor's Emergency Motion to Obtain Post-Petition Financing and Related Relief* (the "Motion")[1] (Dk. No. 22), and, in support thereof, hereby state as follows:

**INTRODUCTION**

1. Due to the shortened time between service of the Debtor's Motion, today's responsive deadline, and tomorrow's hearing, the United States has not had sufficient time

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such term in the Motion.

1

to fully develop its objections to the Motion. The United States reserves all rights, objections, and arguments including those additional to the grounds stated below, as well the right to more fully develop the grounds stated below, as the Court may permit.

2. As an initial matter, the United States is uncertain whether the amount of the proposed DIP financing is sufficient to allow the Debtor to come into compliance with its police and regulatory obligations and resume operations. However, most of the United States' objection can be resolved if the interim and final orders authorizing the Debtor to obtain post-petition financing include the provisions in Addendum A. The United States' justification for each provision included in Addendum A is discussed below in more detail.

3. The United States and various state regulatory agencies oversee the protection of public health and the environment and regulate mining operations under various statutes including the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701-1789, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, Clean Air Act, 42 U.S.C. §§ 7401, *et seq.,* and Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, *et seq.*, and their implementing regulations and state statutes, rules, and regulations that regulate media or activities that are the subject of these statutes, rules, and regulations.

**FACTS**

4. On December 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

5. The Debtor prior to the Petition Date operated the Denton-Rawhide Mine site (Site).

6. In late August 2023, the Debtor informed BLM, as well as the state of Nevada, of financial problems and the imminent risk of an environmental incident relatively to the inability to circulate solution from processing and contaminating ponds at the Site resulting from its lack of funds to continue to operate the mine facilities. *See* Ex. A [undated letter from Curtis Turner].

1         7.      The Debtor's lack of funding posed an imminent danger or harm to human health, safety, and the environment because it left the Debtor unable to conduct operations to adequately protect against the potential failure of ponds holding cyanide solution. So, on September 11, 2023, BLM issued to the Debtor an Immediate Temporary Suspension Order. *See* Ex. B.

> Pursuant to 43 CFR § 3809.601(b)(2), Rawhide Mining LLC is hereby ordered to immediately suspend removal of any equipment necessary for fluid management (i.e., for the circulation of solution from processing and containment ponds to the leach pads) at the Denton-Rawhide Mine site.

Ex. B at 1. This "suspension order was issued to 'protect health, safety, or the environment from imminent danger or harm,' that could result from uncontrolled cyanide solution flows if fluid management is interrupted." Ex. B at 1–2.

        8.      The Debtor did not administratively appeal such Immediate Temporary Suspension Order. And, the Debtor has not taken the necessary regulatory steps required to lift the Immediate Temporary Suspension Order. As a result, the Debtor is not authorized to operate at the Site except as specified in the Immediate Temporary Suspension Order.

        9.      The Debtor failed to come into compliance as specified int eh Immediate Temporary Suspension Order. Accordingly, on September 20, 2023, BLM forfeited Surface Management Surety Bond Number SUR0008068 (the "Bond") naming Debtor, as principal, and the United States of America, as obligee, in the amount of $14,927,566 to start reclaiming the ponds and eliminate the threat to human health, safety, and the environment. Argonaut Insurance Company (Argo) issued the Bond in connection with Debtor's reclamation obligations related to the Site and the Denton-Rawhide Mine Plan of Operations under the Federal Land Policy and Management Act, federal regulations found at 43 C.F.R. 3802 and 3809, and related state laws.

## OBJECTION

     a.    *The Debtor's Motion Sidesteps Regulatory Requirements Necessary for the Debtor's Operations to Resume.*

        10.    The Debtor's list of justifications for the DIP financing includes payment of expenses for the operation of its businesses, including mining operations, and the prayer for

relief states that the Debtor will use the proceeds for operational expenses such as "funding necessary bond obligations." Dk. No. 22 at ¶19.

11. Yet, the amount of the DIP Loan is short of the proposed financial assurance required by BLM to cure the Debtor's regulatory default.

