Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: 702.385.5544
Facsimile: 702.442.9887

*Proposed Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 23-15619-HLB |
| RAWHIDE MINING, LLC, | Chapter 11 |
| Debtor. | *Proposed Joint Administration with*: |
| Affects All Debtors ☒ | Rawhide Acquisition Holding, LLC<br>Case No. 23-15620-HLB |
| Affects Rawhide Mining LLC ☐ | |
| Affects Rawhide Acquisition Holding LLC ☐ | Hearing Date:  December 28, 2023<br>Hearing Time:  10:30 a.m. |

**SUPPLEMENTAL DECLARATION OF MARCEAU SCHLUMBERGER IN SUPPORT OF DEBTORS' DIP FINANCING MOTION AND RELATED RELIEF**

I, Marceau Schlumberger, declare under penalty of perjury as follows:

1. I am over the age of 18 and mentally competent.

2. I am the manager of Rawhide Mining LLC ("**Rawhide**") and Rawhide Acquisition Holding LLC ("**Holding**" and, together with Rawhide, the "**Debtors**"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and managing partner and founder of Coral Reef Capital LLC, which holds approximately 29.7% of the membership interests in Holding.

1

3. In that capacity, I am familiar with the Debtors' daily business, operational, and financial affairs. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

4. I make this declaration in support of the *Emergency Motion for Interim and Final Orders: (I) Authorizing Debtors to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Interim and Final Hearings; and (V) Granting Related Relief* [Case No. 23-15619-hlb, ECF No. 22 & Case No. 23-15620-hlb, ECF No. 19] (the "**DIP Financing Motion**")[1] and related relief. This declaration supplements the *Omnibus Declaration of Marceau Schlumberger in Support of Debtors' Chapter 11 Petitions, First Day Motions, and Related Relief* [Case No. 23-15619-hlb, ECF No. 30 & Case No. 23-15620-hlb, ECF No. 27] (the "**First Day Declaration**"), which is incorporated in full herein.

5. In the DIP Financing Motion, the Debtors seek, among other things, to grant the DIP Lender a super-priority administrative expense claim against the Debtors' bankruptcy estates and a super-priority, priming senior lien against all assets of the Debtors, whether real or personal, including post-petition assets, subject only to the Carve-Out.

6. As explained in the First Day Declaration, the DIP Facility is necessary to permit the orderly resumption of the Debtors' business operations, minimize the disruption of the business during the Chapter 11 Cases, and preserve and maximize the value of the Debtors' bankruptcy estates. The infusion of priming and super-priority post-petition financing will allow the Debtors resume operation of the Denton-Rawhide Mine, fund the costs of the Chapter 11 Cases, and generate cash flow from operations, which will inure to the benefit of the Debtors' creditors.

---

[1] Unless otherwise indicated, all capitalized terms not defined herein have the meanings ascribed to them in the DIP Financing Motion.

2

7. The Debtors believe that infusion of the DIP Facility will increase the going-concern value of Rawhide's business, which will protect the Prepetition Lenders and other parties with liens against the Debtors' assets from a decrease in the value of their collateral. Specifically, as shown in the Budget attached to the DIP Financing Motion as Exhibit 1, the Debtors project that Rawhide will begin producing cash flow from operations approximately 8 weeks after receiving the DIP Financing, and will becoming cash flow positive in approximately 11 weeks.

8. The Debtors believe that the going-concern value of the Rawhide's business is greater than the value which would be realized from a piecemeal liquidation of its assets. A liquidation of Rawhide would likely result in recovering less than fair value for its equipment, loss of the Argo Bond, and significant environmental liability. For example, based on estimates provided by third parties shortly before the Petition Date, the Debtors believe that the liquidation proceeds of its equipment would only total approximately $2.6 to $4.0 million.

9. The Debtors estimate that the going-concern value of the Debtors is at least $35 million. Consistent with the Debtors' valuation estimate, the Debtors received a letter of intent on September 20, 2022, which determined the Total Enterprise Value (TEV) of the Debtors was US$37,500,000. A true and correct copy of the letter of intent is attached hereto as **Exhibit 1**.

10. Attached hereto as **Exhibit 2** is a true and correct copy of a letter of intent by the DIP Lender to acquire all or substantially all of the outstanding Prepetition Obligations, which agreed to Silverview Credit Opportunities AIV LP and Silverview Credit Partners, LP.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

Dated: December 28, 2023.