12. While the United States welcomes the Debtor obtaining financing to adequately resolve the threats to human health, safety, and the environment, unless the Debtor's authorization for DIP financing includes authorization for compliance with all police and regulatory requirements, including taking all steps to resolve the Immediate Temporary Suspension Order and obtaining required bonding, the need for DIP financing seems questionable.

  b. *The Order Approving DIP Financing Should Not Limit Section 362(b)(4) or any Police and Regulatory Powers of any Governmental Unit.*

13. While in bankruptcy, a debtor must comply with all federal and state environmental laws in managing or operating its property. 11 U.S.C. § 362(b)(4) (police and regulatory exception to the automatic stay); 28 U.S.C. § 959(b) (debtors in possession must manage and operate their property in accordance with applicable non-bankruptcy law); *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985). In enacting the regulatory exception to the automatic stay, Congress wanted "[t]o combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers." *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988). "Bankruptcy does not insulate a debtor from environmental regulatory statutes." *United States v. Hansen*, 262 F.3d 1217, 1238 (11th Cir. 2001).

14. Debtors should thus not be permitted to use bankruptcy as a safe haven from compliance with mining and environmental obligations. Similarly, the public should not be exposed to such risks, and the bankruptcy system should not be misused to provide anyone immunity or a license to violate mining and environmental laws.

15. The Proposed Order includes a provision that states that "the Debtor shall use the proceeds of the DIP Financing solely as provided in the Final Order and in the DOP Documents (including, but not limited to, the Budget)." Dk. No. 22-4 at ¶18. While it

appears that the proposed Budget attached to the Motion includes some expenses relating to protecting human health, safety, and the environment, the Debtor must comply with all environmental obligations and police and regulatory requirements – regardless of whether the proposed Budget includes a line item for such compliance. For these reasons, the United States requests that any Order that may grant the Debtor's Motion include the following provisions:

> "Notwithstanding anything to the contrary in this Order, nothing in this Order shall limit any Governmental Unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4)."

> "Notwithstanding anything to the contrary in this Order, nothing in this Order shall relieve the Debtor of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtor's rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b)."

  c. *Limiting DIP Lender's CERCLA Liability and the United States Pre-Enforcement Rights is Inappropriate.*

16.  The Proposed Order (Dk. No. 22-4), conflicts with environmental laws, particularly the lender liability provisions expressly written into CERCLA, and similar interpretations of other environmental statutes. CERCLA expressly exempts lenders from liability, except in very limited circumstances. *See* 42 U.S.C. § 9601(20)(f). Lenders are excluded from liability so long as they do not participate in the management of a facility. *Id*. ("The term 'owner or operator' does not include a person that is a lender that, without participating in the management of a…facility, holds indicia of ownership primarily to protect the security interest of the person in the…facility.").

17.  Paragraph 24 of the Proposed Order states that:

> *Limitation of Liability*. In determining to make any loan or other extension of credit under the DIP Note, or in exercising any rights or remedies as and when permitted pursuant to the Final Order, this Final Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in "control" of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtors, its respective creditors, shareholders or estate, and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

18. The United States agrees that authorizing the use, or the Debtor's use, of post-petition financing pursuant to Section 364(c) does not by itself make the DIP Lender liable as an owner or responsible person under CERLCA. Nonetheless, the United States cannot predict what actions the DIP Lender may take in connection with exercising remedies under the proposed Order that might violate environmental or mining laws and make them liable as a controlling party or as an owner or operator of property following the exercise of those remedies.

19. The DIP Lender might also direct management or make operational decisions for Debtor' facilities or environmental compliance activities by denying the Debtor' use or otherwise controlling the Debtor' subsequent use of cash collateral if the Debtor are faced with emergency environmental situations. Such actions are presently unknown, and neither the Court nor anyone else can determine whether such future acts create lender liability under applicable non-bankruptcy law. Congress has already precisely addressed this situation and the very limited circumstances in which lender liability may exist. Debtor and the DIP Lender should not be asking the Court to rewrite congressional enactments.