/s/ *Marceau Schlumberger*
MARCEAU SCHLUMBERGER

3

# EXHIBIT 1

**EXHIBIT 1**

# **EVERMORE**

September 20, 2022

Board of Directors
Rawhide Mining LLC
143 Keddie Street
Fallon, Nevada 89406

Re:     Acquisition of Rawhide Mining LLC

Ladies and Gentlemen:

This non-binding letter of intent ("LOI" or "Letter of Intent") will confirm the understandings by and among Evermore Resources LLC ("Evermore"), Rawhide Mining LLC ("Rawhide"), a wholly-owned subsidiary of Rawhide Acquisitions Holdings LLC, and the holders of all the outstanding securities of Rawhide (collectively, the "Stockholders"), concerning the potential acquisition by Evermore of a minimum of 80% of the issued and outstanding securities of Rawhide.  The Parties seek to inquire reaching an agreement based on the following principles:

1.      Acquisition of Equity Securities.  Evermore, Rawhide and the Stockholders desire that Evermore shall acquire 80% of all issued and outstanding securities of Rawhide on the terms set forth in Exhibit "A" annexed hereto ("Acquisition") but is willing to consider acquiring all issued and outstanding shares.  A list of the Stockholders' and their ownership in Rawhide's securities is attached to this LOI (Schedule "A").  Schedule A reflects the entire outstanding securities of Rawhide on a fully diluted basis, so that all warrants and other rights to acquire or obtain equity securities of Rawhide have been terminated, exercised or converted prior to the preparation of Schedule A.

2.      Negotiation of Definitive Agreements.  Evermore, Rawhide and the Stockholders agree to act in good faith to negotiate the definitive agreements embodying the Acquisition as soon as possible, but in no event later than sixty (60) days following your execution of this LOI ("Agreements").  The obligation to execute the Agreements is subject and condition on, among others, **(i)** Evermore's satisfactory completion of the Due Diligence process (section 4), **(ii)** obtaining Evermore's Investment Committee approval of the transaction contemplated herein ("Transaction"), **(iii)** obtaining Rawhide's Board approval for the Transaction, and **(iv)** Rawhide's clearing and/or terminating all warrants and/or other rights with respect to Rawhide's securities, all in accord with Schedule A. Definitive Agreements shall contain all usual and customary representations and warranties for transactions of this type and size.

3.      Due Diligence.  In the 45 days following the full execution of the LOI, Rawhide agrees to facilitate Evermore's due diligence investigation by, among other things, complying promptly with due diligence requests of Evermore and/or its legal and financial counsel ("Due Diligence").

4.      Exclusivity.  Rawhide and each of the Stockholders hereby agree that, from the date of full execution of this LOI until the earlier of (i) the sixtieth (60th) day following the date

# EVERMORE

this LOI is signed (as may be extended as mutually agreed by the parties hereto), or (ii) the date that Evermore has advised Rawhide in writing that it does not wish to pursue the Acquisition, or (iii) the date the Agreements are entered into, no such party, nor any of their respective officers, directors, employees, agents or representatives (including, without limitation, their respective attorneys and accountants) shall, directly or indirectly, initiate, solicit or encourage discussions, proposals, inquiries or offers, or negotiate or discuss any proposal with any person or entity, relating to or concerning any transaction similar to, or having the same effect as, the proposed Acquisition or any transaction pursuant to which (a) control of Rawhide is conveyed, directly or indirectly, to a third party, or (b) all or a substantial portion of Rawhide's assets are sold or otherwise transferred to a third party (the "Exclusive Period"). The exclusivity clause does not apply to equity raise efforts and/or access to credit facilities and it only pertains to a similar transaction which involves an Acquisition or any transaction pursuant to which (a) control of Rawhide is conveyed, directly or indirectly, to a third party, or (b) all or a substantial portion of Rawhide's assets are sold or otherwise transferred to a third party. Notwithstanding the above, the continuation of the 60-day exclusivity period is subject to i) Evermore's Fund Sponsor (as referenced below) closing the Fund within 30 days of the execution of this LOI and ii) the substantial completion of due diligence within 45 days of the execution of this LOI. In good faith, Rawhide and the Stockholders shall have the right to terminate the Exclusivity from the date of execution of this LOI if neither condition "i" or "ii" have been met.