20. The concern of the United States is that the DIP Lender do not obtain, through entry of an Order, protection from liability that conflicts with CERCLA, or any other federal or state environmental statute. To this end, the United States requests that the Court limit the Order by including the following language:

> "With respect to the exercise by the DIP Lender of any remedies for a breach of the terms of this Order, paragraphs [16], [23] and [24] of this Order shall apply with respect to liability to any Governmental Unit only so long as the actions of the DIP Lender in exercising such remedies have not constituted and do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtor, or otherwise caused lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law. For the avoidance of doubt, the DIP Lender' agreement to permit the use, and the Debtor' use, of the DIP Lender' cash collateral pursuant to 11 U.S.C. §363(c) and this Order shall not constitute the DIP Lender' control, ownership, or participation in the management or

6

> operational affairs of a vessel or facility owned or operated by the Debtor. The DIP Lender preserves and are not waiving, any defenses or indemnification with respect to such lender liability or other claims."

21. Other bankruptcy courts have approved debtor in possession orders with similar language to what the United States requests. *See e.g., In re Exide Holdings, Inc*, Case No. 20-11157 (Bankr. D. Del. June 19, 2020) at ¶ 46(c); *In re Murray Energy Holdings Co., et al.,* Case No. 19-56885 (Bankr. S.D. Ohio. Dec. 12, 2019) at ¶ 45(c); *In re PES Holdings*, Case No. 19-11626 (Bankr. D. Del. Nov. 14, 2019) at ¶ 37; and *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (Bankr. D. Del. July 18, 2019) at ¶ 54(c).

22. Additionally, CERCLA prohibits pre-enforcement judicial review of the United States' police and regulatory actions. Under 42 U.S.C. § 9613(h), the federal courts lack the power to review any pre-enforcement action. Construing this section, the Second Circuit in *Carter Day Industries, Inc. v. U.S. Environmental Protection Agency, Inc. (In re Combustion Equipment Assocs., Inc.)*, 838 F.2d 35 (2d Cir. 1988), concluded that the Bankruptcy Court cannot issue a declaratory judgment or advisory opinion regarding a debtor's potential CERCLA liability before the United States takes enforcement action against the potentially responsible party ("PRP"). The Third Circuit has followed suit in prohibiting pre-enforcement review of EPA response actions under CERCLA. *Lone Pine Steering Committee v. United States*, 777 F.2d 882, 887-888 (3d Cir. 1985) (denying pre-enforcement review where a PRP seeks a declaratory judgment of non-liability); *Clinton County Com'rs v. United States*, 116 F.3d 1018, 1025 (3d Cir.1997) (denying pre-enforcement review on action brought under citizen suit provision). In the instant matter, EPA has not notified Debtor or the DIP Lender of any potential liability and most certainly has not begun any enforcement activities. Accordingly, this Court has no jurisdiction to enter an order foreclosing the DIP Lender' potential environmental liability if lenders choose to manage and/or operate Debtor' facilities.

     *d. Reserving the United States' Right to Object to Credit Bid for Cause is Appropriate.*

23.    The Proposed Order, as written, also fails to explicitly reserve the statutory right of the United States to object for cause to any credit bid as set forth in Section 363(k) of the Bankruptcy Code.

24.    A lender's right to credit bid is not absolute, and under Section 363(k) of the Bankruptcy Code, 11 U.S.C. § 363(k), that right may be denied or modified "for cause." Section 363(k) empowers bankruptcy courts to "deny a lender the right to credit bid in the interest of any policy advanced by the Code, such as to ensure the success of the reorganization or to foster a competitive bidding environment." *In re Philadelphia Newspapers*, LLC, 599 F.3d 298, 315 n. 14 (3d Cir. 2010); *See also In re Fisker Automotive Holdings, Inc.*, 2014 WL 576370, *2-3 (D. Del. 2014).

25.    The Proposed Order fails to explicitly reserve the statutory right of any Governmental Unit to object for cause to any credit bid as set forth in Section 363(k) of the Bankruptcy Code.

26.    The United States is concerned that, absent such an explicit reservation, the DIP Lender could claim an *absolute* right to credit bid, precluding the United States from exercising their statutory rights to object to a credit bid for cause, should the need arise. The Bankruptcy Code does not authorize the Court to approve a credit bid on unknown terms and conditions and a party in interest should not be prevented from objecting for cause to a credit bid.

27.    Such an approach is inconsistent with the Bankruptcy Code. To resolve similar concerns raised by the United States in other cases relating, bankruptcy courts approved entry of financing orders containing language like this:

> "Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect the right of any Governmental Unit to object to any credit bid for cause pursuant to 11 U.S.C. § 363(k)."