      5.      Access. Until the earlier of the consummation of the Acquisition or the termination of the Exclusive Period, Rawhide agrees, upon reasonable prior notice, to give Evermore and its representatives, accountants and counsel access to the property, records, financial statements, internal and external audit reports, regulatory reports and all other documents and other information concerning Rawhide.

      6.      Miscellaneous.

      (a)      Confidentiality. The Confidentiality and non-disclosure agreement dated June 2nd, 2022, remains in full force and effect.

      (b)      Disclosures. Public Statements.  Except as required by law or regulation, no public announcements, press releases or other public statements (including in any press conference, trade publication, marketing materials or otherwise) with respect to the subject matter of this LOI shall be made without the consent of each of the parties hereto.

      (c)      Expenses. Each Party shall bear its respective legal fees and other expenses arising in connection with this LOI and the transaction contemplated herein.

      7.      Nature of this LOI. This non-binding Letter of Intent expresses only the mutual current intention of each of Evermore, Rawhide and the Stockholders. Notwithstanding the foregoing, paragraphs 3 through and including paragraph 6 of this Letter of Intent, shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, the rights and obligations of any party hereto may not be assigned to any other entity without the consent of the other party hereto.

# EVERMORE

8. <u>Communications</u>. All notices and other communications required or permitted by this Letter of Intent shall be in writing and submitted via email to the parties hereto at the respective numbers set forth above. This Letter of Intent may only be amended by a written instrument executed by each of the parties hereto.

9. <u>Governing Law; Consent to Jurisdiction.</u> This Letter of Intent shall be governed by and construed in accordance with the internal laws of the State of New York applicable to contracts made and to be performed in that State. The state and federal courts situated in New York, New York shall have exclusive jurisdiction and venue over any disputes and/or actions arising from this Agreement.

10. <u>Counterparts</u>. This Letter of Intent may be executed in one or more counterparts, each of which shall be deemed to be an original of the party or parties executing the same and all of which, taken together, shall be deemed to constitute one and the same document.

11. This Letter of Intent shall terminate and be deemed of no further effect immediately following the expiration of the Exclusive Period, provided that the provision of paragraphs 6(a) through (c) shall survive the termination or expiration of this Letter of Intent.

**Evermore Disclosure**

**Isotta Fund 1 – "Fund Sponsor"**

As indicated above, the Acquisition is predicated on the funding of sufficient capital into the investment account of the Fund Sponsor to allow the transaction to occur. With the permission of Bruce Raben, whom will be Chairman and Co-manager of the Fund, it has been disclosed to Rawhide that the Fund Sponsor, presently named the Isotta Fund is in process of formation with a single bona fide limited partner ("the "L.P.") which has more than $25 billion at its discretion. Although the minimum capital to be provided remains to be agreed, it is notionally expected to be $500 million upon first closing with the L.P. having indicated that they are amenable to co-investing with the fund to supplement larger capital investment requirements.

At this time, Evermore can disclose that the fund shall comprise a single limited partner and is a direct sub-fund of several large family offices of Middle Eastern (the "Family Office") origin that is presently and expected to remain in good standing with the U.S. Government. Bruce Raben has reported to Evermore that the principals of the family office have executed a Memorandum of Understanding with the Fund Sponsor, and that attorneys have already prepared a set of closing documents.

The time to complete the definitive investment agreement, ancillary fund documents and close cannot be predicted at this time but each of the parties have expressed that time is of the essence and indications that the Fund will be stood up and funded by October 7, 2022.

# EVERMORE

Please execute a copy of this Letter of Intent to signify your agreement with the foregoing.

Sincerely,

Evermore Resources LLC

By:_____
        Richard Berritt
        Managing Member

Agreed to as of this 20th day of September, 2022:

Rawhide Mining LLC

By:_____
    Name: Curtis Turner
    Title: Authorized Representative

**EVERMORE**

STOCKHOLDERS:

Marigold Overseas LLC & Marigold Overseas II LLC

By:_____

Name: Marceau Schlumberger
Title: Member

Austral Gold North America Corp.


By: _____

Name:
Title:

EMX (USA) Services Corp.