*See e.g., In re Exide Holdings, Inc*, Case No. 20-11157 (Bankr. D. Del. June 19, 2020) at ¶ 30; *In re Murray Energy Holdings Co., et al.,* Case No. 19-56885 (Bankr. S.D. Ohio. Dec. 12, 2019) at ¶ 45(e); and *In re PES Holdings*, Case No. 19-11626 (Bankr. D. Del. Nov. 14, 2019) at ¶ 33.

  *e. The DIP Order Must Preserve the United States' Setoff and Recoupment Rights.*

28. The DIP Motion seeks to grant a lender superpriority liens in a certain property of the Debtor's estates, specifically including a first priority priming security interest in all present and after acquired property of the Debtor. [Dk. No. 22-3, ¶ 7]. Because the Debtor operate their business in a highly regulated industry, the United States may have valid rights of setoff and/or recoupment for any debt the United States may owe the Debtor. The United States objects to the DIP Motion to the extent that the DIP Documents could be construed to allow the DIP Lender to discharge, release, or otherwise infringe on those setoff and recoupment rights.

29. Recoupment, a creditor's right long recognized in bankruptcy proceedings, is not in the nature of a mere lien, but is a defense to a claim for payment. *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("[W]here the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim . . . ."). In other words, the recoupment is used to determine the proper liability on amounts owed. *Reiter v. Cooper*, 507 U.S. 258, 265 n. 2 (1993); *In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990).

30. Setoff "gives a creditor the right 'to offset a mutual debt owing by such creditor to the debtor,' provided that both debts arose before commencement of the bankruptcy action and are in fact mutual." *In re University Medical Center*, 973 F.2d 1065, 1079 (*quoting In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990). While setoff rights are defined and delineated by applicable non-bankruptcy law, the Bankruptcy Code recognizes and preserves these rights: "11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) ("It is impossible for us to ignore the clear statement of § 553 that this title. . . does not affect any right of a creditor to offset . . . .").

31. Because the DIP Lender's interest in the DIP Collateral is wholly derivative of the Debtor's *interest*, the DIP Lender has no greater right to payment than the Debtor. Put

simply, the Debtor cannot assign greater rights than they possess. Thus, any security interests granted to the DIP Lender remains subject to the United States' setoff and recoupment rights.[2] *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1403 (9th Cir. 1996) (holding that recoupment does not impair third party's security interest, but "merely serves to determine the value of the claim in which the third party holds its interest"); *First National Bank of Boston v. Thomson Consumer Elecs.*, 84 F.3d 397 (11th Cir. 1996) (holding that bank with security interest in accounts receivables still subject to creditor's recoupment defense); *Rochelle v. United States*, 521 F.2d 844, 855 (5th Cir. 1975) (subordinated claim still subject to setoff by the United States); *In re Alliance Health of Fort Worth, Inc.*, 240 B.R. 699, 704 (N.D. Tex. 1999), *aff'd*, 200 F.3d 816 (5th Cir. 1999) (holding that the United States could set off Medicare payments to debtor against tax debts notwithstanding lender's perfected security interest in debtor's account receivables); *In re Sound Emporium, Inc.*, 70 B.R. 22 (W.D. Tex. 1987) (holding that the United States could set off amounts owed to debtor by the Army against amounts debtor owed to IRS even though government's claim was subordinated to bank's prior secured claim); *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 742-45 (Bankr. E.D. Pa. 2000) (holding that government's setoff rights in debtors' Medicare receivables have priority over lender's security interest where the government did not receive actual notice of lender's asserted security interests in the receivables before its setoff right accrued); *In re Metropolitan Hospital*, 110 B.R. 731, 741 (Bankr. E.D. Pa. 1990), *aff'd,* 131 B.R. 283 (E.D. Pa. 1991) (holding that to the extent an account debtor has a right of recoupment, such right