By: _____

Name: David M. Cole

Title: President and CEO

## Schedule A

### Schedule of Stockholders

| Members | Class A Units | Class B Units | Class A + B Ownership | Class A Warrants | Class B Warrants | Incentive Units | Fully Diluted Units | Pro Forma Ownership |
|---|---|---|---|---|---|---|---|---|
| Marigold Overseas LLC | - | 730,650.000 | 13.39% | | | | 730,650.000 | 10.87% |
| Austral Gold North America Corp. | 816,414.253 | 533,036.591 | 24.74% | | | | 1,349,450.844 | 20.07% |
| EMX (USA) Services Corp. | 1,674,031.613 | 402,751.887 | 38.07% | | | | 2,076,783.500 | 30.89% |
| Marigold Overseas II LLC | 549,716.163 | 271,827.993 | 15.06% | | | | 821,544.156 | 12.22% |
| Don Deines | 4,692.082 | 194,111.389 | 3.64% | | | | 198,803.471 | 2.96% |
| Esselbe LLC | 17,744.098 | 109,600.000 | 2.33% | | | | 127,344.098 | 1.89% |
| Marceau Schlumberger | 31,829.227 | 34,357.835 | 1.21% | | | | 66,187.062 | 0.98% |
| Marigold Rawhide LLC | - | 40,000.000 | 0.73% | | | | 40,000.000 | 0.59% |
| Curtis Turner | 2,346.041 | 5,722.694 | 0.15% | | | 56,781.112 | 64,849.847 | 0.96% |
| Ruben Berumen | 234.604 | 572.269 | 0.01% | | | | 806.873 | 0.01% |
| BKC Natural Resources Fund I | 35,488.195 | - | 0.65% | | | | 35,488.195 | 0.53% |
| Chris Zerga | - | - | 0.00% | | | 42,585.834 | 42,585.834 | 0.63% |
| Subtotal | 3,132,496.275 | 2,322,630.658 | 100.00% | | | 99,366.947 | 5,554,493.880 | 82.61% |
| Silverpeak | | | | | 88,977.000 | | 88,977.000 | 1.32% |
| Corbin Capital Partners, L.P. | | | | | 71,182.000 | | 71,182.000 | 1.06% |
| Marigold Overseas II LLC | | | | 219,139.605 | | | 219,139.605 | 3.26% |
| Marceau Schlumberger | | | | 8,872.049 | | | 8,872.049 | 0.13% |
| Esselbe LLC | | | | 8,872.049 | | | 8,872.049 | 0.13% |
| Austral Gold North America Corp. | | | | 177,440.976 | | | 177,440.976 | 2.64% |
| BKC Natural Resources Fund I | | | | 17,744.098 | | | 17,744.098 | 0.26% |
| EMX (USA) Services Corp. | | | | 576,683.172 | - | | 576,683.172 | 8.58% |
| Subtotal | | | | 1,008,751.949 | 160,159.000 | | 1,168,910.949 | 17.39% |
| Total | | | | | | | 6,723,404.828 | 100.00% |
| Strike Price for Warrants | | | | $ 2.82 | $ 29.066 | | | |

CONFIDENTIAL

Exhibit "A"

Summary of Consideration Terms

For the Acquisition by
Evermore of Rawhide

This Exhibit sets forth in general terms the provisions under which Evermore proposes to acquire 80% of the outstanding securities of Rawhide, as contemplated by that certain letter of intent dated as of September 20, 2022 ("LOI"), of which this Exhibit "A" is a part. Capitalized terms set forth in this Exhibit "A" shall have the respective definitions assigned to them in the LOI. The principal terms relating to the Acquisition are as follows:

| | |
|---|---|
| **Structure:** | Evermore will acquire a minimum of 80% of the outstanding equity securities of Rawhide. |
| **Enterprise Valuation:** | Total Enterprise Value ("TEV") of US$37,500,000, |
| | less senior debt estimated to be US$17,145,780, and less $433,953 in promissory notes as of the signing date of this LOI, |
| | less any cash deficiency in excess of $500,000 related to the Surety Bond to be deducted from the TEV, |
| | less any accounts payable that extend beyond terms but in no event extend beyond 60 days from invoice date (to be determined in due diligence) to be deducted from the TEV. |
| **Implied Equity Valuation:** | Total Equity Valuation estimated to be US$19,920,267 |
| **Consideration:** | Upfront Cash Consideration of US$34,215,947 on closing to acquire 80% of Rawhide |
| **Debt Obligations:** | On close, US$17,145,780 of the Upfront Cash Consideration to the lenders of Rawhide, Silverview Credit Opportunities AIV LP, a Delaware Limited Partnership ("Silverview"), and CEOF Holdings LP, a Delaware Limited Partnership ("Corbin Capital"), and US$433,953 to repay outstanding promissory notes. |
| **Working & Exploration Capital:** | On close, US$3,500,000 of the Upfront Cash Consideration shall remain with the Company for working capital purposes. The working capital deduct will not exceed US$4,500,000 but would be subject to Evermore's diligence review on early cash needs to execute present management's ramp plan. |

| | |
|---|---|
| **Paid to Shareholders:** | $19,920,267 less $3,500,000 working capital = 16,420,267 times 80% = $13,136, 214. |
| **Surety Bond:** | The current ARO (BLM SRCE calculation) is $14.927 million as of 2018. As of May 2022, the Company submitted an updated proposal of $16.560 million based on 24" cover. Present restricted cash held equals $7.817 million as of 8/31/2022 which receives a further $120,000 per month contribution. Third party internal estimate of actual closure cost amounts to $6.988 million as of 2019 by Geologic Associates. The Surety company is Argonaut Insurance Company. At present the Company's restricted cash account provides adequate liquidity to conduct the ARO. |
| **Reps & Warranties:** | Usual and customary representations and warranties with appropriate baskets for settlement. |

# EXHIBIT 2

# EXHIBIT 2



December 19, 2023

Silverview Credit Partners LP
100 South Ashley Drive
Suite 600
Tampa, FL 33602

Corbin Capital Partners, L.P.
590 Madison Avenue
31st Floor
New York, NY 10022

Re: Acquisition of Existing Loan

Ladies and Gentlemen:

**1.    Purpose.**

We refer to the outstanding principal and interest balance owed to Silverview Credit Opportunities AIV LP ("Silverview") and CEOF Holdings LP ("CEOF") by Rawhide Acquisition Holding LLC and subsidiaries ("Rawhide Holding" or the "Company") under the existing credit facility (the "Loan").

De Jong Capital LLC's ("De Jong Capital" or the "Buyer") would like to present this non-binding indication of interest to acquire all or substantially all the outstanding principal and interest balances under the Loan from Silverview Credit Partners LP and Corbin Capital Partners, L.P. (both lenders jointly referred as the "Lenders" and each individually as "Lender") under the following terms (the "Proposal"):

**Proposal Term Sheet**

| | |
|---|---|
| **Total principal:** | Up to $8.25 million |
| **Loan Term:** | 24 months |
| **Interest Rate:** | Initial annual rate of 7.0% payable quarterly in kind with 2.0% step up every 6 months |
| **Advance Repayment and Terms:** | If paid during months 0 to 12: $6,500,000 + accrued interest |

1



| | |
|---|---|
| **Amortization Schedule:** | Semiannual payments based on production capacity as per Rawhide's production plan with a minimum of 20% of free cash flows to be paid against any accrued interest and then principal |
| **Security/collateral:** | Current security |
| **Expiration:** | Tuesday December 19, 2023   7:00 PM EST |
| **Closing conditions:** | (i) Mutually satisfactory Definitive Agreements. |
| | (ii) Continuation of operational status, with no claim by the State of Nevada BLM after the increase by $3.4 million as immediate replenishment to the surety bond. |
| | (iii) No other liabilities are discovered other than those disclosed in the financial statements except for those incurred in the ordinary course of business. |
| | (iv) Silverview receives payment from Zurich Insurance, which was issued by check and has been in transit. |
| **Validity:** | This proposal will expire on the earliest of December 19, 2023 7:00 PM EST or the State of Nevada BLM concluding the forfeiture of the surety bond. |

## 2.    De Jong Capital.

Founded in 2012, De Jong Capital is a private firm based in Houston, Texas. The firm specializes in opportunistic investing and regulated businesses and is principally focused on buyouts. The team has a successful track record executing complex and structured financings, equity, and equity linked transactions, having executed more than 250+ deals across 50 countries. The firm has worked broadly across industries including financial services, oil & gas, and mining/commodities sectors.