---

[2] For the purposes of setoff, the United States "has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *United States v. Munsey Trust Co. of Washington*, 332 U.S. 234, 239 (1947) (quoting *Gratiot v. United States*, 40 U.S. 336, 370 (1841)); *see also United States v. Maxell*, 157 F.3d 1099, 1103 (7th Cir. 1998) (finding that "[t]he government of the United States suffers no special handicap under § 553 of the Bankruptcy Code."). Moreover, the United States is a unitary creditor and can set off claims held by different agencies. *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536 (1946); *United States v. Maxell*, 157 F.3d 1099, 1102-03 (7th Cir. 1998); *In re Hal Inc.*, 122 F.3d 851 (9th Cir. 1997); *In re Chateaugay Corp.*, 94 F.3d 772 (2nd Cir. 1996); *In re Turner*, 84 F.3d 1294 (10th Cir. 1996); *In re Defense Servs.*, 104 B.R. 481 (Bankr. S.D. Fla. 1989).

prevails over secured creditor); *In re Defense Servs., Inc.*, 104 B.R. at 484-85 (holding that assignment of accounts receivables to secured creditor subject to government's setoff right).

32. The United States does not object to the entry of an Order approving the DIP Motion generally, but in order to preserve these well-established rights, the United States requests that the following language be added to the Order:

> "Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect a Governmental Units' rights and claims against the Debtor, or the Governmental Units' defenses of set-off and recoupment, and all such rights, claims, and defenses shall be preserved in their entirety."

33. Similar language has been used in DIP orders in other bankruptcy courts. *See, e.g.*, *In re: PES Holdings, LLC, et al.*, No. 19-11626-KG (*Bankr. D. Del.*), D.I. 580 at ¶37(c), and *In re Exide Technologies*, No. 13-11482-MFW (Bankr. D. Del.), D.I. 427 at ¶ 27(b).

    f.   *The DIP Order Must Not Alter the United States' Rights Under the Forfeited Denton-Rawhide Surety Bond.*

34. Finally, the Motion includes various references to the Bond. Whether the forfeiture of the Bond has occurred is not an issue for this Motion. And any Order entered resolving this Motion should not impact the United States rights under the Bond, or any other financial assurance. Accordingly, the United States requests that any Order resolving this Motion include this provision:

> "Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect any right under applicable law of any Governmental Unit with respect to any financial assurance, letter of credit, trust, or bond."

# CONCLUSION

Based upon the foregoing, the United States respectfully request that the Motion be denied unless the requested language, as discussed herein, is included in the Interim and Final Orders.

DATED this 27th day of December 2023.

JASON M. FRIERSON
United States Attorney

*/s/ Patrick A. Rose*
PATRICK A. ROSE
Assistant United States Attorney

**PROOF OF SERVICE**

I, Patrick A. Rose, certify that the Objection of the United States on Behalf of the Department of Interior, to Debtor's Emergency Motion to Obtain Post-Petition Senior Secured, Superiority Financing and Related Relief was served on all parties on this date via the Court's Electronic Case Filing system unless otherwise specified below.

Dated: December 27, 2023

/s/ *Patrick A. Rose*
PATRICK A. ROSE
Assistant United States Attorney

# ADDENDUM A

"Notwithstanding anything to the contrary in this Order, nothing in this Order shall relieve the Debtor of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b), *provided* that nothing herein shall limit or impair the Debtor's rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b)."

"Notwithstanding anything to the contrary in this Order, nothing in this Order shall limit any Governmental Unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4)."

"With respect to the exercise by the DIP Lender of any remedies for a breach of the terms of this Order, paragraphs [16], [23], and [24] of this Order shall apply with respect to liability to any Governmental Unit only so long as the actions of the DIP Lender in exercising such remedies have not constituted and do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtor, or otherwise caused lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law. For the avoidance of doubt, the DIP Lender' agreement to permit the use, and the Debtor' use, of the DIP Lender' cash collateral pursuant to 11 U.S.C. §363(c) and this Order shall not constitute the DIP Lender' control, ownership, or participation in the management or operational affairs of a vessel or facility owned or operated by the Debtor. The DIP Lender preserves and are not waiving, any defenses or indemnification with respect to such lender liability or other claims."

"Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect the right of any Governmental Unit to object to any credit bid for cause pursuant to 11 U.S.C. § 363(k)."

"Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect a Governmental Units' rights and claims against the Debtor, or the Governmental Units' defenses of set-off and recoupment, and all such rights, claims, and defenses shall be preserved in their entirety."

"Notwithstanding anything to the contrary in this Order, nothing in this Order shall impair or adversely affect any right under applicable law of any Governmental Unit with respect to any financial assurance, letter of credit, trust, or bond."