Core to De Jong Capital is the managing of one of the largest oil & gas operations in the country of Peru which has exclusive contracts with private and government entities for the exploration and production of crude oil and natural gas.

In addition, the principal, Mr. Brent de Jong, is the founder and chairman of Qenta, Inc., a financial services platform which has developed blockchain and AI-based technology across digital identity, payments, and supply chain management to further sustainable global commerce in emerging markets through cutting-edge technology. One of the brands is www.ResponsibleGold.com. Qenta also owns a registered investment advisor that manages Rivermet (7 gold mines).

Previously, Mr. de Jong and the broader De Jong Capital team has completed the

2



successful purchase, restart, and operations of mines broadly around the world. One such story is well documented being a public company www.Itafos.com (9 phosphate mines).

### 3. State of Nevada BLM.

It is our understanding that the State of Nevada BLM is in the process of exercising its right to claim the surety bond which will not only result on the cancellation of the existing permits but also, eliminate the possibility to operate the mine as currently making it unfeasible to any potential buyer to operate this asset in the short term and effectively decreasing the value of this asset to all stakeholders.

It is our intention to promptly reach an agreement that can be of mutual benefit given the implications that claiming the surety bond could have to this asset.

### 4. Definitive Agreements.

The Proposal as set forth in this proposal is subject to the execution of definitive agreements and documents ("Definitive Agreements") in form and substance satisfactory to the parties and satisfaction of any other conditions set forth in the agreements. The Definitive Agreements will contain customary representations, warranties, covenants and such other terms and conditions as are typical for a transaction of this nature. De Jong Capital and the Lenders agree to act in good faith to negotiate definitive agreements reflecting the terms of this proposal.

### 5. Confidentiality.

The existence and terms of this proposal as well as any discussions amongst the parties, shall be strictly confidential and treated and kept with the utmost reserve and confidentiality by each party and their respective advisors. Consequently, the parties and their advisors shall not divulge, communicate or disclose it, except as may be required by law (including by regulations of the governmental authorities and capital markets where their securities are listed, which filings shall be coordinated by both parties in order to comply with the regulations applicable to both parties), or use it to the detriment of the other party or for the benefit of any other person or persons, or misuse in any way.

### 6. Miscellaneous.

(i) Communications. All notices and other communications required or permitted by this proposal shall be in writing and submitted via email to the parties hereto at the respective numbers set forth above. This proposal may only be amended by a written instrument executed by each of the parties hereto.

(ii) Disclosures. Except as required by law or regulation, no public announcements, press releases or other public statements (including in any press

3



conference, trade publication, marketing materials or otherwise) with respect to the subject matter of this proposal shall be made without the consent of each of the parties hereto.

(iii) Expenses. Each party shall be responsible for and bear all of its own costs and expenses incurred at any time in connection with this proposal and pursuing, implementing or consummating the transactions contemplated herein.

(iv) Nature. This is a non-binding proposal establishing De Jong Capital's interest to acquire the existing Loan. The rights and obligations of any party hereto may not be assigned to any other entity without the prior consent of the other party hereto in writing.

(v) Counterparts. This proposal may be executed in one or more counterparts, each of which shall be deemed to be an original of the party or parties executing the same and all of which, taken together, shall be deemed to constitute one and the same document.

### 7. Governing Law and Jurisdiction.

This proposal shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed in that State. The state and federal courts situated in New York, New York shall have exclusive jurisdiction and venue over any disputes and/or actions arising from this proposal.

### 8. Termination.

Except for Sections 5 (Confidentiality) and 6 (ii) (Disclosures) and (iii) (Expenses), that shall survive the termination or expiration of this proposal, as applicable, this proposal shall terminate and be deemed of no further effect immediately if not accepted and executed by the recipients during the validity period as stated in the Term Sheet.

Please execute a copy of this proposal to signify your agreement with the foregoing.

Sincerely,

De Jong Capital LLC

By: _____

Name, Title: Brent De Jong

4



Agreed to as of this 19 day of December 2023:

Corbin Capital Partners, L.P.

By:_____
Name, Title:

Silverview Credit Opportunities AIV LP

By: _____
Name, Title:

CEOF Holdings LP

By:_____
Name, Title:

Silverview Credit Partners, LP

By: _____
Name, Title: